1  **Matthew S. Hale, Esq.**
   **HALE & ASSOCIATES**
2  **Calif. State Bar No. 136690**
   **45 Rivermont Drive**
3  **Newport News, VA 23601**

4  **Mailing Address:**
   **P.O. Box 1951**
5  **Newport News, VA 23601**

6  **Telephone No. (757) 596-1143**
   **E-Mail: matthale@verizon.net**
7
   **Attorney for Plaintiff DAVID J. LEE**
8
9              **UNITED STATES DISTRICT COURT**

10         **FOR THE NORTHERN DISTRICT OF CALIFORNIA**

11
                                    )
12                                  )    **Case No.: C-07-4599 - MHP**
                                    )
13  **DAVID J. LEE, an individual and, on**  )    **Complaint For:  Injunctive And**
    **behalf of others similarly situated,**  )    **Restitutionary Relief Arising From**
                                    )    **Violation Of California Bus. & Prof.**
14                                  )    **Code §§ 17200, et seq.:  Injunctive and**
                                    )    **Restitutionary Relief, Punitive**
15              **Plaintiff,**        )    **Damages Arising From Violation of**
                                    )    **California Civil Code § 1770 (a)(19);**
16        **vs.**                    )    **Fraud And Deceit; And, Declaratory**
                                    )    **Judgment**
17                                  )
    **CAPITAL ONE BANK and CAPITAL**  )
18  **ONE SERVICES, INC., Virginia**   )        **CLASS ACTION**
    **corporations, DOES 1 through 100,**  )
19  **inclusive,**                   )
                                    )
20                                  )
                                    )
21              **Defendants.**       )
                                    )
22                                  )
                                    )
23                                  )
                                    )
24  ─────────────────────────────  )

25

Plaintiff alleges:

# I.

## Introduction

1.    The action deals only with Capital One credit cards for which an annual fee is paid by the card holder, and presents three overarching issues:

(a)    Did Capital One commit fraud in the inducement of the customer agreement arising from its practices and knowing misrepresentations as to the legality and conscionability of the agreements or portions thereof (excluding the arbitration provision) that were relied upon by Plaintiff and the persons whom they seek to represent in entering into the agreement and making fee payments thereunder?

(b)    As a separate matter, do the customer agreements drafted by Capital One (and excluding any reference to the arbitration provision it contains) contain unconscionable and illegal terms in violation of various California consumer protection statutes entitling Plaintiff to statutory remedies?

(c)    Is the arbitration provision drafted and inserted by Capital One in its customer agreements (without reference to the unconscionability of the customer agreement itself) unconscionable or illegal, and thereby in violation of various California consumer protection statutes entitling Plaintiff to statutory remedies?

In each instance and as a result of the unconscionability and illegality of the arbitration provision and entire agreement, respectively, that make one or both unenforceable, the fee-paying card holder suffered damage by receiving something worth monetarily less than that for which he/she contracted and paid (as well as by the loss of use of the fee following its payment). In the context of California's consumer protection laws, Plaintiff was thereby damaged and

1

suffered an "injury in fact" and a "loss of money or property" entitling him to statutory relief. In the context of the fraud cause of action which is made only with regard to the agreement as a whole (excluding the arbitration provision),[1] receiving less than that for which he paid is the requisite injury necessary to give rise to a right of rescission and restitution, in whole or part, of the fees paid.

2.      The payment of the fee for the respective card provides Plaintiff and similarly situated persons a contractual right to mandatory arbitration that has pecuniary value: i.e., the right to demand (pursuant to an enforceable arbitration agreement) mandatory arbitration of any "claim" they have against Capital One and the business/person supplying the goods or services for which payment was made using the credit card.   However, the card holder received something worth monetarily less than that for which he/she paid the fee because of the unconscionability and illegality of Capital One's arbitration provision (an amount to which the value of the loss of the use of money paid as fees must be added): e.g., rather than getting a legal and enforceable arbitration provision that permits the card holder to invoke mandatory binding arbitration, they got only an unconscionable and illegal (and thereby unenforceable and invalid) arbitration provision that they can not, as a matter of fact and law and public policy, invoke or use against any one.   That is the an "injury in fact" and results in a "loss of money" (which does not constitute recompensable "damages" since "damages" are not allowed under the UCL and are not sought under the CLRA causes of action) mandating that statutory restitution and injunctive relief be ordered.

3.      The scheme from which Plaintiff's "injury in fact" and resultant monetary loss results with regard to the arbitration provision is the systematic and continuing violation of California's

---

[1]      Unless otherwise specified, reference to the "customer agreement" or "customer agreement in whole" shall mean the "customer agreement (excluding the arbitration provision)."

2

consumer protection laws resulting from the unconscionability and illegality of its terms.  The terms of that provision and, indeed, the provision itself is unconscionable and illegal in that it:

♦    was imposed on all card holders on a "take it or leave it" basis with no opportunity by the card holder to negotiate any term thereof;

♦    was contained in an adhesive form agreement prepared by Capital One and concerning which Capital One was in a much stronger bargaining position than the card holder;

♦    provides that "IF YOU OR WE ELECT ARBITRATION OF A CLAIM, NEITHER YOU NOR WE WILL HAVE THE RIGHT TO PURSUE THAT CLAIM IN COURT OR BEFORE A JUDGE OR JURY OR TO PARTICIPATE IN A CLASS ACTION OR ANY OTHER COLLECTIVE OR REPRESENTATIVE PROC`EEDING …"  in a context where predictably only "small" amounts of money are involved (the fee) and as part of a scheme to deliberately cheat large numbers of its card holders out of the individually "small" amounts represented by the fees paid for the card (capitalization in original);

♦    provides that even in the event of the certification of a class by some other card holder, all other card holders cannot become members of that class, a complete derogation of Fed.R.Civ.P. 23;

♦    provides that "Claims" subject to the Arbitration Agreement include any Claims that in "any way arises from or relates to …  this Arbitration Provision (including whether any claim is subject to arbitration)…. [except that the arbitrator may not determine "the validity and enforcement of any class action

3

waiver which is question for a court of competent jurisdiction, not an arbitrator, to decide"];

♦       provides that the arbitrator's award ""shall determine the rights and obligations of only the named parties and only with respect to the Claims in arbitration." thereby forbidding the entry of any injunctive relief in the arbitration covering any person other than the named plaintiff;

♦       provides "The arbitration of any Claim must proceed on an individual basis, even if the Claim has been asserted in a court as a class action, private attorney general action or other representative or collective action.  Unless all parties consent, neither you nor we may join, consolidate or otherwise bring Claims related to two or more accounts, individuals or accountholders in the same arbitration" in a context where predictably only "small" amounts of money are involved (the fee) and as part of a scheme to deliberately cheat large numbers of its card holders out of the individually "small" amounts represented by the fees paid for the card;

♦       provides that all "Claims" must be arbitrated "regardless of how or when it is brought (for example, as an initial claim, counterclaim) … based on any theory of relief or damages (including money damages and any form of specific performance or injunctive, declaratory or other equitable relief) based on any theory of law or equity (including contract, tort, fraud, constitution, statute, regulation, ordinance or wrongful acts or omissions of any type, whether negligent, reckless or intentional";

♦       provides that in arbitration all claims shall be resolved by "one of the following administrators … JAMS … American Arbitration Association … National Arbitration Forum";

♦       provides no alternative means by which some other arbiter or arbitral organization may be chosen by the card holder;

♦       provides no statement or guidance (and states nothing concerning) regarding whether the applicable code or rules of arbitration are those that exist when the contract is entered into or when, for instance, the claim is filed or when the arbitration actually takes place";

♦       provides that "the rules and procedures of the Administrator which you may obtain from the Administrator, shall govern the arbitration unless they conflict with this Arbitration Provision, in which case this Arbitration Provision will apply" without providing any guidance as to what "conflicts" exist or may exist;

♦       provides no way for the card holder to know at the time he/she initially agreed to arbitrate what the rules would be applied at the arbitration as well as what inconsistencies existed between the agreement and the Code because Capital One has given itself the unilateral right to amend the arbitration provision at any time (including before, during, or after any arbitration) and the arbitration provision failed to designate the applicable arbitration rules;

♦       provides that "[i]f any portion of this Arbitration Provision is deemed invalid or unenforceable, the remaining portions of this Arbitration Provision shall nevertheless remain valid and in force.  In the event of a conflict or inconsistency

between this Arbitration Provision and the other provisions of this Agreement or any prior agreement, this Arbitration Provision shall govern" even though all determinations as to severability of the provision is a matter exclusively reserved for the Courts;

♦        provides no way for the card holder to know at the time he/she initially agreed to arbitrate what inconsistencies existed between the agreement, prior agreement, the arbitration provision, or prior arbitration provisions, and in any event, because Capital One has given itself the unilateral right to amend the arbitration provision at any time (including before, during, or after any arbitration);

♦        provides, relative to the costs of arbitration, that the "party initiating arbitration will pay the initial filing fee.  You may seek a waiver of the initial filing fee or any of the Administrator's other fees (collectively, 'Administrator's Fees') under any applicable rules of the Administrator.  I you seek, but do not qualify for a waiver, will consider any written request by you for us to pay or reimburse you for all or part of the Administrator's Fees.  We will also pay or reimburse you for all or part of the Administrator's Fees if the arbitrator determines there is good reason for us to do so.  We will pay any fees and costs we are required to pay by law.  Otherwise, and except as provided in this Agreement, you and we will bear all of our respective fees and costs (including the Administrator's Fees and the fees and costs relating to attorneys, experts and witnesses), regardless of who prevails.  Allocation of fees and costs relating to appeals in arbitration will be handled in the same manner";

♦        provides only a vague and overbroad statement of what effect arbitration will

6

have on the legal rights of card holders.

4.    The unconscionable and illegal terms of the arbitration provision is a continuing act or practice:  (a) in violation of California's Unfair Competition Law, Bus. & Prof. Code §§ 17200, et seq. ("UCL"), on the basis that the arbitration provision and its terms are unlawful and unfair; and, (b) in violation of California's Consumer Legal Remedies Act, California Civil Code § 1770(a)(19) ("CLRA"), which makes insertion of an unconscionable provision in a contract an unlawful act.  Plaintiff, on behalf of himself and/or all other similarly situated consumers and residents, respectively, in California  is thus entitled to:  (1) a Declaratory Judgment declaring the arbitration provision to be unconscionable, illegal and unenforceable, and severable from the remainder of the customer agreement; (2) statutorily authorized injunctive and restitutionary relief (including disgorgement of profits) as to the UCL causes of action;   (3) statutorily authorized injunctive and restitutionary relief, and punitive damages as to the CLRA causes; (4) prejudgment interest; and, (5)  attorney's fees (including costs) specifically authorized by the CLRA, and otherwise available in UCL causes of action under the laws and precedents of California.

5.    The claim regarding the customer agreement as a whole (excluding its arbitration provision) centers on its inclusion of a variety of terms that are unconscionable and illegal under controlling California and Ninth Circuit law as well as Capital One's fraud in inducing card holders to enter the agreement and make payment thereunder.  On the one hand and reflecting the misrepresentations made by Capital One that are of a nature calculated to induce the making of a contract and payment and display a lack of fair dealing, the inclusion of those unconscionable or illegal terms gives rise to a non-statutory cause of action for fraud and deceit that, due to the permeation of the unconscionable terms, requires non-statutory rescission of the

7

agreement as a whole and common law restitution of the fees paid. These unconscionable terms include, in addition to the adhesive nature of the contract itself, such matters as Capital One's unilateral right to change <u>any</u> term of the agreement at its will and without any reason (which is denied to the card holder), Capital One's imposition of a term by which the card holder waives all of his/her rights while Capital One waives none of its, its determination that the invalidity or declaration of unenforceability of one or more terms of the agreement does not effect the validity or enforceability of the remainder of the agreement, and its statement that the laws of Virginia are the controlling laws.

On the other hand, the mere inclusion of those unconscionable and illegal terms (without consideration of any fraud in inducing the agreement) is an unlawful and unfair practice, respectively, that has, is and continues to occur: (a) in violation of UCL on the basis that the unconscionable terms are illegal and unfair; and, (b) in violation of the CLRA, which makes insertion of an unconscionable provision in a contract an unlawful act. Similar to the arbitration provision, the card holder simply gets less than that for which he paid due to the inclusion of these unconscionable terms and conditions which, alone or in tandem, render the agreement itself unconscionable. With regard to the consumer statute causes of action, Plaintiff, on behalf of himself and/or all other similarly situated consumers and residents, respectively, in California are entitled to: (1) a Declaratory Judgment declaring the customer agreement to be unconscionable, illegal and unenforceable; (2) statutorily authorized injunctive and restitutionary relief (including disgorgement of profits) as to the UCL causes of action; (3) statutorily authorized injunctive and restitutionary relief, and punitive damages as to the CLRA causes of action; (4) prejudgment interest; and, (5) attorney's fees (including costs) specifically

8

authorized by the CLRA, and otherwise available in UCL causes of action under the laws and precedents of California.

## II.

## The Parties

6.    Plaintiff David J. Lee ("Lee") is an individual who, at all relevant times herein mentioned, resided in the City of Kentfield, Marin County, State of California and, hence, within the geographic boundaries of this District Court.

7.    Plaintiff respectively brings this as a class action composed of all similarly situated consumers (as to the CLRA causes of action and "persons" (as to all other causes of action) residing in the State of California more fully described in paragraph 88 below.

8.    Defendant Capital One Bank and Defendant Capital One Services Inc. (collectively "Capital One") are Virginia corporations whose principle place of business is located in the Commonwealth of Virginia.  Capital One Bank is the controlling parent company of Capital One Services, Inc. and other businesses. Plaintiff is advised and believes, and thereon alleges, that during some or all of the periods mentioned herein, Capital One Bank and Capital One Services, Inc. have been or are, among other things, in the business of opening Capital One credit card accounts with individuals and/or business entities for which an annual fee is paid. Both are authorized to conduct business within the State of California.

9.    As relevant here and without limitation, at the present time it, among others, issues the following Capital One credit cards for which an annual fee is paid:  Capital One No Hassle Miles Ultra – For Professional Card, Capital One No Hassle Cash Rewards  Card, Capital One Platinum Card, Capital One Platinum Max Card, Capital One No Hassle Rewards Card, and Capital One Business Platinum Card with Double No Hassle Miles.  The "business" cards can

9

be used for either business or personal/household use just as the non-business cards can be used for either business or personal/household use.

10.     The true names and capacities of the defendants sued herein as Does 1 through 100 are unknown to Plaintiff who therefore sue them by such fictitious names.  Plaintiff will amend this complaint to allege the true names and capacities of these defendants when they have been determined.  Each of the fictitiously named defendants is responsible in some manner for the acts alleged herein.

11.     At all times mentioned in the causes of action alleged herein, each and every defendant was an agent and/or employee of each and every other defendant.  In doing the things alleged in the causes of action stated herein, each and every defendant was acting within the course and scope of this agency or employment and was acting with the consent, permission and authorization of each of the remaining defendants.  All actions of each defendant as alleged in the causes of action stated herein were ratified and approved by every other defendant or their officers or managing agents, and by agreeing to actively conceal the true facts regarding the acts and omissions, as alleged herein, engaged in conspiratorial conduct with each other.

### III.
### Jurisdiction and Venue

12.     Since Plaintiff on his own behalf and on behalf of similarly situated consumers and residents of California, respectively, is requesting restitutionary relief, statutory restitutionary relief (including disgorgement of profits), punitive damages, and prejudgment interest totaling an amount in excess of $5,000,000.00, jurisdiction arises under 28 U.S.C. § 1332 (diversity).

13.     Venue is proper in this Court pursuant to 28 U.S.C. § 1391 because:  the products at issue are advertised, promoted, sold and used in the geographic parameters of the United States

District for the Northern District of California; Defendants have received substantial compensation from the sale of the products at issue in this District by engaging in acts and practices that constitute unfair competition and violation of law within this District and which had an effect in this District; and, Plaintiff Lee is a resident of this District.

## IV.

### The Facts

### A.  The Facts Concerning Capital One Credit Cards

14.    As relevant here, Capital One issues, for an annual fee, "credit" cards that are revolving credit instruments that do not need to be paid off in full at the end of the monthly billing cycle, upon which no late fee is charged as long as the minimum payment is timely made but which charges a late fee when payment is untimely, and which carries a balance forward as a loan charging interest.'[2]

15.    Capital One credit cards are means of and used to obtain goods and/or services (including services furnished in connection with the sale or repair of goods) from any person or business who accepts the respective card in payment for the goods or services provided. Indeed, a credit card is a necessity in that, among other things, one can't book an airline flight or make a purchase on the internet or rent a card without one.

16.    The purchase of a Capital One credit card cardmembership (for which a fee is paid) relative to a credit card purchase and provides, at least in great part, a "convenience service" even when "credit" can be implicated if the monthly balance is not paid in full upon receipt of the monthly billing statement.   It provides a means of payment which leaves the option open to the card holder to either pay his/her monthly statement in full upon its receipt (and thus not incur

---

[2]      Unless otherwise specified, all Capital One credit cards referred to herein are credit cards for which an annual fee is charged.

**David J. Lee, et al. v. Capital One Bank, Inc. et al.,**
**Complaint**

any interest indebtedness or otherwise use the "credit" service of the card) or to not pay the bill in full and use the revolving credit feature. Regardless of which option is chosen by the card holder, the use of the credit card has distinct advantages over cash, checks, and other means of payment: _i.e._, the credit card not only minimizes the need to carry cash and allows the user to defer payment and establish a favorable credit history but also, importantly, increases the card holder's ability to purchase goods and services and in so doing avoid the red tape involved in obtaining a personal loan. Plaintiff is informed and believes, and on that basis alleges, that some holders of credit cards do, from time to time or all of the time, pay the monthly balance in full upon receipt of the monthly billing statement and do not avail themselves of the credit feature of the card.

17. Plaintiff is informed and believes, and on that basis alleges, that Capital One maintains records identifying – for at least the last four years preceding the filing of this Complaint -- each holder of a Capital One credit card and their current/last known address, the amount of fees paid by him/her, the date(s) upon which a card was issued to that person, the charges made by that person on his Capital One card, and other means by which each card holder may be identified.

18. Upon information and belief, Plaintiff alleges that Capital One has issued approximately 53.6 million cards in the United States, approximately and at least ten (10) per cent of which are issued to California consumers and/or residents, respectively. Upon information and belief, Plaintiff further allege that Capital One receives a "merchant fee" for each charge made on the card, payable by the merchant based on a percentage of the sales price.

19. During some or all of the four years preceding the filing of the Complaint and three years preceding the filing of the Complaint, respectively, Capital One issued credit cards at the following annual fees:

12

**David J. Lee, et al. v. Capital One Bank, Inc. et al.,**
**Complaint**

(a)    Capital One No Hassle Miles Ultra – For Professionals Card -- $39.00 annual fee.  A true and correct copy of the Capital One official Internet website setting for the terms and conditions for this card is Exhibit 1 and is incorporated herein by reference;

(b)    Capital One No Hassle Cash Rewards Card – $29.00 annual fee.  A true and correct copy of the Capital One official Internet website setting for the terms and conditions for this card is Exhibit 2 and is incorporated herein by reference;

(c)    Capital One No Hassle Points Rewards Card - $29.00 annual fee. A true and correct copy of the Capital One official Internet website setting for the terms and conditions for this card is Exhibit 3 and is incorporated herein by reference;

(d)    Capital One Platinum Max Card – $19.00 annual fee.  A true and correct copy of the Capital One official Internet website setting for the terms and conditions for this card is Exhibit 4 and is incorporated herein by reference;

(e)    Capital One Platinum Card – $39.00 annual fee  A true and correct copy of the Capital One official Internet website setting for the terms and conditions for this card is Exhibit 5 and is incorporated herein by reference;

(f)    Capital One Classic Platinum Card -- -- $19.00 annual fee.  A true and correct copy of the Capital One official Internet website setting for the terms and conditions for this card is Exhibit 6 and is incorporated herein by reference; and,

(g)    Capital One Business Platinum Card with Double No Hassle Miles – no fee for the first year, $39.00 annual fee thereafter.  A true and correct copy of the Capital One official Internet website setting for the terms and conditions for this card is Exhibit 7 and is incorporated herein by reference.

13

### B. Plaintiff's Facts

20.    Plaintiff Lee obtained a Capital One credit card from Capital One in or about March of 2007.  He obtained the card for, among other things, personal and/or household use to purchase, among other things, goods or services (including services furnished in connection with the sale or repair of goods) for his personal or household use.  He has annually paid the fee charged by Capital One on that credit card.  A true and correct copy of the cardmember agreement applicable to Plaintiff Lee's credit card is Exhibit 8 hereto and incorporated herein by reference. A true and correct copy of the Arbitration Agreement, which is incorporated by reference in Plaintiff Lee's cardmember agreement applicable to Plaintiff Lee's credit card is Exhibit 9 hereto and incorporated herein by reference. Capital One has, from time to time, amended the terms of that agreement, including notably its arbitration provision, and in material ways.  Such amendments have been done by "bill stuffer" notices placed in the envelope containing the monthly billing statement.

21.    In making the payments of the fees owed by him, Plaintiff Lee relied upon the statements and misrepresentations made by Capital One as specifically set forth in this Complaint.

22.    In accepting the contractual terms presented to them by Capital One on a "take it or leave it" basis – which was effected by the use of the card rather than by formal written agreement or other writing – and paying their respective annual fees Plaintiff acted as a reasonable consumer who was unwary and trusting of Capital One.

23.    In accepting the contractual terms presented to them by Capital One on a "take it or leave it" basis and paying their respective annual fees, Plaintiff relied upon the honesty of Capital One that it would not insert illegal, unconscionable and/or unenforceable terms and

14

conditions in the arbitration provision of the agreement or other terms of the agreement, respectively, since, among other things, they had no duty to and did not suspect the dishonesty of Capital One.

24.    Plaintiff, as a reasonable consumer, was unaware of the illegality or unconscionability of the arbitration provision or of the customer agreement as a whole, respectively, at the time he entered into his agreement with Capital One and paid the fees requested from it.

25.    Arbitration, pursuant to a contractual arbitration provision, is a speedy and inexpensive means of dispute resolution in comparison to judicial proceedings.

26.    The arbitration provision is a material term of the Capital One customer agreement.

27.    The ability of Plaintiff and similarly situated persons to demand arbitration under an arbitration provision is an important and material factor relied upon by him in agreeing to enter into the Capital One agreements and to pay the fees.

28.    Plaintiff is advised and believes, and thereon alleges, that the right to mandatory arbitration has a pecuniary value that reflects, in whole or in part, the fees paid by him for his card and his respective use of the card.

29.    Plaintiff is advised and believes, and thereon alleges, that if the arbitration provision contained in the agreement relating to their credit cards is unconscionable, illegal and unenforceable, Plaintiff received something lower in value than that for which he paid and, as a result, he has lost money as a result of the unconscionability, illegality, and unenforceability of the Capital One-imposed arbitration provision.

30.    Plaintiff is advised and believes, and thereon alleges, that the rights provided him by the customer agreement to Capital One's credit cards have a pecuniary value that reflects, in whole or in part, the fees paid by him for his card and his respective use of the card.

15

31.    Plaintiff is advised and believes, and thereon alleges, that if the cardmember agreement, in whole or in part, is unconscionable, illegal and unenforceable, Plaintiff received something lower in monetary value than that for which he paid and, as a result, he has lost money as a result of the unconscionability, illegality, and unenforceability of the Capital One-imposed customer agreement.

32.    In accepting the contractual terms presented to him by Capital One on a "take it or leave it" basis, paying the respective annual fee, Plaintiff contracted with Capital One in reliance with his reasonable belief that Capital One would not commit an illegal, unfair, or fraudulent act upon him in presenting him with a form agreement on a "take it or leave it" basis that contained an arbitration provision and other provisions, respectively, that were and are illegal, unfair, unconscionable, and invalid.

33.    Plaintiff had no meaningful choice of reasonably available alternative sources for credit cards free of the terms claimed to be illegal, unconscionable, invalid, and unenforceable since seemingly all credit cards issued by Capital One and its competitors (including Chase, American Express, Bank of America, HSBC) contain the same or similar arbitration and other provisions challenged in this action.

34.    Plaintiff, on behalf of himself and similarly situated persons, has a technically arbitrable claim against Capital One relating solely to the customer agreement:  i.e., that he was induced to enter into the agreement and paid the fees by them as a result of Capital One's fraud, deceit, and misrepresentations.

35.    Plaintiff, on behalf of himself and similarly situated persons, is and has been willing to immediately invoke the Capital One arbitration provision so that his fraud claims against Capital One would be decided in the arbitral context by an arbitrator.

**David J. Lee, et al. v. Capital One Bank, Inc. et al.,**
**Complaint**

36.    Plaintiff is advised and believes, and thereon alleges, that his claim of fraud against Capital One in the inducement of the customer agreement is an issue that should be decided by an arbitrator under an enforceable, valid, and conscionable arbitration provision. See, e.g., Nagrampa v. Mailcoups, Inc., 469 F.3d 1257 (9th Cir. 2006); Buckeye Check Cashing Inc. v. Cardegna, 546 U.S. 440, 126 S.Ct. 1204, 163 L.Ed.2d 1038 (2006); Prima Paint Corp. v. Flood & Conklin Mfg. Co., 388 U.S. 395, 87 S.Ct. 1801, 18 L.Ed.2d 1270 (1987).

37.    Plaintiff is advised and believes, and thereon alleges on behalf of himself and similarly situated persons, that his invoking the arbitration provision relative to his fraud claims and seeking arbitration of that claim would be against public policy and would otherwise be an illegal act by seeking to enforce an illegal and unconscionable arbitration provision. Plaintiff further is advised and believes, and thereon alleges, on behalf of himself and similarly situated persons, that it would be futile to invoke arbitration under the unenforceable arbitration provision and that doing so would be a waste of time and money. See Bertero v. Superior Court, 216 Cal. App. 2d 213, 230 Cal. Rptr. 719 (1963) (parties improperly ordered to arbitrate "would be put to the unnecessary delay and expense of an arbitration, further court proceedings, and an appeal, after which they would be required to start over"), disapproved on other grounds in St. Agnes Medical Center v. PacifiCare of California, 31 Cal.4th 1187, 1192, 8 Cal. Rptr. 3d 517, 82 P.3d 727 (2003).

38.    Plaintiff is advised and believes, and thereon alleges on behalf of himself and similarly situated persons, that the exercise of his contractual right to demand mandatory arbitration of their fraud claim against Capital One would waive his right and ability to challenge the unconscionability of the arbitration provision and/or the agreement as a whole, respectively.

**David J. Lee, et al. v. Capital One Bank, Inc. et al.,**
**Complaint**

39.    The harm to Plaintiff's interest, as well as of the interests of similarly situated persons, arising from the inability to enforce the arbitration provision in order to arbitrate the fraud and consumer statute claims (relating only to the agreement and not the arbitration provision) due to its/their unenforceability/unconscionability/illegality, is actual or imminent.

40.    Plaintiff is advised and believes, and thereon alleges, that in view of the recent Ninth Circuit opinion in Shroyer v. New Cingular Wireless Services, Inc., 2007 U.S.App.LEXIS 19560 (9th Cir. 2007), and in Nagrampa v. Mailcoups, Inc., supra, that no argument can made or legal position presented that the Capital One arbitration agreement is conscionable and enforceable, and resultantly, that fraud claim is arbitrable due to the absence of a legal and enforceable arbitration provision in the Capital One customer agreement.

41.    Plaintiff are advised and believe, and thereon allege, that it has been, is and will continue to be the practice of Capital One to uniformly advise its card holders, directly or by implication, that the card holder agreements are conscionable and legal, and governed by the laws of the State of Virginia.

### C.  The Capital One Customer Agreements

42.    The 2007 version of the amended and standardized contractual agreement (which is presently used and been subjected to prior amendments during the years in which Plaintiff has held the card)) entered into between Plaintiff Lee and Lloyd (and similarly situated persons they seek to represent) and Capital One relating is an Arbitration Agreement. in pertinent part, provides

> "IT PROVIDES THAT ANY DISPUTE MAY BE RESOLVED BY BINDING ARBITRATION.   ARBITRATION REPLACES THE RIGHT TO GO TO COURT.   YOU WILL NOT BE ABLE TO BRING A CLASS ACTION OR OTHER REPRESENATIVE ACTION IN COURT SUCH AS THAT IN THE FORM OF A PRIVATE ATTORNEY GENERAL ACTION, NOR WILL YOUBE ABLE TO BRING ANY CLAIM IN ARBITRATION AS A CLASS

18

ACTION OR OTHER REPRESENTATIVE ACTION.  YOU WILL NOT BE ABLE TO BE PART OF ANY CLASS ACTION OR OTHER REPRESENTATIVE ACTION BROUGHT BY ANYONE ELSE OR BE REPRESENTED IN A CLASS ACTION OR OTHER REPRESWENTATIVE ACTION IN THE ABSENCE OF THIS ARBITRATION AGREEMENT.  YOU ANDE WE MAY OTHERWISE HAVE HAD A RIGHT OR OPPORTUNITY TO BRING CLAIMS IN A COURT BEFORE A JUDGE OR JURY, AND/OR TO PARTICIPATE OR BGE REPRESENTED IN A CASE FILED IN COURT BY OTHERS (INCLUDING CLASS ACTIONS AND OTHER REPRESENATATIVE ACTIONS).  OTHER RIGHTS THAT YOU WOULD HAVE IF YOU WENT TO A COURT, SUCH AS DISCOVERY OR THE RIGHT TO APPEAL THE DECISION MAY BE MORE LIMITED.  EXCEPT AS OTHERWISE PROVIDED BELOW, THOSE RIGHTS ARE WAIVED. …

"Either you or we may, without the other's consent, elect mandatory, finding arbitration of any claim, dispute or controversy by either you or us against the other, or against the employees, parents, subsidiaries, affiliates, beneficiaries, agents or assigns of the other, arising from or relating in any way to the Cardmember Agreement, any prior Cardmember Agreement …  The Arbitration Agreement governs all Claims, whether such claims are based on law, statute, contract, regulation, ordinance, tort, common law, constitutional provision , or any legal theory of law such as respondeat superior, or any other legal or equitable ground and whether such Claims seek as remedies money damages, penalties, injunctions, or declaratory or equitable relief.  Claims subject to the Arbitration Agreement include Claims regarding the applicability of this Arbitration Agreement or the validity of the entire Cardmember Agreement or any prior Cardmember Agreement.

"Claims subject to arbitration include Claims that are made as counterclaims, cross claims, third party claims, interpleaders or otherwise, and a party who initiates a proceeding in court may elect arbitration with respect to any such Claims advanced in the lawsuit by any party or parties….

"No arbitration will be consolidated with an other arbitration proceeding without the consent of all parties.  …

"The party filing a Claim in arbitration must choose one of the following two arbitration administrators:  American Arbitration Association, or National Arbitration Forum.  …  You may obtain copies of the current rules of each of the two arbitration administrators, information about arbitration and arbitration fees, and instructions for initiating arbitration by contacting the arbitration administrators …

"… The arbitration will be conducted under the applicable procedures and rules of the arbitration administrator that are in effect on the date the arbitration is filed unless those procedures and rules are inconsistent with this Arbitration

19

Agreement, in which case this Agreement will prevail.  …  The arbitrator … will not have the power to award relief to, against, or for the benefit of any person who is not a party to the proceedings.  ….

"We will reimburse you for the initial arbitration filing fee paid by you up to the amount of $500 upon receipt of proof of payment.  Additionally, if there is a hearing, we will pay any fees of the arbitration and arbitration administrator for the first two days of that hearing.  …  All other fees swill be allocated in kee[ping with the rules of the arbitration administrator and applicable law.  However,, we will advance or reimburse filing fees and other fees if the arbitration administrator or arbitrator determines there is good reason for requiring us to do so or you ask us and we determine there is good cause for doing so.  Each party will bear the expense of the fees and costs of that party's attorneys fees, witnesses, documents, and other expenses, regardless of which party prevails, for arbitration and any appeal … except that the arbitrator shall apply any applicable law in determining whether a party should receive any or all fees and costs from another party."

"The appeal must request a new arbitration before a panel of three neutral arbitrators designated by the same arbitration organization.  The panel will r4econsider all factual and legal issues anew …  Each party will bear their own fees, costs and expenses for any appeal, but a party may recover any or all fees, costs and expenses from another party, if the majority of the panel of arbitrators, applying applicable law, so determines."

Exhibit 9.

43.     The relevant provisions of the cardmember agreement (excepting the arbitration provision) include:

"We may add to, remove, amend, or change any part or provision of this Agreement including the annual percentage rate(s) on any charges (including adding new provisions of the same or a different nature as the existing provisions in this Agreement) at any time. "

"You waive the right to receive notice of any waiver or delay or presentment, demand, protest or dishonor and any right you may have to require us to proceed against another party before proceeding against you.  You also waive, to the extent permitted by applicable law, any statute of limitations defense for an additional period of time equal to the applicable limitations period."

"This Agreement is to be construed in accordance with and governed by the laws of the United States of American and by the internal laws of the Commonwealth of Virginia without giving effect to any choice of law rule that would cause the application of the laws of any jurisdiction other than the laws of the United States of America or the internal laws of the Commonwealth of Virginia to the rights

and duties of the parties. … If a court decides not to enforce a part of this Agreement, this Agreement will then read as if the unenforceable or invalid part were not there, but the remaining parts will remain in effect."

Exhibit 8.

## VI.
## Causes of Action

### First Cause of Action
### (Arbitration Provision --Violation of Bus. & Prof. Code 17200 et seq. Due To Illegal Practice Under Civil Code § 1670.5 And The Common Law)

44.     Plaintiff repeat and reallege each of the allegations contained in paragraphs 1-4, 6-29, and 32-42 as though fully set forth herein.

45.     California Bus. & Prof. Code § 17200 provides, in relevant part:

"As used in this chapter, unfair competition shall mean and include any unlawful, unfair or fraudulent business act or practice…

46.     California Bus. & Prof. Code § 17203 provides, in relevant part:

"Any person who engages, has engaged, or proposes to engage in unfair competition may be enjoined by any court of competent jurisdiction. The court may make such orders or judgments … as may be necessary to prevent the use or employment by any person of any practice which constitutes unfair competition …. or as may be necessary to restore to any person in interest any money or property, real or personal, which may have been acquired by means of such unfair competition. Any person may pursue representative claims or relief on behalf of others only if the claimant meets the standing requirements of Section 17204 [that he "has suffered injury in fact and has lost money or property as a result of such unfair competition"] …."

21

47.    California Code of Civil Procedure § 382 provides, in relevant part:

"… when the question is of a common or general interest, of many persons, or when the parties are numerous, and it is impracticable to bring them all before the court, one or more may sue or defend for the benefit of all."

48.    California Civil Code § 1670.5 is the codification of the common law relating to unconscionability of contracts and/or contractual provisions and provides, in relevant part:

"(a)    If the court as a matter of law finds the contract or any clause of the contract to have been unconscionable at the time it was made the court may refuse to enforce the contract, or it may enforce the remainder of the contract without the unconscionable clause, or it may so limit the application of any unconscionable clause as to avoid any unconscionable result."

49.    The arbitration clause, which was inserted into the contract between Capital One and Plaintiff (and other similarly situated persons), is unconscionable, illegal and thereby violates California Civil Code § 1670.5 and the common law relating to unconscionability of contracts and contractual provision in that, among other reasons, it

(a)    was imposed on all card holders on a "take it or leave it" basis with no opportunity by the card holder to negotiate any term thereof (see Gentry v. Superior Court, 2007 CAL.LEXIS 9376 (2007); Discover Bank v. Superior Court, 36 Cal.App.4th 148, 159-160, 40 Cal.Rtpr.3d 76 (2005); Armanderiz v. Foundation Health Psychcare Services, Inc., 24 Cal.4th 83, 113-114, 99 Cal.Rptr.2d 745, 6 P.3d 669 (2000); Shroyer v. New Cingular Wireless Services, Inc., 2007 U.S.App.LEXIS 19560 (9th Cir. 2007));

22

(b)     was contained in an adhesive form agreement prepared by Capital One and concerning which Capital One was in a much stronger bargaining position than the card holder (ibid.);

(c)     provides that "IF YOU OR WE ELECT ARBITRATION OF A CLAIM, NEITHER YOU NOR WE WILL HAVE THE RIGHT TO PURSUE THAT CLAIM IN COURT OR BEFORE A JUDGE OR JURY OR TO PARTICIPATE IN A CLASS ACTION OR ANY OTHER COLLECTIVE OR REPRESENTATIVE PROC`EEDING …"  in a context where predictably only "small" amounts of money are involved (the fee) and as part of a scheme to deliberately cheat large numbers of its card holders out of the individually "small" amounts represented by the fees paid for the card (capitalization in original) (Discover Bank, supra; Schroyer, supra (adopting Discover Bank); Ting v. AT&T, 319 F.3d 1126, 1150 (9th Cir. 2003); Ingle v. Circuit City Stores, Inc., 328 F.3d 1165, 1176 (9th Cir. 2003)) ;

(d)     provides that even in the event of the certification of a class by some other card holder, all other card holders cannot become members of that class, a complete derogation of Fed.R.Civ.P. 23;

(e)     provides that "Claims" subject to the Arbitration Agreement include any Claims that in "any way arises from or relates to …  this Arbitration Provision (including whether any claim is subject to arbitration)…. [except that the arbitrator may not determined "the validity and enforcement of any class action waiver which is question for a court of competent jurisdiction, not an arbitrator, to decide"] in direct contravention of Buckeye Check Cashing, Inc. v. Cardegna, 546

23

U.S. 440, 126 S.Ct. 1204, 163 L.Ed.2d 1038 (2006), Nagrampa v. Mailcoups, Inc., 469 F.3d 1257 (9th Cir. 2006), Prima Paint Corp. v. Flood & Conklin Mfg. Co., 388 U.S. 395, 405-404, 87 S.Ct. 1801, 103 L.Ed.2d 1038 (1967), Flores v. TransAmerica Home First, Inc., Cal.App.4th 846, 113 Cal.Rptr.2d 376 (2001), and Stirlin v. Supercuts, Inc., 51 Cal.App.4th 1519, 60 Cal.Rptr.2d 138 (1997):

(f)     provides that the arbitrator's award ""shall determine the rights and obligations of only the named parties and only with respect to the Claims in arbitration." thereby forbidding the entry of any injunctive relief in the arbitration covering any person other than the named plaintiff thereby forbidding the entry of any injunctive relief in the arbitration even though statutory injunctive relief under the UCL and CLRA are unwaiveable (Broughton v. Cigna Healthplans, 21 Cal.4th 1066, 90 Cal.Rptr.2d 334, 988 P.2d 334 (1999); Cruz v. PacificCare Health Systems, Inc., 30 Cal.4th 303, 133 Cal.Rptr.2d 58, 66 P.3d 1157 (2003); Davis v. O'Melveny & Meyers, 485 F.3d 1066, 1080 (9th Cir. 2007); Nagrampa v. Mailcoups, Inc.,  supra,469 F.3d at 1289-1293;

(g)     provides "The arbitration of any Claim must proceed on an individual basis, even if the Claim has been asserted in a court as a class action, private attorney general action or other representative or collective action.  Unless all parties consent, neither you nor we may join, consolidate or otherwise bring Claims related to two or more accounts, individuals or accountholders in the same arbitration" in a context where predictably only "small" amounts of money are involved (the fee) and as part of a scheme to deliberately cheat large numbers of its card holders out of the individually "small" amounts represented by the fees

paid for the card in a context where, as here, predictably only "small" amounts of money (the fees) are involved and as part of a scheme to deliberately cheat large numbers of its card holders out of the individually "small" amounts represented by the fees paid for the card (ibid.; Gentry v. Superior Court, supra; Discover Bank v. Superior Court, supra, 36 Cal.App.4th at 153; Szetla v. Discover Bank, 97 Cal.App.4th 1094, 118 Cal.Rptr. 862 (2002);   Comb v. PayPal, Inc., 218 F.Supp.2d 1165, 175 (N.D.Cal. 2002));

(h)    provides that all "Claims" must be arbitrated "regardless of how or when it is brought (for example, as an initial claim, counterclaim) … based on any theory of relief or damages (including money damages and any form of specific performance or injunctive, declaratory or other equitable relief) based on any theory of law or equity (including contract, tort, fraud, constitution, statute, regulation, ordinance or wrongful acts or omissions of any type, whether negligent, reckless or intentional" even though, for instance, injunction requests under the CLRA and UCL are never arbitrable (Broughton v. Cigna Healthplans, supra; Cruz v. PacifiCare Health Systems, Inc., supra);

(i)    provides that in arbitration all claims shall be resolved by "one of the following administrators … JAMS …   American Arbitration Association … National Arbitration Forum";

(j)    provides no alternative means by which some other arbiter or arbitral organization may be chosen by the card holder;

(k)    provides no statement or guidance (and states nothing concerning) regarding whether the applicable code or rules of arbitration are those that exist

25

when the contract is entered into or when, for instance, the claim is filed or when the arbitration actually takes place" and fails to provide copies of the relevant arbitration codes or rules at the time the contract is entered into (see Ultimo v. Harper, 113 Cal.App.4th 1402, 7 Cal.Rptr.2d 418 (2003); Fitz v. NCR Corp., 118 Cal.App.4th 702, 721, 13 Cal.Rptr.2d 88 (2004); Dunham v. Envtl. Chem. Corp. 2006 U.S.Dist.LEXIS 61068 (N.D.Cal. 2006));

(l)      provides that "the rules and procedures of the Administrator which you may obtain from the Administrator, shall govern the arbitration unless they conflict with this Arbitration Provision, in which case this Arbitration Provision will apply" without providing any guidance as to what "conflicts" exist or may exist (see  Ibid.));

(m)     provides no way for the card holder to know at the time he/she initially agreed to arbitrate what the rules would be applied at the arbitration as well as what inconsistencies existed between the agreement and the Code because Capital One has given itself the unilateral right to amend the arbitration provision at any time (including before, during, or after any arbitration) and the arbitration provision failed to designate the applicable arbitration rules (see ibid.; Net Global Marketing, Inc. v. Dialtone, Inc., 217 Fed.Appx. 598, 2007 U.S.App.LEXIS 674 (9th Cir. 2007); Ingle v. Circuit City Stores, Inc., 328 F.3d at 1179; Geoffrey v. Washington Mutual Bank, 484 F.Supp.2d 1115, 1123 (S.D.Cal. 2007); Bragg v. Linder Research, Inc., 487 F.Supp.2d 593, 609 (E.D.Pa. 2007)(applying California law);  Conglamur v. Circuit City Stores, Inc., 2004 Cal.App.Unpub.LEXIS 8140 at *13-14 (2004));

26

(n)    provides that "[i]f any portion of this Arbitration Provision is deemed invalid or unenforceable, the remaining portions of this Arbitration Provision shall nevertheless remain valid and in force.  In the event of a conflict or inconsistency between this Arbitration Provision and the other provisions of this Agreement or any prior agreement, this Arbitration Provision shall govern" even though such inconsistencies are not pointed out at the time the contract is entered into (see Ultimo v. Harper, supra; Fitz v. NCR Corp., supra; Dunham v. Envtl. Chem. Corp., supra) and all determinations as to severability of the provision is a matter exclusively reserved for the Courts even though all determinations as to severability of the provision is a matter exclusively reserved for the Courts (see California Civil Code § 1670.5 (a); Armanderiz. Supra, 24 Cal.4th at 1121-24; Stirlin, supra; Flores, supra));

(o)    provides no way for the card holder to know at the time he/she initially agreed to arbitrate what inconsistencies existed between the agreement, prior agreement, the arbitration provision, or prior arbitration provisions, and in any event, because Capital One has given itself the unilateral right to amend the arbitration provision at any time (including before, during, or after any arbitration)(ibid.) ;

(p)    provides, relative to the costs of arbitration, that the "party initiating arbitration will pay the initial filing fee.  You may seek a waiver of the initial filing fee or any of the Administrator's other fees (collectively, 'Administrator's Fees') under any applicable rules of the Administrator.  I you seek, but do not qualify for a waiver, will consider any written request by you for us to pay or reimburse you for

all or part of the Administrator's Fees.  We will also pay or reimburse you for all or

part of the Administrator's Fees if the arbitrator determines there is good reason for

us to do so.  We will pay any fees and costs we are required to pay by law.

Otherwise, and except as provided in this Agreement, you and we will bear all of

our respective fees and costs (including the Administrator's Fees and the fees and

costs relating to attorneys, experts and witnesses), regardless of who prevails.

Allocation of fees and costs relating to appeals in arbitration will be handled in the

same manner" in violation of <u>Nagrampa</u>; and,

(q)      provides only a vague and overbroad statement of what effect arbitration will

have on the legal rights of card holders.

50.    Plaintiff, as set forth below in paragraph 88 (the allegations of which are incorporated

herein by reference), bring this action on behalf of himself and similarly situated persons in 2

subclasses, all of which qualify for certification pursuant to California Code of Civil Procedure

§ 382 on the grounds that:

(a)      the classes as defined are ascertainable since membership therein is

defined by and limited to persons (either California consumers or residents of

California depending on whether the class is under the CLRA, the UCL, or the

fraud cause of action) having an Capital One credit card for which a fee was paid

during the period covering between the limitations period and the time of final

judgment under a customer agreement containing the same or similar arbitration

provision or agreement terms, respectively, as Plaintiff (copies of which

agreements and arbitration provisions are referenced in the class definition).

Those classes, each of which is likely to contain at least hundreds of thousands of

28

persons (either consumers or residents) are identifiable by Capital One which keeps the records of all such persons, including their last known billing addresses.

(b)    there is a commonality of interests by and between Plaintiff and the members of the classes he seeks to represent that is patent in that

(1)    predominant common questions of law or fact are exclusively involved: <u>i.e.,</u>    the unconscionability of terms in the arbitration provision and customer agreement, respectively, that are common to all of the form provisions and agreements imposed by Capital One on a "take it or leave it" basis on the card holders; as to the fraud cause of action, common reliance on the misrepresentations by Plaintiff and class members exists;

(2)    the Plaintiff, as class representatives, is typical of the classes and has only claims and defenses that are typical of those of the respective classes in that, for instance, the claims for and quantum of injunctive and restitutionary relief are identical for each member of each class (<u>i.e.</u>, the amount of the fee(s) paid by them) or easily subject to proof without separate adjudications; and,

(3)    Plaintiff can and will adequately represent the interests of the class since he is committed to maintaining the action and is represented by counsel knowledgeable and experienced in consumer and class action law.

(c)    The issues which may be jointly tried (most of which are singularly ones of law), when compared with the issues requiring separate adjudication, are so

1   numerous or substantial that the maintenance of a class action is advantageous to

2   the judicial process and to the litigants.

### Second Cause of Action
**(Arbitration Provision --Violation of Bus. & Prof. Code 17200 et seq. Due To Illegal Practice Under Civil Code §§ 1668 and 3513)**

51.   Plaintiff repeat and reallege each of the allegations contained in paragraphs 1-4, 6-29, 32-42, 44-48, 49 (a)-(q), and 50 as though fully set forth herein.

52.   California Civil Code § 1668 provides, in relevant part,

"All contracts which have for their object, directly or indirectly, to exempt anyone from responsibility for his own fraud, or willful injury to the person or property of another, or violation of law, whether willful or negligent, are against the policy of the law."

53.   California Civil Code § 3513 provides, in relevant part,

"Any one may waive the advantage of a law intended solely for his benefit.  But a law established for a public reason cannot be contravened by a private agreement.

54.   The Capital One arbitration provision violates Civil Code §§ 1668 and 3513, respectively, including, but not limited to, its provisions that no class or representative action can be maintained, and no injunctive relief may be given to any card holder.  See, e.g., Stroyer v. New Cingular Wireless Services, Inc., supra, 2007 U.S.App.LEXIS 1560 at * 30; Discover Bank v. Superior Court, supra, 36 Cal.4th at 160-163, 165.

### Third Cause of Action
**(Arbitration Provision --Violation of Bus. & Prof. Code 17200 et seq. Due To Illegal Practice Under Code of Civil Procedure § 1281.4)**

55.   Plaintiff repeat and reallege each of the allegations contained in paragraphs 1-4, 6-29, 32-42, 44-48, 49(p), and 50 as though fully set forth herein.

30

56.    Code of Civil Procedure § 1281.4(a), in pertinent part, provides:

"No neutral arbitrator or private arbitration company shall administer a consumer

arbitration under any agreement or rule requiring that a consumer who is a party

to the arbitration pay the fees and costs incurred by an opposing party if the

consumer does not prevail in the arbitration, including, but not limited to, the fees

and costs of the arbitrator, provider organization, attorney, or witnesses."

57.    The Capital One arbitration provision violates Section 1281.4.

**Fourth Cause of Action**
**(Arbitration Provision --Violation of Bus. & Prof. Code 17200 et seq. Due To Unfair Practice**

58.    Plaintiff repeat and reallege each of the allegations contained in paragraphs 1-4, 6-29, 32-

42, 44-49, 50-57 as though fully set forth herein.

59.    Capital One's arbitration provision, due to its unconscionability and illegality, is an

unfair practice that either "offends an established public policy [as represented by Civil Code §§

1670.5, 1281.4, 1668 and/or 3513] or … is immoral, unethical, oppressive, unscrupulous or

substantially injurious to consumers," [Smith v. State Farm Mutual Automobile Ins. Co., 93

Cal.App.4th 700,   718-719, 113 Cal.Rtpr.2d 399 (2001)], or which violates public policy

tethered to specific constitutional, statutory or regulatory provisions such as Sections 1670.5,

1281.4, 1668, and/or 3513.  Cel-Tech Communications, Inc. v. Los Angeles Cellular Telephone

Co., 20 Cal.4th 163, 187, 83 Cal.Rptr.2d 548, 973 P.2d 527.

60.    An unconscionable contract or contract provision or term is, as a matter of law, an unfair

practice under the UCL.  See   Cel-Tech Communications, Inc. v. Los Angeles Cellular

Telephone Co., supra, 20 Cal.4th at 183; People v. McKale, 25 Cal.3d 626, 683-84 (1979); Smith

v. State Farm Mutual Automobile Ins Co., supra, 93 Cal.App.4th at 719; State Farm Fire &

31

Casualty Co. v. Superior Court, 45 Cal.App.4th 1093, 1104, 53 Cal.Rptr.2d 229 (1996); Lyddon v. Rocha-Albertsen, 2006 U.S.Dist.LEXIS 78957 (E.D. Cal. 2006); Ting v. AT&T, 182 F.Supp.2d 902, 921-22, aff'd in part, rev'd on other grounds in part, 319 F.3d 1126, 1150 (9th Cir. 2003).

### Fifth Cause of Action
### (Arbitration Provision --Violation of CLRA, Civil Code § 1770(a)(19)

61.    Plaintiff repeat and reallege each of the allegations contained in paragraphs 1-4, 6-29, 32-42, 44-48, 49-60 as though fully set forth herein.

62.    The Capital One charge card for which an annual fee is paid is a good or service subject to the requirements of CLRA.

63.    By letter dated March 23, 2007 sent to Mr. Richard D. Fairbank, Chairman and CEO of Capital One (which was sent certified mail, return receipt requested), Plaintiff Lee pointed out the unconscionability and illegality of the agreement relating to his credit card, particularly its arbitration provision, under California law and requested that Capital One "'correct, repair, replace or otherwise rectify the goods or services" caused by the violation of California Civil Code § 1770(a)(19) which makes it illegal to "insert[] an unconscionable provision into a contract." A true and correct copy of this letter and certified letter receipt is Exhibit 10 hereto, respectively, and is incorporated herein by reference. Capital One did not timely respond to Plaintiff's letter but, rather, responded by letter dated June 13, 2007, a true and correct copy of which is Exhibit 11 hereto and is incorporated herein by reference. In that letter, Capital One declined to make any changes in its card agreement or arbitration clause and, instead, advised Plaintiff that he was "not satisfied with the terms of [his] card agreement and/or account, … request that you account be coded to close."

32

**David J. Lee, et al. v. Capital One Bank, Inc. et al.,**
**Complaint**

64.    The actions of Capital One in inserting the arbitration provision into the charge customer agreement common to Plaintiff and similarly situated persons was done in violation of Subdivision 19 of California Civil Code § 1770(a) which states that:

"(a)    The following unfair methods of competition and unfair or deceptive acts

or practices undertaken by any person in a transaction intended to result or

which results in the sale or lease of goods or services to any consumer are

unlawful:

… (19).    Inserting an unconscionable provision in the contract."

65.    At all times hereinmentioned, Capital One knew that one or more of the terms of the arbitration provision and/or the arbitration provision itself was unconscionable and illegal under California law.  Notwithstanding that knowledge, Capital One with oppression, fraud or malice and./or in willful and conscious disregard of the laws of California and the legal rights of Plaintiff and similarly situated persons inserted and maintained those unconscionable terms and/or arbitration provision in its customer agreements.

**Sixth Cause of Action**
**(Arbitration Provision --Violation of Bus. & Prof. Code**
**17200 et seq. Due To Illegal Practice**
**In Violation Of Civil Code § 1770 (a)(19)**

66.    Plaintiff repeat and reallege each of the allegations contained in paragraphs 1-4, 6-29, 32-34, 49(a)-(q), as though fully set forth herein.

67.    The actions of Capital One in inserting the arbitration provision into the customer agreement common to Plaintiff and similarly situated persons was done in violation of Subdivision 19 of California Civil Code § 1770(a) which states that:

"(a)    The following unfair methods of competition and unfair or deceptive acts

or practices undertaken by any person in a transaction intended to result or

33

which results in the sale or lease of goods or services to any consumer are unlawful:

… (19).    Inserting an unconscionable provision in the contract."

68.    That is a violation of California Bus. & Prof. Code § 17200 as it is an act in violation of the CLRA.

<u>**Seventh Cause Of Action**</u>
**(Customer agreement – Fraud And Deceit)**

69.    Plaintiff  repeat and reallege each of the allegations contained in paragraphs 1, 5, 6-24, 27, 30-41, 43 as though fully set forth herein.

70.    Beginning at least three years prior to the filing of this Complaint and continuing until the present time (and into the future unless enjoined), Capital One made misrepresentations to Plaintiff and similarly situated persons Capital One card holders that the terms contained in its card member agreement to its credit cards and the customer agreement itself was conscionable, legal, and enforceable, and that the controlling law pertaining to those cards was Delaware law. These representations were made not only in the customer agreement themselves but in direct communications between the card holder and Capital One and on the official Capital One Internet website.    Specifically, the terms of the customer agreement about which these misrepresentations were made are:

"We may add to, remove, amend, or change any part or provision of this Agreement including the annual percentage rate(s) on any charges (including adding new provisions of the same or a different nature as the existing provisions in this Agreement) at any time. "

"You waive the right to receive notice of any waiver or delay or presentment, demand, protest or dishonor and any right you may have to require us to proceed against another party before proceeding against you.  You also waive, to the extent permitted by applicable law, any statute of limitations defense for an additional period of time equal to the applicable limitations period."

34

"This Agreement is to be construed in accordance with and governed by the laws of the United States of American and by the internal laws of the Commonwealth of Virginia without giving effect to any choice of law rule that would cause the application of the laws of any jurisdiction other than the laws of the United States of America or the internal laws of the Commonwealth of Virginia to the rights and duties of the parties. … If a court decides not to enforce a part of this Agreement, this Agreement will then read as if the unenforceable or invalid part were not there, but the remaining parts will remain in effect."

Ex. 7.

71.    These representations made by Capital One were in fact false and made with the intention to deceive and defraud the Plaintiff and similarly situated persons to induce them to act in reliance on these misrepresentations by agreeing to the terms of the agreement and paying fees thereunder.    The true facts are that the identified provisions and the agreement as a whole are unconscionable and illegal under California law (including precedents of the Ninth Circuit Court of Appeals and district courts interpreting and applying California law) on the basis that, for instance, they

(a)    were  imposed on all card holders on a "take it or leave it" basis with no opportunity by the card holder to negotiate any term thereof (see Discover Bank v. Superior Court, supra; Armanderiz v. Foundation Health Psychcare Services, Inc., 24 Cal.4th 83, 113-114, 99 Cal.Rptr.2d 745, 6 P.3d 669 (2000); Shroyer v. New Cingular Wireless Services, Inc., 2007 U.S.App.LEXIS 19560 (9th Cir. 2007));

(b)    were contained in an adhesive form agreement prepared by Capital One and concerning which Capital One was in a much stronger bargaining position than the card holder ( Discover Bank v. Superior Court, supra, 36 Cal.App.4th at 159-160; Armanderiz v. Foundation Health Psychcare Services, Inc., supra, 24

Cal.4[th] at 113-114; <u>Shroyer v. New Cingular Wireless Services, Inc.</u>, 2007 U.S.App.LEXIS 19560 ;

(c)      provide Capital One with a "right" to make any unilateral modification, including adding new terms to the agreement but provide no such right to the card holder, which makes that provision unconscionable and illegal pursuant to <u>Net Global Marketing, Inc. v. Dialtone, Inc.</u>, 217 Fed.Appx. 598, 2007 U.S.App.LEXIS 674 (9th Cir. 2007); <u>Ingle v. Circuit City Stores, Inc.</u>, <u>supra</u>, 328 F.3d at 1179; <u>Geoffrey v. Washington Mutual Bank</u>, 484 F.Supp.2d 1115, 1123 (S.D.Cal. 2007); <u>Bragg v. Linder Research, Inc.</u>, 487 F.Supp.2d 593, 609 (E.D.Pa. 2007)(applying California law); <u>Conglamur v. Circuit City Stores, Inc.</u>, 2004 Cal.App.Unpub.LEXIS 8140 at *13-14 (2004).

(d)      provides that the card holder waives his/her rights without a corresponding waiver of the rights of Capital One; and,

(e)      Capital One has been long been on notice not only that its arbitration provision is unconscionable and unenforceable but, importantly, that in spite of its statements to the contrary, the agreement is controlled by California law.

Further, it knows that it is up to the Courts to determine the severability of terms in a contract of the type involved here.

72.   Plaintiff and similarly situated persons, at the time these representations were made by Capital One and at the time Plaintiff and similarly situated persons took the actions herein alleged, were ignorant of the falsity of Capital One's representations and believed them to be true.  In reliance on these representations, Plaintiff and similarly situated persons were induced to and did enter into the customer agreement with Capital One.

73.    The aforementioned conduct of Capital One was an intentional misrepresentation, deceit, or concealment of a material fact(s) known to Capital One with the intention on the part of Capital One of thereby inducing Plaintiff and similarly situated persons into entering the customer agreement and making payment of the fees thereunder.  It was despicable conduct that subjected the Plaintiff and similarly situated persons to a cruel and unjust hardship in conscious disregard of their rights, so as to justify an award of punitive damages.

### Eighth Cause of Action
**(Customer agreement --Violation of CLRA,
Civil Code § 1770(a)(19)**

74.    Plaintiff Lee  repeats and realleges each of the allegations contained in paragraphs 1, 5, 6-24, 27, 30-41, 43, and 71 as though fully set forth herein.

75.    The Capital One charge card for which an annual fee is paid is a good or service subject to the requirements of CLRA.

76    The actions of Capital One in inserting unconscionable terms into the customer agreement (excepting the arbitration provision) common to Plaintiff and similarly situated persons was done in violation of Subdivision 19 of California Civil Code § 1770(a) which states that:

> "(a)    The following unfair methods of competition and unfair or deceptive acts or practices undertaken by any person in a transaction intended to result or which results in the sale or lease of goods or services to any consumer are unlawful:

> … (19).      Inserting an unconscionable provision in the contract."

77.    At all times hereinmentioned, Capital One knew that one or more of the terms of the customer agreement (excluding the arbitration provision) and/or the agreement itself was

37

unconscionable and illegal under California law.  Notwithstanding that knowledge, Capital One with oppression, fraud or malice and./or in willful and conscious disregard of the laws of California and the legal rights of Plaintiff and similarly situated persons inserted and maintained those unconscionable terms and/or arbitration provision in its customer agreements.

<u>Ninth Cause of Action</u>
**(Customer agreement --Violation of Bus. & Prof. Code 17200 <u>et</u> <u>seq.</u>**
**Due To Illegal Practice Under Civil Code § 1670.5**
**And The Common Law)**

78.    Plaintiff  Lee  repeats and realleges each of the allegations contained in paragraphs 1, 5, 6-24, 27, 30-41, 43, 71 as though fully set forth herein.

79    Various of the customer agreement terms (excepting the arbitration provision) and the agreement itself which was inserted into the contract between Capital One and Plaintiff (and other similarly situated persons), are unconscionable, illegal and thereby violates California Civil Code § 1670.5 and the common law relating to unconscionability of contracts and contractual provision in that, among other reasons, it

(a)    was  imposed on all card holders on a "take it or leave it" basis with no opportunity by the card holder to negotiate any term thereof (<u>see</u> <u>Discover Bank v. Superior Court</u>, (a) was imposed on all card holders on a "take it or leave it" basis with no opportunity by the card holder to negotiate any term thereof (<u>see Discover Bank v. Superior Court</u>, 36 Cal.App.4[th] 148, 159-160, 40 Cal.Rtpr.3d 76 (2005); <u>Armanderiz v. Foundation Health Psychcare Services, Inc.</u>, 24 Cal.4[th] 83, 113-114, 99 Cal.Rptr.2d 745, 6 P.3d 669 (2000); <u>Shroyer v. New Cingular Wireless Services, Inc.</u>, 2007 U.S.App.LEXIS 19560 (9th Cir. 2007));

(b)    was contained in an adhesive form agreement prepared by Capital One and concerning which Capital One was in a much stronger bargaining position

38

than the card holder (ibid.);    Discover Bank v. Superior Court, supra, 36 Cal.App.4th at 159-160; Armanderiz v. Foundation Health Psychcare Services, Inc., supra, 24 Cal.4th at 113-114; Shroyer v. New Cingular Wireless Services, Inc., 2007 U.S.App.LEXIS 19560 ;

(c)    provides Capital One with a "right" to make any unilateral modification, including adding new terms to the agreement but provide no such right to the card holder, which makes that provision unconscionable and illegal pursuant to Net Global Marketing, Inc. v. Dialtone, Inc., 217 Fed.Appx. 598, 2007 U.S.App.LEXIS 674 (9th Cir. 2007); Ingle v. Circuit City Stores, Inc., supra, 328 F.3d at 1179; Geoffrey v. Washington Mutual Bank, 484 F.Supp.2d 1115, 1123 (S.D.Cal. 2007); Bragg v. Linder Research, Inc., 487 F.Supp.2d 593, 609 (E.D.Pa. 2007)(applying California law); Conglamur v. Circuit City Stores, Inc., 2004 Cal.App.Unpub.LEXIS 8140 at *13-14 (2004).

(d)    provides a waiver of the rights of the card holder without waiving any corresponding rights of Capital One; and,

(e)    Capital One has long been on notice not only that its arbitration provision is unconscionable and unenforceable but, importantly, that in spite of its statements to the contrary, the agreement is controlled by California law.

Further, Capital One has long been on notice that only the Courts may determine issues of severability of contractual terms and unenforceability.

David J. Lee, et al. v. Capital One Bank, Inc. et al.,
Complaint

**Tenth Cause of Action**
**(Customer agreement --Violation of Bus. & Prof. Code 17200 et seq.
Due To Unfair Practice**

80.    Plaintiff  repeat and reallege each of the allegations contained in paragraphs 1, 5, 6-24, 27, 30-41, 43 and 71 as though fully set forth herein.

81.    Capital One's customer agreement and/or its specified terms (excluding the arbitration provision), due to its unconscionability and illegality, is an unfair practice that either "offends an established public policy [as represented by Civil Code §§ 1670.5] or … is immoral, unethical, oppressive, unscrupulous or substantially injurious to consumers," [Smith v. State Farm Mutual Automobile Ins. Co., 93 Cal.App.4th 700,   718-719, 113 Cal.Rtpr.2d 399 (2001)], or which violates public policy tethered to specific constitutional, statutory or regulatory provisions.  Cel-Tech Communications, Inc. v. Los Angeles Cellular Telephone Co., 20 Cal.4th 163, 187, 83 Cal.Rptr.2d 548, 973 P.2d 527.

82.    An unconscionable contract or contract provision or term is, as a matter of law, an unfair practice under the UCL.  See   Cel-Tech Communications, Inc. v. Los Angeles Cellular Telephone Co., supra, 20 Cal.4th at 183; People v. McKale, 25 Cal.3d 626, 683-84 (1979); Smith v. State Farm Mutual Automobile Ins Co., supra, 93 Cal.App.4th at 719; State Farm Fire & Casualty Co. v. Superior Court, 45 Cal.App.4th 1093, 1104, 53 Cal.Rptr.2d 229 (1996); Lyddon v. Rocha-Albertsen, 2006 U.S.Dist.LEXIS 78957 (E.D. Cal. 2006); Ting v. AT&T, 182 F.Supp.2d 902, 921-22, aff'd in part, rev'd on other grounds in part, 319 F.3d 1126, 1150 (9th Cir. 2003).

**David J. Lee, et al. v. Capital One Bank, Inc. et al.,**
**Complaint**

## Eleventh Cause Of Action
### (Declaratory Judgment)

83.    Plaintiff  repeat and reallege each of the allegations contained in paragraphs 1-49 as though fully set forth herein.

84.    An actual  controversy has arisen and now exists between Plaintiff and Capital One concerning the unconscionability and illegality of Capital One's customer agreement and arbitration provision contained in that customer agreement, respectively, that is common to all credit cards issued by Capital One for which a fee is paid by the card holder.  Plaintiff take the position that the customer agreement and the arbitration provision contained therein are unconscionable and illegal under controlling California and Ninth Circuit law and precedents. Capital One takes the obverse position claiming that its customer agreement and its arbitration provision contained therein is conscionable and legal.

85.    Plaintiff desire a judicial determination of their rights and duties, and a declaration that the arbitration provision and/or the customer agreement and/or specified terms of the customer agreement are unconscionable, illegal and unenforceable.

86.    A judicial determination is necessary and appropriate at this time under the circumstances in order that Plaintiff may ascertain their rights and duties.

## Class Allegations

87.    The Plaintiff are members of classes of consumers and residents of California, respectively, and the members of these classes of consumers and residents of California are similarly situated and similarly affected by the acts of Capital One.

88.    Pursuant to Fed.R.Civ.P. 23(b)(2) and, alternatively (b)(3)(insofar as an award of equitable statutory and non-statutory restitutionary and injunctive relief is secondary to any

41

punitive damages monetary award), Plaintiff seek certification of the following classes and subclasses:

    (a)    Relative to all UCL and fraud causes of action,

        (1)    All persons and entities residing in California who, according to the records of Capital One, have been issued and have paid or are paying annual fees to Capital One for Capital One credit cards issued by Capital One (including its subsidiaries, affiliates, or licensees) bearing the Capital One name or the Capital One trade or service mark or logo pursuant to a customer agreement containing the same or similar terms and provisions as those contained in Ex. 7 during any part of the period covered by the applicable limitations period and pendency of this action to the time of final judgment.

    (b)    Relative to all CLRA causes of action,

        (1)    All consumers residing in California who for personal or household use have been, according to the records of Capital One, been issued and have paid or are paying annual fees to Capital One for Capital One credit cards issued by Capital One (including its subsidiaries, affiliates, or licensees) bearing the Capital One name or the Capital One trade or service mark or logo pursuant to a card member agreement containing the same or similar terms and provisions as those contained in Ex. 7 during any part of the period covered by the applicable limitations period and pendency of this action to the time of final judgment.

42

89.     Excluded from each class of which Plaintiff seeks certification are (a) all officers and employees of Capital One, including its subsidiaries, affiliates, or licensees; (b) persons who, as of the date of class certification, have pending in any court an individual action against any Defendant named in this action, or who have obtained a judgment against any Defendant named in this action, or who have executed a release in favor of any Defendant named in this action which encompasses, adjudicates or releases all of the certified claims in this action; (c) judges, court personnel, and jurors hearing this matter.

90.     It is impracticable to bring all members of the above classes, as individual Plaintiffs, before this court for the reason that the members of the classes are too numerous, representing as they do the fee-paying holders of Capital One credit cards residing in California, the number of which are estimated at approximately 53.6 million cards.

91.     Each member of the Plaintiff classes has suffered an injury of the type and size to that suffered by Plaintiff and that denial of class relief would result in unjust advantage to Defendants.

92.     Plaintiff is informed and believes, and thereon alleges, that the questions of law or fact common to the classes are substantially similar and predominate over the questions affecting the individual members in that the predominating and primary issues presented are ones of law (i.e., a common core of salient facts and legal theories relating to the unconscionability and illegality of the common "form" arbitration provision and common "form" customer agreement, respectively, imposed by Capital One on its card holders) and the relief sought is identical (i.e., restitutionary relief, injunctive relief, and common pool of punitive damages).

93.     The claims and defenses of the Plaintiff are typical of the claims and defenses of the classes in that there is a commonality of interests by and between Plaintiff and the members of

43

the classes they seek to represent that is patent in that (a) the nature of the claims are identical and predominant common questions of law or fact are exclusively involved (the unconscionability of terms in the arbitration provision and customer agreement, respectively, that are common to all of the form provisions and agreements imposed by Capital One on a "take it or leave it" basis on the card holders and, as to the fraud cause of action, common reliance on the misrepresentations by Plaintiff and class members exists); (b)     the Plaintiff, as class representatives, are typical of the classes and have only claims and defenses that are typical of those of the respective classes in that, for instance, the claims for and quantum of injunctive and restitutionary relief are identical for each member of each class (i.e., the amount of the fee(s) paid by them) or easily subject to proof without separate adjudications.

94.     The interests of the respective classes will be fairly and adequately protected by the Plaintiff for the reasons that the success or failure of the Plaintiff is identical with the success or failure of each of the members of the classes, no antagonisms exist between the interest of the Plaintiff and the classes, Plaintiff are committed to the vigorous prosecution of this action, and Plaintiff' counsel is experienced and knowledge in the area of consumer protection law and class actions.

95.     A risk exists that prosecution of separate actions by Plaintiff and the members of the respective classes they seek to represent would create a risk of incompatible or inconsistent adjudications and incompatible standards of conduct for Defendant or create a risk of prejudice to individual class members not parties to the action.

96.     Capital One has acted or refused to act on grounds generally applicable to the class in that it has a common form arbitration and customer agreement, respectively, and uniformly

44

refuses to modify its agreement and arbitration provision on grounds generally applicable to the class.

97.     The injunctive, restitutionary, and/or declaratory relief sought by the individual Plaintiff would benefit the class as a whole.

98.     Common questions of fact or law involving the class claims predominate over questions affecting individual members and a class action is the superior method for a fair and efficient adjudication of the case.

99.     Plaintiff is advised and believes, and on that basis alleges, that as each of the classes and sub-classes as alleged no notice is required in that the statutory injunctive and restitutionary relief as well as declaratory relief sought predominate over any claim for monetary damages in the form of punitive damages.

**Prayer For Relief**

WHEREFORE, Plaintiff prays on behalf of himself and all other California consumers and residents, respectively, who are similarly situated and constitute the respective classes, which Plaintiff seeks to represent judgment as follows:

a.     For an order requiring Defendants to show cause why they should not be enjoined as hereinafter set forth, during the pendency of this action;

b.     For a temporary restraining order, a preliminary injunction and a permanent injunction, all enjoining Defendants and their respective agents, servants, parents, subsidiaries, assigns and employees, and all persons acting under, in concert with, or for it from enforcing the Arbitration Provision of the Capital One customer agreement found to be unenforceable because of unconscionability or illegality.

c.     For a temporary restraining order, a preliminary injunction and a permanent injunction,

45

all enjoining Defendants and their respective agents, servants, parents, subsidiaries, assigns and employees, and all persons acting under, in concert with, or for it from enforcing the Capital One customer agreement found to be unenforceable because of unconscionability or illegality, or fraud.

d.      For non-statutory and/or statutory restitution (including disgorgement of profits) for all causes of action.

e.      For punitive damages relative to the CLRA and fraud causes of action, respectively.

f.      For declaratory judgment.

h.      For attorneys fees and costs as authorized by statute as to the CLRA claims and by precedent as to the respective UCL and fraud causes of action.

i.      For such other and further relief was the court may deem proper.


Dated: September 4, 2007                                    Respectfully submitted,



                                                           _____
                                                           Matthew S. Hale
                                                           Attorney for Plaintiff

46



Capital One Home | ▼ Find Products | ▼ Access Your Account | ▼ Customer Service

**CapitalOne** what's in your wallet?®

| Credit Cards Home | Apply for a Mail Offer | Learn About Rewards | Browse Our Credit Cards | Saving Zone |

# Capital One® No Hassle Miles℠ Ultra—For Professionals

| Overview | **Disclosures** |

**Apply Now**

| | |
|---|---|
| **ANNUAL PERCENTAGE RATE** (APR) for purchases‡ | 0% (0.00000% daily periodic rate) through your 05/2008 billing period. After that, a variable rate, currently equal to **13.9%** (0.03808% daily periodic rate). |
| Other **APR**s | Special transfer APR: A variable rate, currently equal to 13.9% (0.03808% daily periodic rate).▽<br>Balance transfer APR: Same as for purchases.<br>Cash advance APR: A variable rate, currently equal to 19.8% (0.05425% daily periodic rate).<br>Default APR: A variable rate, currently equal to 28.15% (0.07712% daily periodic rate). See explanation below. ‡ |
| Variable Rate Information | Your purchase APR may vary quarterly. The rate will be determined by adding 5.65% to the Prime rate. Your special transfer segment APR may vary quarterly. The rate will be determined by adding 5.65% to the Prime rate. Your cash APR may vary quarterly. The rate will be determined by adding 11.55% to the Prime rate.♦ Rates in effect 07/01/07. Your default APR may vary monthly. The rate will be determined by adding 19.9% to the Prime rate.♦♦ Rate in effect 08/01/07. |
| Grace period for repayment of the balance for purchases. | 25 days from the date of the periodic statement on new purchases (provided you have paid your previous balance in full by the due date). |
| Method of computing the balance for purchases. | Average daily balance (including new purchases). |
| Membership Fee | $39 annually. |
| Minimum finance charge | For each Billing Period that your Aount is subject to a finance charge, a minimum total **FINANCE CHARGE** of $0.50 will be imposed. |
| Miscellaneous Fees | Cash advance fee: 3% of amount of the cash advance, but not less than $5.<br>Transfer fee: None.<br>Late payment fee: Your late payment fee will be based on the amount of your account balance at the time the fee is applied. Balance of $0 - $99.99 = $19 fee; balance of $100 - $999.99 = $29 fee; balances of $1,000 or more = $39 fee.<br>Over-the-credit-limit fee: None. |

Returned payment fee: $29.
Foreign transaction fee: None.

| **Things You Should Know About This Card** |

▽ **What Will Be My APR If I Transfer A Balance?**
Any balances that you successfully transfer on or before June 1, 2008 will receive the Special Transfer APR disclosed above. All subsequent balances that you transfer will receive the Purchase APR disclosed above unless the transfer is made in connection with a Future Offer from us. Please remember that Future Offers, as discussed below, may include different terms.

‡ **Can You Increase My APRs?**
We will not increase your introductory APRs for any reason before the end of the introductory period. Your variable non-introductory APRs can go up or down each quarter as the Prime rate goes up or down. Your APRs can increase to the Default APR if your payment is received late (3 or more days after your payment due date) twice within any 12 billing periods. If we increase your APRs for late payments, we will return you to your prior APRs if you make at least the minimum payment on time for 12 consecutive billing periods. If we change your non-introductory APRs for reasons other than when the Prime changes or you paid

late as disclosed above, we will notify you in writing of your options in advance, including the right to opt out.

**What About Any Other Terms Of My Account?**
We may change any other terms of your account, other than APRs, at any time. If we change any of these terms, we will notify you in advance of your options in writing, including the right to opt out of certain changes.

**Do You Engage In Universal Default?**
We do not engage in a practice known as "universal default." Universal default permits a credit card company to increase your APRs simply because you fail to make a payment on a loan with another lender or your credit history contains other negative information.

**How Do You Calculate My Variable Rate?**
◆ We calculate your variable rate by adding a percentage to the Prime rate published in the "Money Rates" section of *The Wall Street Journal* on the 25th day of December, March, June and September. If the *Journal* is not published on that day, then see the immediately preceding edition. If Prime changes, your new rate will take effect on the first day of your January, April, July and October billing period.
◆◆ We calculate your variable rate by adding a percentage to the Prime rate published in the "Money Rates" section of *The Wall Street Journal* on the 25th day of each month. If the *Journal* is not published on that day, then see the immediately preceding edition. If Prime changes, your new rate will take effect on your next billing period.

**What About Future Offers?**
At any time in the future, we may extend new offers in connection with this account, including opportunities to transfer additional balances. These new products and services may have different APRs, fees and other terms. We will provide any different terms when we make you the new offer, and you may accept or decline any such offer.

**How Do You Determine My Credit Line?**
We determine your revolving credit line based on your credit history and information you provide on your application. If your application is approved, you will receive a revolving credit line between $5,000 and $30,000.

**◊ How Does The No Pre-Set Spending Limit Feature Work?**
This card comes with no pre-set spending limit. The no pre-set spending feature does not mean unlimited spending. We may decline any charge, including those exceeding your revolving credit line. We may evaluate any charges that would take you over your revolving credit line based on several factors, including the amount of the charge, your account balance, your payment history, your usage and your performance. If we do not authorize a charge, we may review your revolving credit line to determine if we should increase it.

**How Do You Apply My Payment?**
We will apply your payment to pay off lower-rate balances before paying off higher-rate balances.

**How Do You Calculate My Minimum Payment?**
Your usual minimum payment is 3% of your outstanding balance. If you use your no pre-set spending limit feature, we include the amount you've gone over your revolving credit line in the minimum payment, as well. If your balance is less than $10, your minimum payment will equal your balance.

**Is There A Minimum Income Requirement For This Card?**
Yes. The minimum gross annual income required for an account is $10,000.

| Things You Should Know About This Rewards Program |
|---|

**\* How Do I Earn Miles?**
Every time you use the card, you'll earn 2 miles per dollar on your net purchases (purchases minus any credits or returns). The following items will not earn miles: cash advances, transferred balances, any checks used to access your account, finance charges, fees of any kind, service charges, unauthorized charges and ATM transactions.

**What Happens To My Miles If I Pay Late?**
If a late fee is charged to your account, you will lose any miles applied to your rewards balance during the billing cycle containing the fee.

**Will My Miles Ever Expire?**
Your miles are yours for the life of the account—they won't expire. But if your account is closed, you'll lose any miles you haven't redeemed.

**Is There A Limit To The Number Of Miles I Can Earn?**
There's no cap to the amount of miles you can earn on purchases.

**§ How Do I Redeem My Miles For Flights?**

There are two ways to redeem your miles:
1) You can contact our Rewards Center toll free to book your travel. Or,
2) You can buy your ticket (anywhere you choose—online, in person, or over the phone) with your No Hassle Miles card. You'll then have 90 days from the date your airline ticket purchase posts to your account to call our Rewards Center or redeem your miles online at www.capitalone.com/milesrewards to get reimbursed for the cost of the ticket.

The number of miles you need for travel varies, and depends on the cost of the ticket you choose. Here's how it works:

| Price of airline ticket | Number of No Hassle Miles needed |
| --- | --- |
| Up to $150 | 15,000 miles |
| $150.01 to $350 | 35,000 miles |
| $350.01 to $600 | 60,000 miles |
| $600.01 and greater | the price of the ticket x 100 |

We include all associated taxes, airport security fees, fuel surcharges and other usage fees required for travel in the overall calculation to determine how many miles are required for redemption. To redeem your miles, your account must be open and in good standing, which means it isn't past due, overlimit, fraudulent, restricted, part of a consumer credit counseling program or in a bankruptcy settlement.

### Can I Redeem My Miles For Something Other Than Air Travel?
You can redeem your miles for cash, gift cards, and brand-name merchandise and more. Rates for these other redemption options vary and are subject to change without notice. Once approved, you can visit www.capitalone.com/milesrewards to register your account and see a complete description of current redemption offers.

These program benefits cannot be added to an existing Capital One account.

The No Hassle Miles Ultra MasterCard is intended to be used for business-to-business purchases only.

---

### Terms and Conditions

I am applying to Capital One Bank (Capital One®) for a credit card account. Everything that I have stated in this application is correct to the best of my knowledge. I understand that approval is based upon satisfying Capital One's credit standards and that I may be ineligible if I have responded to a previous offer for a credit card issued by Capital One within the last 45 days or if I have been approved for a previous Capital One offer. Capital One maintains the right not to open my account if: (a) the information provided on or with my application is incomplete, inaccurate or unverifiable, or I no longer meet Capital One's standards for creditworthiness; (b) my name and/or mailing address has been altered; (c) Capital One receives my application after it has expired. I understand that I must be at least 18 years of age and have a valid social security number, unless otherwise specified to qualify for this offer.  I understand that, unless the offer discloses a specific credit line, the exact amount of my credit line will be determined by Capital One after review of my application and other information. I understand that you will retain my application whether or not it is approved. You are authorized to answer questions about your credit experience with me. If I am applying for a Transfer Request, I authorize Capital One to bill my approved Capital One credit card account for the amount(s) listed for transfers. I understand that I am applying for a transfer amount up to the total amount listed on my Transfer Request. I understand Capital One will advise me if it is unable to process my payment request for any reason. In addition, Capital One will not be responsible for any charges billed to me by other creditors for the transfers and Capital One will process only those Transfer Requests that can be transferred under my assigned credit line. Arbitration:  I understand that the Customer Agreement contains an Arbitration Provision that may limit my legal rights, including my right to go to court, to have a jury trial, and to participate in class actions. I will receive the Capital One Customer Agreement and am bound by its terms and future revisions thereof. This offer is nontransferable and is void to residents of the dependent areas of the U.S. An applicant, if married, may apply for a separate account. © 2007 Capital One Services, Inc. Capital One is a federally registered service mark. All rights reserved. Capital One supports information privacy protection: see our website at www.capitalone.com.

### STATE SPECIFIC INFORMATION

#### California Residents:

Applicants: 1) may, after credit approval, use the credit card account up to its credit limit; 2) may be liable for amounts extended under the plan to any joint applicant. As required by law, you are hereby notified that a negative credit report reflecting on your credit record may be submitted to a credit reporting agency if you fail to fulfill the terms of your credit obligations.

#### Ohio Residents:

Ohio anti-discrimination laws require creditors to make credit equally available to all creditworthy customers and that credit reporting agencies maintain separate credit histories on individuals upon request. The Ohio Civil Rights Commission administers these laws.

#### New York and Vermont Residents:

Capital One may obtain at any time your credit reports for any legitimate purpose associated with the account or the application or request for an account, including but not limited to reviewing, modifying, renewing and collecting on your account. On your request you will be informed if such a report was ordered. If so, you will be given the name and address of the consumer reporting agency furnishing the report. New York residents may contact the New York State Banking Department (1-800-518-8866) for a comparative list of credit card rates, fees, and grace periods.

**Married Wisconsin Applicants:**

No provision of any marital property agreement, unilateral statement, or court order applying to marital property will adversely affect a creditor's interests unless prior to the time credit is granted, the creditor is furnished with a copy of the agreement, statement or court order, or has actual knowledge of the provision.

**YOUR BILLING RIGHTS**
**KEEP THIS NOTICE FOR FUTURE USE.**
This notice contains important information about your rights and our responsibilities under the Fair Credit Billing Act.

**NOTIFY US IN CASE OF ERRORS OR QUESTIONS ABOUT YOUR BILL.** If you think your bill is wrong, or if you need more information about a transaction on your bill, write to us on a separate sheet as soon as possible at the address listed on your bill. We must hear from you no later than 60 days after we sent you the first bill on which the error or problem appeared. You can telephone us, but doing so will not preserve your rights. In your letter, please provide the following information:

1. Your name and account number.
2. The dollar amount of the suspected error.
3. Describe the error and explain, if you can, why you believe there is an error. If you need more information, describe the item you are not sure about.

If you have authorized us to pay your credit card bill automatically from your savings or checking account, you can stop the payment on any amount you think is wrong. To stop the payment, your letter must reach us three business days before the automatic payment is scheduled to occur.

**YOUR RIGHTS AND OUR RESPONSIBILITIES AFTER WE RECEIVE YOUR WRITTEN NOTICE.**
We must acknowledge your letter within 30 days, unless we have corrected the error by then. Within 90 days, we must either correct the error or explain why we believe the bill was correct.

After we receive your letter, we cannot try to collect any amount you question, or report you as delinquent. We can continue to bill you for the amount you question, including finance charges, and we can apply any unpaid amount against your credit limit. You do not have to pay any questioned amount while we are investigating, but you are still obligated to pay the parts of your bill that are not in question.

If we find that we made a mistake on your bill, you will not have to pay any finance charges related to any questioned amount. If we didn't make a mistake, you may have to pay finance charges, and you will have to make up any missed payments on the questioned amount. In either case, we will send you a statement of the amount you owe and the date that it is due. If you fail to pay the amount that we think you owe, we may report you as delinquent. However, if our explanation does not satisfy you and you write to us within ten days telling us that you still refuse to pay, we must tell anyone we report you to that you have a question about your bill. And, we must tell you the name of anyone we reported you to. We must tell anyone we report you to that the matter has been settled between us when it finally is. If we don't follow these rules, we can't collect the first $50 of the questioned amount, even if your bill was correct.

**SPECIAL RULE FOR CREDIT CARD PURCHASES.**
If you have a problem with the quality of property or services that you purchased with a credit card and you have tried in good faith to correct the problem with the merchant, you may have the right not to pay the remaining amount due on the property or services. There are two limitations on this right:

a. You must have made the purchase in your home state or, if not within your home state, within 100 miles of your current mailing address; and
b. The purchase price must have been more than $50.

These limitations do not apply if we own or operate the merchant, or if we mailed you the advertisement for the property or services.

**IMPORTANT INFORMATION ABOUT YOUR CREDIT CARD ACCOUNT**

**FINANCE CHARGE.**

1. Transactions which are not subject to a grace period are assessed finance charges 1) from the date of the transaction or 2) from the date the transaction is processed to your account or 3) from the first calendar day of the current billing period. Additionally, if you did not pay the "New Balance" from the previous billing period in full, finance charges continue to accrue to your unpaid balance until the unpaid balance is paid in full. This means that you may still owe finance charges, even if you pay the entire New Balance indicated on the front of your statement by the payment due date, but did not do so for the previous month. Unpaid finance charges are added to the applicable segment of your account. Cash advances (the cash advance segment) and special transfers (if your account includes a special transfer segment) may not avoid finance charges.
2. **Cash Advance, Purchase/Balance Transfer/Other Charges and Special Transfer or Special Purchase Segments (If Your Account Includes a Special Transfer or Special Purchase Segment)**
   Finance charge is calculated by multiplying the daily balance of each segment of your account (e.g., cash advance, purchase, special transfer, and special purchase) by the corresponding daily periodic rate(s) that has been previously disclosed to you. At the end of each day during the billing period, we apply the daily periodic rate for each segment of your account to the daily balance of each segment. Then at the end of the billing period, we add up the results of these daily calculations to arrive at your periodic finance charge for each segment. We add up the results from each segment to arrive at the total periodic finance charge for your account.
   To get the daily balance for each segment of your account, we take the beginning balance for each segment and add any new transactions and any periodic finance charge calculated on the previous day's balance for that segment. We then subtract any payments or credits posted as of that day

that are allocated to that segment. This gives us the separate daily balance for each segment of your account. However, if you paid the New Balance shown on your previous statement in full (or if your new balance was zero or a credit amount), new transactions which post to your purchase or special purchase segments are not added to the daily balances.

To calculate your total finance charge, multiply your average daily balance by the daily periodic rate and by the number of days in the billing period. Due to rounding on a daily basis, there may be a slight variance between this calculation and the amount of finance charge actually assessed.

3. **Determining Daily Periodic Rates.** Divide the corresponding Annual Percentage Rate by 365 and round up to the nearest 1/100,000th of 1%, not to exceed the maximum allowed by applicable law. If the daily periodic rates and corresponding Annual Percentage Rates increase, the Finance Charge will increase and your minimum payment may be greater. Refer to the IMPORTANT DISCLOSURES for daily periodic rates and Annual Percentage Rates.

## OTHER CHARGES:

**Copying Charge:** $3.00 for a copy of a Periodic Statement and $2.00 for a copy of a transaction (fee imposed per copy).

## IMPORTANT INFORMATION ABOUT PROCEDURES FOR APPLYING FOR OR OPENING A NEW ACCOUNT.

To help the government fight the funding of terrorism and money laundering activities, Federal law requires all financial institutions to obtain, verify and record information that identifies each person who opens an account. What this means for you: When you apply for or open an account, we will ask for your name, address, date of birth and other information that will allow us to identify you.

---

**Apply Now**

Earn personal rewards for business expenses. Apply Now!

About Capital One  |  Investors  |  Press  |  Careers  |  Financial Education

Canada

UK

Capital One does not provide, endorse, nor guarantee and is not liable for third party products, services, educational tools, or other information available through this site. Read additional disclosures.

MEMBER FDIC    Equal Housing Lender

Site Map | Privacy | Security | Terms and Conditions

This site provides information about and access to financial services offered by the Capital One family of companies, including Capital One Bank and Capital One, N.A., members FDIC.
©2007 Capital One Services, Inc.
Capital One is a federally registered service mark. All rights reserved.
Blank Check® is a registered trademark of Capital One Services, Inc.

Credit Cards | Auto Loans | Direct Banking | Home Loans | Healthcare Finance | Personal Loans | Small Business | Commercial



◀ Capital One Home ▼ Find Products | ▼ Access Your Account | ▼ Customer Service

**CapitalOne** what's in your wallet?®

| Credit Cards Home | Apply for a Mail Offer | Learn About Rewards | **Browse Our Credit Cards** | Saving Zone |

# Capital One® No Hassle CashSM Rewards

Overview | **Disclosures**

| **Apply Now** | **ANNUAL PERCENTAGE RATE** (APR) for purchases‡ | 0% (0.00000% daily periodic rate) through your 02/2008 billing period. After that, a variable rate, currently equal to **16.9%** (0.04630% daily periodic rate). |
| | Other **APR**s | Special transfer APR: A variable rate, currently equal to 16.9% (0.04630% daily periodic rate).▽<br>Balance transfer APR: Same as for purchases.<br>Cash advance APR: A variable rate, currently equal to 19.8% (0.05425% daily periodic rate).<br>Default APR: A variable rate, currently equal to 28.15% (0.07712% daily periodic rate). See explanation below. ‡ |
| | Variable Rate Information | Your purchase APR may vary quarterly. The rate will be determined by adding 8.65% to the Prime rate. Your special transfer segment APR may vary quarterly. The rate will be determined by adding 8.65% to the Prime rate. Your cash APR may vary quarterly. The rate will be determined by adding 11.55% to the Prime rate. ♦ Rates in effect 07/01/07. Your default APR may vary monthly. The rate will be determined by adding 19.9% to the Prime rate.♦♦  Rate in effect 09/01/07. |
| | Grace period for repayment of the balance for purchases. | 25 days from the date of the periodic statement on new purchases (provided you have paid your previous balance in full by the due date). |
| | Method of computing the balance for purchases. | Average daily balance (including new purchases). |
| | Membership Fee | $29 annually. |
| | Minimum finance charge | For each Billing Period that your Account is subject to a finance charge, a minimum total **FINANCE CHARGE** of $0.50 will be imposed. |
| | Miscellaneous Fees | Cash advance fee: 3% of amount of the cash advance, but not less than $5.<br>Transfer fee: None.<br>Late payment fee: Your late payment fee will be based on the amount of your account balance at the time the fee is applied. Balance of $0 - $99.99 = $19 fee; balance of $100 - $999.99 = $29 fee; balances of $1,000 or more = $39 fee.<br>Over-the-credit-limit fee: Your over-the-credit-limit fee will be based on the amount of your credit limit at the time the fee is applied. Credit limit of $0 - $499.99 = $19 fee; credit limit of $500 - $999.99 = $29 fee; credit limits of $1,000 or more = $39 fee. |

Returned payment fee: $29.
Foreign transaction fee: None.

| **Things You Should Know About This Card** |

▽ **What Will Be My APR If I Transfer A Balance?**
Any balances that you successfully transfer on or before March 1, 2008 will receive the Special Transfer APR disclosed above. All subsequent balances that you transfer will receive the Purchase APR disclosed above unless the transfer is made in connection with a Future Offer from us. Please remember that Future Offers, as discussed below, may include different terms.

‡ **Can You Increase My APRs?**
We will not increase your introductory APRs for any reason before the end of the introductory period. Your variable non-introductory APRs can go up or down each quarter as the Prime rate goes up or down. Your APRs can increase to the Default APR if your payment is received late (3 or more days after your payment due date) twice within any 12 billing periods. If we increase your APRs for late payments, we will return you to your prior APRs if you make at least the minimum payment on time for 12

consecutive billing periods. If we change your non-introductory APRs for reasons other than when the Prime changes or you paid late as disclosed above, we will notify you in writing of your options in advance, including the right to opt out.

### What About Any Other Terms Of My Account?

We may change any other terms of your account, other than APRs, at any time. If we change any of these terms, we will notify you in advance of your options in writing, including the right to opt out of certain changes.

### Do You Engage In Universal Default?

We do not engage in a practice known as "universal default." Universal default permits a credit card company to increase your APRs simply because you fail to make a payment on a loan with another lender or your credit history contains other negative information.

### How Do You Calculate My Variable Rate?

◆ We calculate your variable rate by adding a percentage to the Prime rate published in the "Money Rates" section of *The Wall Street Journal* on the 25th day of December, March, June and September. If the *Journal* is not published on that day, then see the immediately preceding edition. If Prime changes, your new rate will take effect on the first day of your January, April, July and October billing period.

❖❖ We calculate your variable rate by adding a percentage to the Prime rate published in the "Money Rates" section of *The Wall Street Journal* on the 25th day of each month. If the *Journal* is not published on that day, then see the immediately preceding edition. If Prime changes, your new rate will take effect on your next billing period..

### What About Future Offers?

At any time in the future, we may extend new offers in connection with this account, including opportunities to transfer additional balances. These new products and services may have different APRs, fees and other terms. We will provide any different terms when we make you the new offer, and you may accept or decline any such offer.

### ◊ How Do You Determine My Credit Line?

We determine your credit line based on your credit history and information you provide on your application. If your application is approved, you will receive a credit line between $300 and $3,000.

### How Do You Apply My Payment?

We will apply your payment to pay off lower-rate balances before paying off higher-rate balances.

### How Do You Calculate My Minimum Payment?

Your minimum payment will be the greater of 3% of your outstanding balance or $15. If your balance is less than $15, your minimum payment will equal your balance.

| Things You Should Know About This Rewards Program |
| --- |

### * How Do I Earn Cash?

Every time you use the card, you'll earn 1% cash back on your net purchases (purchases minus any credits or returns). The following items will not earn cash or bonus cash: cash advances, transferred balances, any checks used to access your account, finance charges, fees of any kind, service charges, unauthorized charges and ATM transactions.

### How Does My Annual Bonus Work?

You will be awarded an annual bonus equal to 25% of your prior year's rewards earnings.  Annual bonus period runs from November 1st of previous year to October 31st.  The bonus will be applied to your rewards balance each year during the month of November and will appear on your statement within two billing cycles.

### Will My Cash Ever Expire?

Your cash is yours for the life of the account—it won't expire. But if your account is closed, you'll lose any cash you haven't redeemed.

### Is There A Limit To The Amount Of Cash I Can Earn?

There's no cap to the amount of cash you can earn on purchases.

### How Do I Get My Cash?

You can choose how you receive your cash back; options include: (1) upon request, (2) automatically at a set time each calendar year or (3) automatically when a specific threshold ($25, $50, $100 or $200) has been reached.  You can get your cash any time you want by calling the Rewards Center toll free or going online to www.capitalone.com/cashrewards. To redeem your cash, your account must be open and in good standing, which means it isn't past due, overlimit, fraudulent, restricted, part of a consumer credit counseling program or in a bankruptcy settlement.

### What Happens If I Do Not Set Up My Redemption Schedule?

Until you customize your redemption schedule, you'll receive your cash back upon your request.

### How Often Can I Change My Redemption Schedule?

You may change your elected redemption schedule at any time, but you cannot request an annual redemption to be fulfilled in the same month you make a change.  If you have an automatic redemption schedule, you may also make upon-request redemptions without interfering with your pre-established automatic redemption schedule.

### Can I Redeem For Something Other Than Cash?

You can also redeem for gift cards starting at $20. Rates for this redemption option vary and are subject to change without notice. Once approved, you can visit www.capitalone.com/cashrewards to register your account and see a complete description of current redemption offers.

These program benefits cannot be added to an existing Capital One account.

---

### Terms and Conditions

I am applying to Capital One Bank (Capital One®) for a credit card account. Everything that I have stated in this application is correct to the best of my knowledge. I understand that approval is based upon satisfying Capital One's credit standards and that I may be ineligible if I have responded to a previous offer for a credit card issued by Capital One within the last 45 days or if I have been approved for a previous Capital One offer. Capital One maintains the right not to open my account if: (a) the information provided on or with my application is incomplete, inaccurate or unverifiable, or I no longer meet Capital One's standards for creditworthiness; (b) my name and/or mailing address has been altered; (c) Capital One receives my application after it has expired. Capital One may contact me to obtain or confirm application information within 21 days of the receipt of my application. I understand that I must be at least 18 years of age and have a valid social security number, unless otherwise specified to qualify for this offer.  I understand that, unless the offer discloses a specific credit line, the exact amount of my credit line will be determined by Capital One after review of my application and other information. I understand that you will retain my application whether or not it is approved. You are authorized to answer questions about your credit experience with me. If I am applying for a Transfer Request, I authorize Capital One to bill my approved Capital One credit card account for the amount(s) listed for transfers. I understand that I am applying for a transfer amount up to the total amount listed on my Transfer Request. I understand Capital One will advise me if it is unable to process my payment request for any reason. In addition, Capital One will not be responsible for any charges billed to me by other creditors for the transfers and Capital One will process only those Transfer Requests that can be transferred under my assigned credit line. Arbitration:  I understand that the Customer Agreement contains an Arbitration Provision that may limit my legal rights, including my right to go to court, to have a jury trial, and to participate in class actions. I will receive the Capital One Customer Agreement and am bound by its terms and future revisions thereof. This offer is nontransferable and is void to residents of the dependent areas of the U.S. An applicant, if married, may apply for a separate account.  This is not a business account. © 2007 Capital One Services, Inc. Capital One is a federally registered service mark. All rights reserved. Capital One supports information privacy protection: see our website at www.capitalone.com.

### STATE SPECIFIC INFORMATION

#### California Residents:

Applicants: 1) may, after credit approval, use the credit card account up to its credit limit; 2) may be liable for amounts extended under the plan to any joint applicant. As required by law, you are hereby notified that a negative credit report reflecting on your credit record may be submitted to a credit reporting agency if you fail to fulfill the terms of your credit obligations.

#### Ohio Residents:

Ohio anti-discrimination laws require creditors to make credit equally available to all creditworthy customers and that credit reporting agencies maintain separate credit histories on individuals upon request. The Ohio Civil Rights Commission administers these laws.

#### New York and Vermont Residents:

Capital One may obtain at any time your credit reports for any legitimate purpose associated with the account or the application or request for an account, including but not limited to reviewing, modifying, renewing and collecting on your account. On your request you will be informed if such a report was ordered. If so, you will be given the name and address of the consumer reporting agency furnishing the report. New York residents may contact the New York State Banking Department (1-800-518-8866) for a comparative list of credit card rates, fees, and grace periods.

#### Married Wisconsin Applicants:

No provision of any marital property agreement, unilateral statement, or court order applying to marital property will adversely affect a creditor's interests unless prior to the time credit is granted, the creditor is furnished with a copy of the agreement, statement or court order, or has actual knowledge of the provision.

### YOUR BILLING RIGHTS

**KEEP THIS NOTICE FOR FUTURE USE.**
This notice contains important information about your rights and our responsibilities under the Fair Credit Billing Act.

**NOTIFY US IN CASE OF ERRORS OR QUESTIONS ABOUT YOUR BILL.** If you think your bill is wrong, or if you need more information about a transaction on your bill, write to us on a separate sheet as soon as possible at the address listed on your bill. We must hear from you no later than 60 days after we sent you the first bill on which the error or problem appeared. You can telephone us, but doing so will not preserve your rights. In your letter, please provide the following information:

1. Your name and account number.
2. The dollar amount of the suspected error.
3. Describe the error and explain, if you can, why you believe there is an error. If you need more information, describe the item you are not sure about.

If you have authorized us to pay your credit card bill automatically from your savings or checking account, you can stop the payment on any amount you think is wrong. To stop the payment, your letter must reach us three business days before the automatic payment is scheduled to occur.

**YOUR RIGHTS AND OUR RESPONSIBILITIES AFTER WE RECEIVE YOUR WRITTEN NOTICE.**
We must acknowledge your letter within 30 days, unless we have corrected the error by then. Within 90 days, we must either correct the error or explain why we believe the bill was correct.

After we receive your letter, we cannot try to collect any amount you question, or report you as delinquent. We can continue to bill you for the amount you question, including finance charges, and we can apply any unpaid amount against your credit limit. You do not have to pay any questioned amount while we are investigating, but you are still obligated to pay the parts of your bill that are not in question.

If we find that we made a mistake on your bill, you will not have to pay any finance charges related to any questioned amount. If we didn't make a mistake, you may have to pay finance charges, and you will have to make up any missed payments on the questioned amount. In either case, we will send you a statement of the amount you owe and the date that it is due. If you fail to pay the amount that we think you owe, we may report you as delinquent. However, if our explanation does not satisfy you and you write to us within ten days telling us that you still refuse to pay, we must tell anyone we report you to that you have a question about your bill. And, we must tell you the name of anyone we reported you to. We must tell anyone we report you to that the matter has been settled between us when it finally is. If we don't follow these rules, we can't collect the first $50 of the questioned amount, even if your bill was correct.

**SPECIAL RULE FOR CREDIT CARD PURCHASES.**
If you have a problem with the quality of property or services that you purchased with a credit card and you have tried in good faith to correct the problem with the merchant, you may have the right not to pay the remaining amount due on the property or services. There are two limitations on this right:

a. You must have made the purchase in your home state or, if not within your home state, within 100 miles of your current mailing address; and
b. The purchase price must have been more than $50.

These limitations do not apply if we own or operate the merchant, or if we mailed you the advertisement for the property or services.

**IMPORTANT INFORMATION ABOUT YOUR CREDIT CARD ACCOUNT**

**FINANCE CHARGE.**

1. Transactions which are not subject to a grace period are assessed finance charges 1) from the date of the transaction or 2) from the date the transaction is processed to your account or 3) from the first calendar day of the current billing period. Additionally, if you did not pay the "New Balance" from the previous billing period in full, finance charges continue to accrue to your unpaid balance until the unpaid balance is paid in full. This means that you may still owe finance charges, even if you pay the entire New Balance indicated on the front of your statement by the payment due date, but did not do so for the previous month. Unpaid finance charges are added to the applicable segment of your account. Cash advances (the cash advance segment) and special transfers (if your account includes a special transfer segment) may not avoid finance charges.
2. **Cash Advance, Purchase/Balance Transfer/Other Charges and Special Transfer or Special Purchase Segments (If Your Account Includes a Special Transfer or Special Purchase Segment).**
Finance charge is calculated by multiplying the daily balance of each segment of your account (e.g., cash advance, purchase, special transfer, and special purchase) by the corresponding daily periodic rate(s) that has been previously disclosed to you. At the end of each day during the billing period, we apply the daily periodic rate for each segment of your account to the daily balance of each segment. Then at the end of the billing period, we add up the results of these daily calculations to arrive at your periodic finance charge for each segment. We add up the results from each segment to arrive at the total periodic finance charge for your account.
To get the daily balance for each segment of your account, we take the beginning balance for each segment and add any new transactions and any periodic finance charge calculated on the previous day's balance for that segment. We then subtract any payments or credits posted as of that day that are allocated to that segment. This gives us the separate daily balance for each segment of your account. However, if you paid the New Balance shown on your previous statement in full (or if your new balance was zero or a credit amount), new transactions which post to your purchase or special purchase segments are not added to the daily balances.
To calculate your total finance charge, multiply your average daily balance by the daily periodic rate and by the number of days in the billing period. Due to rounding on a daily basis, there may be a slight variance between this calculation and the amount of finance charge actually assessed.
3. **Determining Daily Periodic Rates.** Divide the corresponding Annual Percentage Rate by 365 and round up to the nearest 1/100,000[th] of 1%, not to exceed the maximum allowed by applicable law. If the daily periodic rates and corresponding Annual Percentage Rates increase, the Finance Charge will increase and your minimum payment may be greater. Refer to the IMPORTANT DISCLOSURES for daily periodic rates and Annual Percentage Rates.

**OTHER CHARGES:**
**Copying Charge:** $3.00 for a copy of a Periodic Statement and $2.00 for a copy of a transaction (fee imposed per copy).

**IMPORTANT INFORMATION ABOUT PROCEDURES FOR APPLYING FOR OR OPENING A NEW ACCOUNT.**

To help the government fight the funding of terrorism and money laundering activities, Federal law requires all financial institutions to obtain, verify and record information that identifies each person who opens an account. What this means for you: When you apply for or open an account, we will ask for your name, address, date of birth and other information that will allow us to identify you.

**Apply Now**

About Capital One  |  Investors  |  Press  |  Careers  |  Financial
Education

Canada

UK

Capital One does not provide, endorse, nor guarantee and is not liable for third party products, services, educational tools, or other information available through this site. Read additional disclosures.

MEMBER FDIC    Equal Housing Lender 

Site Map | Privacy | Security | Terms and Conditions

This site provides information about and access to financial services offered by the Capital One family of companies, including Capital One Bank and Capital One, N.A., members FDIC.
©2007 Capital One Services, Inc.
Capital One is a federally registered service mark. All rights reserved.
Blank Check® is a registered trademark of Capital One Services, Inc.

Credit Cards | Auto Loans | Direct Banking | Home Loans | Healthcare Finance | Personal Loans | Small Business | Commercial



**Capital One® No Hassle Points**SM **Rewards**

| Overview | **Disclosures** |

<div style="border:1px solid #ccc">

**Apply Now**

| **ANNUAL PERCENTAGE RATE** (APR) for purchases‡ | 0% (0.00000% daily periodic rate) through your 02/2008 billing period. After that, a variable rate, currently equal to **16.9%** (0.04630% daily periodic rate). |
| --- | --- |
| Other **APR**s | Special transfer APR: A variable rate, currently equal to 16.9% (0.04630% daily periodic rate).▽<br>Balance transfer APR: Same as for purchases.<br>Cash advance APR: A variable rate, currently equal to 19.8% (0.05425% daily periodic rate).<br>Default APR: A variable rate, currently equal to 28.15% (0.07712% daily periodic rate). See explanation below. ‡ |
| Variable Rate Information | Your purchase APR may vary quarterly. The rate will be determined by adding 8.65% to the Prime rate. Your special transfer segment APR may vary quarterly. The rate will be determined by adding 8.65% to the Prime rate. Your cash APR may vary quarterly. The rate will be determined by adding 11.55% to the Prime rate. ◆ Rates in effect 07/01/07. Your default APR may vary monthly. The rate will be determined by adding 19.9% to the Prime rate. ◆◆ Rate in effect 09/01/07. |
| Grace period for repayment of the balance for purchases. | 25 days from the date of the periodic statement on new purchases (provided you have paid your previous balance in full by the due date). |
| Method of computing the balance for purchases. | Average daily balance (including new purchases). |
| Membership Fee | $29 annually. |
| Minimum finance charge | For each Billing Period that your Account is subject to a finance charge, a minimum total **FINANCE CHARGE** of $0.50 will be imposed. |
| Miscellaneous Fees | Cash advance fee: 3% of amount of the cash advance, but not less than $5.<br>Transfer fee: None.<br>Late payment fee: Your late payment fee will be based on the amount of your account balance at the time the fee is applied. Balance of $0 - $99.99 = $19 fee; balance of $100 - $999.99 = $29 fee; balances of $1,000 or more = $39 fee.<br>Over-the-credit-limit fee: Your over-the-credit-limit fee will be based on the amount of your credit limit at the time the fee is applied. Credit limit of $0 - $499.99 = $19 fee; credit limit of $500 - $999.99 = $29 fee; credit limits of $1,000 or more = $39 fee. |

</div>

Returned payment fee: $29.
Foreign transaction fee: None.

**Things You Should Know About This Card**

▽ **What Will Be My APR If I Transfer A Balance?**
Any balances that you successfully transfer on or before March 1, 2008 will receive the Special Transfer APR disclosed above. All subsequent balances that you transfer will receive the Purchase APR disclosed above unless the transfer is made in connection with a Future Offer from us. Please remember that Future Offers, as discussed below, may include different terms.

‡ **Can You Increase My APRs?**
We will not increase your introductory APRs for any reason before the end of the introductory period. Your variable non-introductory APRs can go up or down each quarter as the Prime rate goes up or down. Your APRs can increase to the Default APR if your payment is received late (3 or more days after your payment due date) twice within any 12 billing periods. If we increase your APRs for late payments, we will return you to your prior APRs if you make at least the minimum payment on time for 12

consecutive billing periods. If we change your non-introductory APRs for reasons other than when the Prime changes or you paid late as disclosed above, we will notify you in writing of your options in advance, including the right to opt out.

### What About Any Other Terms Of My Account?
We may change any other terms of your account, other than APRs, at any time. If we change any of these terms, we will notify you in advance of your options in writing, including the right to opt out of certain changes.

### Do You Engage In Universal Default?
We do not engage in a practice known as "universal default." Universal default permits a credit card company to increase your APRs simply because you fail to make a payment on a loan with another lender or your credit history contains other negative information.

### How Do You Calculate My Variable Rate?
❖ We calculate your variable rate by adding a percentage to the Prime rate published in the "Money Rates" section of *The Wall Street Journal* on the 25th day of December, March, June and September. If the *Journal* is not published on that day, then see the immediately preceding edition. If Prime changes, your new rate will take effect on the first day of your January, April, July and October billing period.

❖❖ We calculate your variable rate by adding a percentage to the Prime rate published in the "Money Rates" section of *The Wall Street Journal* on the 25th day of each month. If the *Journal* is not published on that day, then see the immediately preceding edition. If Prime changes, your new rate will take effect on your next billing period..

### What About Future Offers?
At any time in the future, we may extend new offers in connection with this account, including opportunities to transfer additional balances. These new products and services may have different APRs, fees and other terms. We will provide any different terms when we make you the new offer, and you may accept or decline any such offer.

### ◊ How Do You Determine My Credit Line?
We determine your credit line based on your credit history and information you provide on your application. If your application is approved, you will receive a credit line between $300 and $3,000.

### How Do You Apply My Payment?
We will apply your payment to pay off lower-rate balances before paying off higher-rate balances.

### How Do You Calculate My Minimum Payment?
Your minimum payment will be the greater of 3% of your outstanding balance or $15. If your balance is less than $15, your minimum payment will equal your balance.

---

**Things You Should Know About This Rewards Program**

---

### * How Do I Earn Points?
Every time you use the card, you'll earn 5 points per dollar at gas stations, major grocery stores and drugstores and 1 point per dollar on your other net purchases (purchases minus any credits or returns). Please note: Merchants don't always identify or bill transactions by the correct merchant category code, which could impact the amount of points you earn on gas station, major grocery stores and drugstore purchases. The following items will not earn points: cash advances, transferred balances, any checks used to access your account, finance charges, fees of any kind, service charges, unauthorized charges and ATM transactions.

### What Happens To My Points If I Pay Late?
If a late fee is charged to your account, you will lose any points applied to your rewards balance during the billing cycle containing the fee.

### Will My Points Ever Expire?
Your points are yours for the life of the account—they won't expire. But if your account is closed, you'll lose any points you haven't redeemed**.**

### Is There A Limit To The Number Of Points I Can Earn?
There's no cap to the amount of points you can earn on purchases.

### How Do I Redeem My Points?
You can redeem your points for cash, gift cards, and brand-name merchandise by calling the Rewards Center toll free or visiting www.capitalone.com/pointsrewards.  The number of points required is based on the cash or certificate amount, or merchandise cost.  For example, you could get $25 in cash back for 5,000 points, redeem for a gift card worth $25 for 3,400 points or a gift card worth $100 for 10,000 points, or even redeem for great brand-name merchandise worth $100 for 13,500 points. Once approved, you can visit www.capitalone.com/pointsrewards to register your account and see a complete description of current redemption offers. Your account must be open and in good standing in order to redeem, which means it isn't past due, overlimit, fraudulent, restricted, part of a consumer credit counseling program or in a bankruptcy settlement.

These program benefits cannot be added to an existing Capital One account.

---

**Terms and Conditions**

I am applying to Capital One Bank (Capital One®) for a credit card account. Everything that I have stated in this application is correct to the best of my knowledge. I understand that approval is based upon satisfying Capital One's credit standards and that I may be ineligible if I have responded to a previous offer for a credit card issued by Capital One within the last 45 days or if I have been approved for a previous Capital One offer. Capital One maintains the right not to open my account if: (a) the information provided on or with my application is incomplete, inaccurate or unverifiable, or I no longer meet Capital One's standards for creditworthiness; (b) my name and/or mailing address has been altered; (c) Capital One receives my application after it has expired. Capital One may contact me to obtain or confirm application information within 21 days of the receipt of my application. I understand that I must be at least 18 years of age and have a valid social security number, unless otherwise specified to qualify for this offer. I understand that, unless the offer discloses a specific credit line, the exact amount of my credit line will be determined by Capital One after review of my application and other information. I understand that you will retain my application whether or not it is approved. You are authorized to answer questions about your credit experience with me. If I am applying for a Transfer Request, I authorize Capital One to bill my approved Capital One credit card account for the amount(s) listed for transfers. I understand that I am applying for a transfer amount up to the total amount listed on my Transfer Request. I understand Capital One will advise me if it is unable to process my payment request for any reason. In addition, Capital One will not be responsible for any charges billed to me by other creditors for the transfers and Capital One will process only those Transfer Requests that can be transferred under my assigned credit line. Arbitration:  I understand that the Customer Agreement contains an Arbitration Provision that may limit my legal rights, including my right to go to court, to have a jury trial, and to participate in class actions. I will receive the Capital One Customer Agreement and am bound by its terms and future revisions thereof. This offer is nontransferable and is void to residents of the dependent areas of the U.S. An applicant, if married, may apply for a separate account.  This is not a business account. © 2007 Capital One Services, Inc. Capital One is a federally registered service mark. All rights reserved. Capital One supports information privacy protection: see our website at www.capitalone.com.

**STATE SPECIFIC INFORMATION**

**California Residents:**

Applicants: 1) may, after credit approval, use the credit card account up to its credit limit; 2) may be liable for amounts extended under the plan to any joint applicant. As required by law, you are hereby notified that a negative credit report reflecting on your credit record may be submitted to a credit reporting agency if you fail to fulfill the terms of your credit obligations.

**Ohio Residents:**

Ohio anti-discrimination laws require creditors to make credit equally available to all creditworthy customers and that credit reporting agencies maintain separate credit histories on individuals upon request. The Ohio Civil Rights Commission administers these laws.

**New York and Vermont Residents:**

Capital One may obtain at any time your credit reports for any legitimate purpose associated with the account or the application or request for an account, including but not limited to reviewing, modifying, renewing and collecting on your account. On your request you will be informed if such a report was ordered. If so, you will be given the name and address of the consumer reporting agency furnishing the report. New York residents may contact the New York State Banking Department (1-800-518-8866) for a comparative list of credit card rates, fees, and grace periods.

**Married Wisconsin Applicants:**

No provision of any marital property agreement, unilateral statement, or court order applying to marital property will adversely affect a creditor's interests unless prior to the time credit is granted, the creditor is furnished with a copy of the agreement, statement or court order, or has actual knowledge of the provision.

**YOUR BILLING RIGHTS**
**KEEP THIS NOTICE FOR FUTURE USE.**
This notice contains important information about your rights and our responsibilities under the Fair Credit Billing Act.

**NOTIFY US IN CASE OF ERRORS OR QUESTIONS ABOUT YOUR BILL.** If you think your bill is wrong, or if you need more information about a transaction on your bill, write to us on a separate sheet as soon as possible at the address listed on your bill. We must hear from you no later than 60 days after we sent you the first bill on which the error or problem appeared. You can telephone us, but doing so will not preserve your rights. In your letter, please provide the following information:

1. Your name and account number.
2. The dollar amount of the suspected error.
3. Describe the error and explain, if you can, why you believe there is an error. If you need more information, describe the item you are not sure about.

If you have authorized us to pay your credit card bill automatically from your savings or checking account, you can stop the payment on any amount you think is wrong. To stop the payment, your letter must reach us three business days before the automatic payment is scheduled to occur.

**YOUR RIGHTS AND OUR RESPONSIBILITIES AFTER WE RECEIVE YOUR WRITTEN NOTICE.**

We must acknowledge your letter within 30 days, unless we have corrected the error by then. Within 90 days, we must either correct the error or explain why we believe the bill was correct.

After we receive your letter, we cannot try to collect any amount you question, or report you as delinquent. We can continue to bill you for the amount you question, including finance charges, and we can apply any unpaid amount against your credit limit. You do not have to pay any questioned amount while we are investigating, but you are still obligated to pay the parts of your bill that are not in question.

If we find that we made a mistake on your bill, you will not have to pay any finance charges related to any questioned amount. If we didn't make a mistake, you may have to pay finance charges, and you will have to make up any missed payments on the questioned amount. In either case, we will send you a statement of the amount you owe and the date that it is due. If you fail to pay the amount that we think you owe, we may report you as delinquent. However, if our explanation does not satisfy you and you write to us within ten days telling us that you still refuse to pay, we must tell anyone we report you to that you have a question about your bill. And, we must tell you the name of anyone we reported you to. We must tell anyone we report you to that the matter has been settled between us when it finally is. If we don't follow these rules, we can't collect the first $50 of the questioned amount, even if your bill was correct.

**SPECIAL RULE FOR CREDIT CARD PURCHASES.**

If you have a problem with the quality of property or services that you purchased with a credit card and you have tried in good faith to correct the problem with the merchant, you may have the right not to pay the remaining amount due on the property or services. There are two limitations on this right:

a. You must have made the purchase in your home state or, if not within your home state, within 100 miles of your current mailing address; and
b. The purchase price must have been more than $50.

These limitations do not apply if we own or operate the merchant, or if we mailed you the advertisement for the property or services.

**IMPORTANT INFORMATION ABOUT YOUR CREDIT CARD ACCOUNT**

**FINANCE CHARGE.**

1. Transactions which are not subject to a grace period are assessed finance charges 1) from the date of the transaction or 2) from the date the transaction is processed to your account or 3) from the first calendar day of the current billing period. Additionally, if you did not pay the "New Balance" from the previous billing period in full, finance charges continue to accrue to your unpaid balance until the unpaid balance is paid in full. This means that you may still owe finance charges, even if you pay the entire New Balance indicated on the front of your statement by the payment due date, but did not do so for the previous month. Unpaid finance charges are added to the applicable segment of your account. Cash advances (the cash advance segment) and special transfers (if your account includes a special transfer segment) may not avoid finance charges.
2. **Cash Advance, Purchase/Balance Transfer/Other Charges and Special Transfer or Special Purchase Segments (If Your Account Includes a Special Transfer or Special Purchase Segment).**
   Finance charge is calculated by multiplying the daily balance of each segment of your account (e.g., cash advance, purchase, special transfer, and special purchase) by the corresponding daily periodic rate(s) that has been previously disclosed to you. At the end of each day during the billing period, we apply the daily periodic rate for each segment of your account to the daily balance of each segment. Then at the end of the billing period, we add up the results of these daily calculations to arrive at your periodic finance charge for each segment. We add up the results from each segment to arrive at the total periodic finance charge for your account.
   To get the daily balance for each segment of your account, we take the beginning balance for each segment and add any new transactions and any periodic finance charge calculated on the previous day's balance for that segment. We then subtract any payments or credits posted as of that day that are allocated to that segment. This gives us the separate daily balance for each segment of your account. However, if you paid the New Balance shown on your previous statement in full (or if your new balance was zero or a credit amount), new transactions which post to your purchase or special purchase segments are not added to the daily balances.
   To calculate your total finance charge, multiply your average daily balance by the daily periodic rate and by the number of days in the billing period. Due to rounding on a daily basis, there may be a slight variance between this calculation and the amount of finance charge actually assessed.
3. **Determining Daily Periodic Rates.** Divide the corresponding Annual Percentage Rate by 365 and round up to the nearest $1/100,000^{th}$ of 1%, not to exceed the maximum allowed by applicable law. If the daily periodic rates and corresponding Annual Percentage Rates increase, the Finance Charge will increase and your minimum payment may be greater. Refer to the IMPORTANT DISCLOSURES for daily periodic rates and Annual Percentage Rates.

**OTHER CHARGES:**
**Copying Charge:** $3.00 for a copy of a Periodic Statement and $2.00 for a copy of a transaction (fee imposed per copy).

**IMPORTANT INFORMATION ABOUT PROCEDURES FOR APPLYING FOR OR OPENING A NEW ACCOUNT.**

To help the government fight the funding of terrorism and money laundering activities, Federal law requires all financial institutions to obtain, verify and record information that identifies each person who opens an account. What this means for you: When you apply for or open an account, we will ask for your name, address, date of birth and other information that will allow us to identify you.

Apply Now

About Capital One  |  Investors  |  Press  |  Careers  |  Financial Education

Canada

UK

Capital One does not provide, endorse, nor guarantee and is not liable for third party products, services, educational tools, or other information available through this site. Read additional disclosures.

MEMBER FDIC     Equal Housing Lender 

Site Map | Privacy | Security | Terms and Conditions

This site provides information about and access to financial services offered by the Capital One family of companies, including Capital One Bank and Capital One, N.A., members FDIC.
©2007 Capital One Services, Inc.
Capital One is a federally registered service mark. All rights reserved.
Blank Check® is a registered trademark of Capital One Services, Inc.

Credit Cards | Auto Loans | Direct Banking | Home Loans | Healthcare Finance | Personal Loans | Small Business | Commercial



◄ Capital One Home    ▼ Find Products    ▼ Access Your Account    ▼ Customer Service

**Capital**One®  what's in your wallet?®

| Credit Cards Home | Apply for a Mail Offer | Learn About Rewards | Browse Our Credit Cards | Saving Zone |

# Capital One® Platinum MaxSM

| Overview | **Disclosures** |

| | | |
|---|---|---|
| **Apply Now** | **ANNUAL PERCENTAGE RATE** (APR) for purchases | **16.9%** (0.04630% daily periodic rate). |
| | Other **APR**s | Balance transfer APR: Same as for purchases.<br>Cash advance APR: 16.9% (0.04630% daily periodic rate). |
| | Grace period for repayment of the balance for purchases. | 25 days from the date of the periodic statement on new purchases (provided you have paid your previous balance in full by the due date). |
| | Method of computing the balance for purchases. | Average daily balance (including new purchases). |
| | Membership Fee | $19 annually. |
| | Minimum finance charge | For each Billing Period that your Account is subject to a finance charge, a minimum total **FINANCE CHARGE** of $0.50 will be imposed. |
| | Miscellaneous Fees | Cash advance fee: None.<br>Balance transfer fee: None.<br>Late payment fee: Your late payment fee will be based on the amount of your account balance at the time the fee is applied. Balance of $0 - $99.99 = $19 fee; balance of $100 - $999.99 = $29 fee; balances of $1,000 or more = $39 fee.<br>Over-the-credit-limit fee: Your over-the-credit-limit fee will be based on the amount of your credit limit at the time the fee is applied. Credit limit of $0 - $499.99 = $19 fee; credit limit of $500 - $999.99 = $29 fee; credit limits of $1,000 or more = $39 fee. |

Returned payment fee: $29.
Foreign transaction fee: None.

| **Things You Should Know About This Card** |

**Can You Increase My APRs?**
We won't increase your APRs for any reason for at least three years from the date we open your account. We will never increase your APRs simply because you pay late or go over your credit limit.

**What About Any Other Terms of My Account?**
We may change any other terms of your account, other than APRs, at any time. If we change any of these terms, we will notify you in advance of your options in writing, including the right to opt out of certain changes.

**What Happens After Three Years?**
If we make any changes to your account after three years, including APRs, we will notify you in advance of your options in writing, including the right to opt out of certain changes.

**Do You Engage In Universal Default?**
We do not engage in a practice known as "universal default." Universal default permits a credit card company to increase your APRs simply because you fail to make a payment on a loan with another lender or your credit history contains other negative information.

**What About Future Offers?**

At any time in the future, we may extend new offers in connection with this account, including opportunities to transfer additional balances. These new products and services may have different APRs, fees and other terms. We will provide any different terms when we make you the new offer, and you may accept or decline any such offer.

◊ **How Do You Determine My Credit Line?**

We determine your credit line based on your credit history and information you provide on your application. If your application is approved, you will receive a credit line between $300 and $2,500.

**How Do You Apply My Payment?**

We will apply your payment to pay off lower-rate balances before paying off higher-rate balances.

**How Do You Calculate My Minimum Payment?**

Your minimum payment will be the greater of 3% of your outstanding balance or $15. If your balance is less than $15, your minimum payment will equal your balance.

---

**Terms and Conditions**

I am applying to Capital One Bank (Capital One®) for a credit card account. Everything that I have stated in this application is correct to the best of my knowledge. I understand that approval is based upon satisfying Capital One's credit standards and that I may be ineligible if I have responded to a previous offer for a credit card issued by Capital One within the last 45 days or if I have been approved for a previous Capital One offer. Capital One maintains the right not to open my account if: (a) the information provided on or with my application is incomplete, inaccurate or unverifiable, or I no longer meet Capital One's standards for creditworthiness; (b) my name and/or mailing address has been altered; (c) Capital One receives my application after it has expired. Capital One may contact me to obtain or confirm application information within 21 days of the receipt of my application. I understand that I must be at least 18 years of age and have a valid social security number, unless otherwise specified to qualify for this offer.  I understand that, unless the offer discloses a specific credit line, the exact amount of my credit line will be determined by Capital One after review of my application and other information. I understand that you will retain my application whether or not it is approved. You are authorized to answer questions about your credit experience with me. If I am applying for a Transfer Request, I authorize Capital One to bill my approved Capital One credit card account for the amount(s) listed for transfers. I understand that I am applying for a transfer amount up to the total amount listed on my Transfer Request. I understand Capital One will advise me if it is unable to process my payment request for any reason. In addition, Capital One will not be responsible for any charges billed to me by other creditors for the transfers and Capital One will process only those Transfer Requests that can be transferred under my assigned credit line. Arbitration:  I understand that the Customer Agreement contains an Arbitration Provision that may limit my legal rights, including my right to go to court, to have a jury trial, and to participate in class actions. I will receive the Capital One Customer Agreement and am bound by its terms and future revisions thereof. This offer is nontransferable and is void to residents of the dependent areas of the U.S. An applicant, if married, may apply for a separate account.  This is not a business account. © 2007 Capital One Services, Inc. Capital One is a federally registered service mark. All rights reserved. Capital One supports information privacy protection: see our website at www.capitalone.com.

## STATE SPECIFIC INFORMATION

**California Residents:**

Applicants: 1) may, after credit approval, use the credit card account up to its credit limit; 2) may be liable for amounts extended under the plan to any joint applicant. As required by law, you are hereby notified that a negative credit report reflecting on your credit record may be submitted to a credit reporting agency if you fail to fulfill the terms of your credit obligations.

**Ohio Residents:**

Ohio anti-discrimination laws require creditors to make credit equally available to all creditworthy customers and that credit reporting agencies maintain separate credit histories on individuals upon request. The Ohio Civil Rights Commission administers these laws.

**New York and Vermont Residents:**

Capital One may obtain at any time your credit reports for any legitimate purpose associated with the account or the application or request for an account, including but not limited to reviewing, modifying, renewing and collecting on your account. On your request you will be informed if such a report was ordered. If so, you will be given the name and address of the consumer reporting agency furnishing the report. New York residents may contact the New York State Banking Department (1-800-518-8866) for a comparative list of credit card rates, fees, and grace periods.

**Married Wisconsin Applicants:**

No provision of any marital property agreement, unilateral statement, or court order applying to marital property will adversely affect a creditor's interests

unless prior to the time credit is granted, the creditor is furnished with a copy of the agreement, statement or court order, or has actual knowledge of the provision.

**YOUR BILLING RIGHTS**
**KEEP THIS NOTICE FOR FUTURE USE.**
This notice contains important information about your rights and our responsibilities under the Fair Credit Billing Act.

**NOTIFY US IN CASE OF ERRORS OR QUESTIONS ABOUT YOUR BILL.** If you think your bill is wrong, or if you need more information about a transaction on your bill, write to us on a separate sheet as soon as possible at the address listed on your bill. We must hear from you no later than 60 days after we sent you the first bill on which the error or problem appeared. You can telephone us, but doing so will not preserve your rights. In your letter, please provide the following information:

1. Your name and account number.
2. The dollar amount of the suspected error.
3. Describe the error and explain, if you can, why you believe there is an error. If you need more information, describe the item you are not sure about.

If you have authorized us to pay your credit card bill automatically from your savings or checking account, you can stop the payment on any amount you think is wrong. To stop the payment, your letter must reach us three business days before the automatic payment is scheduled to occur.

**YOUR RIGHTS AND OUR RESPONSIBILITIES AFTER WE RECEIVE YOUR WRITTEN NOTICE.**
We must acknowledge your letter within 30 days, unless we have corrected the error by then. Within 90 days, we must either correct the error or explain why we believe the bill was correct.

After we receive your letter, we cannot try to collect any amount you question, or report you as delinquent. We can continue to bill you for the amount you question, including finance charges, and we can apply any unpaid amount against your credit limit. You do not have to pay any questioned amount while we are investigating, but you are still obligated to pay the parts of your bill that are not in question.

If we find that we made a mistake on your bill, you will not have to pay any finance charges related to any questioned amount. If we didn't make a mistake, you may have to pay finance charges, and you will have to make up any missed payments on the questioned amount. In either case, we will send you a statement of the amount you owe and the date that it is due. If you fail to pay the amount that we think you owe, we may report you as delinquent. However, if our explanation does not satisfy you and you write to us within ten days telling us that you still refuse to pay, we must tell anyone we report you to that you have a question about your bill. And, we must tell you the name of anyone we reported you to. We must tell anyone we report you to that the matter has been settled between us when it finally is. If we don't follow these rules, we can't collect the first $50 of the questioned amount, even if your bill was correct.

**SPECIAL RULE FOR CREDIT CARD PURCHASES.**
If you have a problem with the quality of property or services that you purchased with a credit card and you have tried in good faith to correct the problem with the merchant, you may have the right not to pay the remaining amount due on the property or services. There are two limitations on this right:

a. You must have made the purchase in your home state or, if not within your home state, within 100 miles of your current mailing address; and
b. The purchase price must have been more than $50.

These limitations do not apply if we own or operate the merchant, or if we mailed you the advertisement for the property or services.

**IMPORTANT INFORMATION ABOUT YOUR CREDIT CARD ACCOUNT**

**FINANCE CHARGE.**

1. Transactions which are not subject to a grace period are assessed finance charges 1) from the date of the transaction or 2) from the date the transaction is processed to your account or 3) from the first calendar day of the current billing period. Additionally, if you did not pay the "New Balance" from the previous billing period in full, finance charges continue to accrue to your unpaid balance until the unpaid balance is paid in full. This means that you may still owe finance charges, even if you pay the entire New Balance indicated on the front of your statement by the payment due date, but did not do so for the previous month. Unpaid finance charges are added to the applicable segment of your account. Cash advances (the cash advance segment) and special transfers (if your account includes a special transfer segment) may not avoid finance charges.
2. **Cash Advance, Purchase/Balance Transfer/Other Charges and Special Transfer or Special Purchase Segments (If Your Account Includes a Special Transfer or Special Purchase Segment).**
Finance charge is calculated by multiplying the daily balance of each segment of your account (e.g., cash advance, purchase, special transfer, and special purchase) by the corresponding daily periodic rate(s) that has been previously disclosed to you. At the end of each day during the billing period, we apply the daily periodic rate for each segment of your account to the daily balance of each segment. Then at the end of the billing period, we add up the results of these daily calculations to arrive at your periodic finance charge for each segment. We add up the results from each segment to arrive at the total periodic finance charge for your account.
To get the daily balance for each segment of your account, we take the beginning balance for each segment and add any new transactions and any periodic finance charge calculated on the previous day's balance for that segment. We then subtract any payments or credits posted as of that day that are allocated to that segment. This gives us the separate daily balance for each segment of your account. However, if you paid the New Balance shown on your previous statement in full (or if your new balance was zero or a credit amount), new transactions which post to your purchase or special purchase segments are not added to the daily balances.
To calculate your total finance charge, multiply your average daily balance by the daily periodic rate and by the number of days in the billing period. Due to rounding on a daily basis, there may be a slight variance between this calculation and the amount of finance charge actually assessed.
3. **Determining Daily Periodic Rates.** Divide the corresponding Annual Percentage Rate by 365 and round up to the nearest $1/100,000^{th}$ of 1%, not to exceed the maximum allowed by applicable law. If the daily periodic rates and corresponding Annual Percentage Rates increase, the Finance Charge will increase and your minimum payment may be greater. Refer to the IMPORTANT DISCLOSURES for daily periodic rates and Annual Percentage Rates.

**OTHER CHARGES:**
**Copying Charge:** $3.00 for a copy of a Periodic Statement and $2.00 for a copy of a transaction (fee imposed per copy).

**IMPORTANT INFORMATION ABOUT PROCEDURES FOR APPLYING FOR OR OPENING AN ACCOUNT.**
To help the government fight the funding of terrorism and money laundering activities, Federal law requires all financial institutions to obtain, verify and record information that identifies each person who opens an account. What this means for you: When you apply for or open an account, we will ask for your name, address, date of birth and other information that will allow us to identify you.

**Apply Now**

About Capital One | Investors | Press | Careers | Financial Education

Canada
UK

Capital One does not provide, endorse, nor guarantee and is not liable for third party products, services, educational tools, or other information available through this site. Read additional disclosures.

MEMBER FDIC    Equal Housing Lender 

Site Map | Privacy | Security | Terms and Conditions

This site provides information about and access to financial services offered by the Capital One family of companies, including Capital One Bank and Capital One, N.A., members FDIC.
©2007 Capital One Services, Inc.
Capital One is a federally registered service mark. All rights reserved.
Blank Check® is a registered trademark of Capital One Services, Inc.

Credit Cards | Auto Loans | Direct Banking | Home Loans | Healthcare Finance | Personal Loans | Small Business | Commercial

◀ Capital One Home



what's in your wallet?®

| ▼ Find Products | ▼ Access Your Account | ▼ Customer Service |

| Credit Cards Home | Apply for a Mail Offer | Learn About Rewards | Browse Our Credit Cards | Saving Zone |

# Capital One®
# Platinum

| Overview | **Disclosures** |

**Apply Now**

| | |
|---|---|
| **ANNUAL PERCENTAGE RATE** (APR) for purchases‡ | 0% (0.00000% daily periodic rate) through your 02/2008 billing period. After that, a variable rate, currently equal to **8.9%** (0.02438% daily periodic rate). |
| Other **APR**s | Special transfer APR: A variable rate, currently equal to 8.9% (0.02438% daily periodic rate).▽<br>Balance transfer APR: Same as for purchases.<br>Cash advance APR: A variable rate, currently equal to 19.8% (0.05425% daily periodic rate).<br>Default APR: A variable rate, currently equal to 28.15% (0.07712% daily periodic rate). See explanation below. ‡ |
| Variable Rate Information | Your purchase APR may vary quarterly. The rate will be determined by adding 0.65% to the Prime rate. Your special transfer segment APR may vary quarterly. The rate will be determined by adding 0.65% to the Prime rate. Your cash APR may vary quarterly. The rate will be determined by adding 11.55% to the Prime rate.♦ Rates in effect 07/01/07. Your default APR may vary monthly. The rate will be determined by adding 19.9% to the Prime rate.♦ ♦ Rate in effect 09/01/07. |
| Grace period for repayment of the balance for purchases. | 25 days from the date of the periodic statement on new purchases (provided you have paid your previous balance in full by the due date). |
| Method of computing the balance for purchases. | Average daily balance (including new purchases). |
| Membership Fee | $39 annually. |
| Minimum finance charge | For each Billing Period that your Account is subject to a finance charge, a minimum total **FINANCE CHARGE** of $0.50 will be imposed. |
| Miscellaneous Fees | Cash advance fee: 3% of amount of the cash advance, but not less than $5.<br>Transfer fee: None.<br>Late payment fee: Your late payment fee will be based on the amount of your account balance at the time the fee is applied. Balance of $0 - $99.99 = $19 fee; balance of $100 - $999.99 = $29 fee; balances of $1,000 or more = $39 fee.<br>Over-the-credit-limit fee: Your over-the-credit-limit fee will be based on the amount of your credit limit at the time the fee is applied. Credit limit of $0 - $499.99 = $19 fee; credit limit of $500 - $999.99 = $29 fee; credit limits of $1,000 or more = $39 fee. |

Returned payment fee: $29.
Foreign transaction fee: None.

| **Things You Should Know About This Card** |

▽ **What Will Be My APR If I Transfer A Balance?**
Any balances that you successfully transfer on or before March 1, 2008 will receive the Special Transfer APR disclosed above. All subsequent balances that you transfer will receive the Purchase APR disclosed above unless the transfer is made in connection with a Future Offer from us. Please remember that Future Offers, as discussed below, may include different terms.

‡ **Can You Increase My APRs?**
We will not increase your introductory APRs for any reason before the end of the introductory period. Your variable non-introductory APRs can go up or down each quarter as the Prime rate goes up or down. Your APRs can increase to the Default APR if your payment is received late (3 or more days after your payment due date) twice within any 12 billing periods. If we increase your APRs for late payments, we will return you to your prior APRs if you make at least the minimum payment on time for 12

consecutive billing periods. If we change your non-introductory APRs for reasons other than when the Prime changes or you paid late as disclosed above, we will notify you in writing of your options in advance, including the right to opt out.

### What About Any Other Terms Of My Account?

We may change any other terms of your account, other than APRs, at any time. If we change any of these terms, we will notify you in advance of your options in writing, including the right to opt out of certain changes.

### Do You Engage In Universal Default?

We do not engage in a practice known as "universal default." Universal default permits a credit card company to increase your APRs simply because you fail to make a payment on a loan with another lender or your credit history contains other negative information.

### How Do You Calculate My Variable Rate?

◆ We calculate your variable rate by adding a percentage to the Prime rate published in the "Money Rates" section of *The Wall Street Journal* on the 25th day of December, March, June and September. If the *Journal* is not published on that day, then see the immediately preceding edition. If Prime changes, your new rate will take effect on the first day of your January, April, July and October billing period.

◆◆ We calculate your variable rate by adding a percentage to the Prime rate published in the "Money Rates" section of *The Wall Street Journal* on the 25th day of each month. If the *Journal* is not published on that day, then see the immediately preceding edition. If Prime changes, your new rate will take effect on your next billing period..

### What About Future Offers?

At any time in the future, we may extend new offers in connection with this account, including opportunities to transfer additional balances. These new products and services may have different APRs, fees and other terms. We will provide any different terms when we make you the new offer, and you may accept or decline any such offer.

### ◊ How Do You Determine My Credit Line?

We determine your credit line based on your credit history and information you provide on your application. If your application is approved, you will receive a credit line between $300 and $3,000.

### How Do You Apply My Payment?

We will apply your payment to pay off lower-rate balances before paying off higher-rate balances.

### How Do You Calculate My Minimum Payment?

Your minimum payment will be the greater of 3% of your outstanding balance or $15. If your balance is less than $15, your minimum payment will equal your balance.

---

### Terms and Conditions

I am applying to Capital One Bank (Capital One®) for a credit card account. Everything that I have stated in this application is correct to the best of my knowledge. I understand that approval is based upon satisfying Capital One's credit standards and that I may be ineligible if I have responded to a previous offer for a credit card issued by Capital One within the last 45 days or if I have been approved for a previous Capital One offer. Capital One maintains the right not to open my account if: (a) the information provided on or with my application is incomplete, inaccurate or unverifiable, or I no longer meet Capital One's standards for creditworthiness; (b) my name and/or mailing address has been altered; (c) Capital One receives my application after it has expired. Capital One may contact me to obtain or confirm application information within 21 days of the receipt of my application. I understand that I must be at least 18 years of age and have a valid social security number, unless otherwise specified to qualify for this offer.  I understand that, unless the offer discloses a specific credit line, the exact amount of my credit line will be determined by Capital One after review of my application and other information. I understand that you will retain my application whether or not it is approved. You are authorized to answer questions about your credit experience with me. If I am applying for a Transfer Request, I authorize Capital One to bill my approved Capital One credit card account for the amount(s) listed for transfers. I understand that I am applying for a transfer amount up to the total amount listed on my Transfer Request. I understand Capital One will advise me if it is unable to process my payment request for any reason. In addition, Capital One will not be responsible for any charges billed to me by other creditors for the transfers and Capital One will process only those Transfer Requests that can be transferred under my assigned credit line. Arbitration:  I understand that the Customer Agreement contains an Arbitration Provision that may limit my legal rights, including my right to go to court, to have a jury trial, and to participate in class actions. I will receive the Capital One Customer Agreement and am bound by its terms and future revisions thereof. This offer is nontransferable and is void to residents of the dependent areas of the U.S. An applicant, if married, may apply for a separate account.  This is not a business account. © 2007 Capital One Services, Inc. Capital One is a federally registered service mark. All rights reserved. Capital One supports information privacy protection: see our website at www.capitalone.com.

## STATE SPECIFIC INFORMATION

### California Residents:

Applicants: 1) may, after credit approval, use the credit card account up to its credit limit; 2) may be liable for amounts extended under the plan to any joint applicant. As required by law, you are hereby notified that a negative credit report reflecting on your credit record may be submitted to a credit reporting agency if you fail to fulfill the terms of your credit obligations.

### Ohio Residents:

Ohio anti-discrimination laws require creditors to make credit equally available to all creditworthy customers and that credit reporting agencies maintain separate credit histories on individuals upon request. The Ohio Civil Rights Commission administers these laws.

### New York and Vermont Residents:

Capital One may obtain at any time your credit reports for any legitimate purpose associated with the account or the application or request for an account, including but not limited to reviewing, modifying, renewing and collecting on your account. On your request you will be informed if such a report was ordered. If so, you will be given the name and address of the consumer reporting agency furnishing the report. New York residents may contact the New York State Banking Department (1-800-518-8866) for a comparative list of credit card rates, fees, and grace periods.

### Married Wisconsin Applicants:

No provision of any marital property agreement, unilateral statement, or court order applying to marital property will adversely affect a creditor's interests unless prior to the time credit is granted, the creditor is furnished with a copy of the agreement, statement or court order, or has actual knowledge of the provision.

### YOUR BILLING RIGHTS
### KEEP THIS NOTICE FOR FUTURE USE.

This notice contains important information about your rights and our responsibilities under the Fair Credit Billing Act.

### NOTIFY US IN CASE OF ERRORS OR QUESTIONS ABOUT YOUR BILL. If you think your bill is wrong, or if you need more information about a transaction on your bill, write to us on a separate sheet as soon as possible at the address listed on your bill. We must hear from you no later than 60 days after we sent you the first bill on which the error or problem appeared. You can telephone us, but doing so will not preserve your rights. In your letter, please provide the following information:

1. Your name and account number.
2. The dollar amount of the suspected error.
3. Describe the error and explain, if you can, why you believe there is an error. If you need more information, describe the item you are not sure about.

If you have authorized us to pay your credit card bill automatically from your savings or checking account, you can stop the payment on any amount you think is wrong. To stop the payment, your letter must reach us three business days before the automatic payment is scheduled to occur.

### YOUR RIGHTS AND OUR RESPONSIBILITIES AFTER WE RECEIVE YOUR WRITTEN NOTICE.

We must acknowledge your letter within 30 days, unless we have corrected the error by then. Within 90 days, we must either correct the error or explain why we believe the bill was correct.

After we receive your letter, we cannot try to collect any amount you question, or report you as delinquent. We can continue to bill you for the amount you question, including finance charges, and we can apply any unpaid amount against your credit limit. You do not have to pay any questioned amount while we are investigating, but you are still obligated to pay the parts of your bill that are not in question.

If we find that we made a mistake on your bill, you will not have to pay any finance charges related to any questioned amount. If we didn't make a mistake, you may have to pay finance charges, and you will have to make up any missed payments on the questioned amount. In either case, we will send you a statement of the amount you owe and the date that it is due. If you fail to pay the amount that we think you owe, we may report you as delinquent. However, if our explanation does not satisfy you and you write to us within ten days telling us that you still refuse to pay, we must tell anyone we report you to that you have a question about your bill. And, we must tell you the name of anyone we reported you to. We must tell anyone we report you to that the matter has been settled between us when it finally is. If we don't follow these rules, we can't collect the first $50 of the questioned amount, even if your bill was correct.

### SPECIAL RULE FOR CREDIT CARD PURCHASES.

If you have a problem with the quality of property or services that you purchased with a credit card and you have tried in good faith to correct the problem with the merchant, you may have the right not to pay the remaining amount due on the property or services. There are two limitations on this right:

a. You must have made the purchase in your home state or, if not within your home state, within 100 miles of your current mailing address; and
b. The purchase price must have been more than $50.

These limitations do not apply if we own or operate the merchant, or if we mailed you the advertisement for the property or services.

### IMPORTANT INFORMATION ABOUT YOUR CREDIT CARD ACCOUNT

### FINANCE CHARGE.

1. Transactions which are not subject to a grace period are assessed finance charges 1) from the date of the transaction or 2) from the date the transaction is processed to your account or 3) from the first calendar day of the current billing period. Additionally, if you did not pay the "New Balance" from the previous billing period in full, finance charges continue to accrue to your unpaid balance until the unpaid balance is paid in full.

This means that you may still owe finance charges, even if you pay the entire New Balance indicated on the front of your statement by the payment due date, but did not do so for the previous month. Unpaid finance charges are added to the applicable segment of your account. Cash advances (the cash advance segment) and special transfers (if your account includes a special transfer segment) may not avoid finance charges.

2. **Cash Advance, Purchase/Balance Transfer/Other Charges and Special Transfer or Special Purchase Segments (If Your Account Includes a Special Transfer or Special Purchase Segment).**
Finance charge is calculated by multiplying the daily balance of each segment of your account (e.g., cash advance, purchase, special transfer, and special purchase) by the corresponding daily periodic rate(s) that has been previously disclosed to you. At the end of each day during the billing period, we apply the daily periodic rate for each segment of your account to the daily balance of each segment. Then at the end of the billing period, we add up the results of these daily calculations to arrive at your periodic finance charge for each segment. We add up the results from each segment to arrive at the total periodic finance charge for your account.
To get the daily balance for each segment of your account, we take the beginning balance for each segment and add any new transactions and any periodic finance charge calculated on the previous day's balance for that segment. We then subtract any payments or credits posted as of that day that are allocated to that segment. This gives us the separate daily balance for each segment of your account. However, if you paid the New Balance shown on your previous statement in full (or if your new balance was zero or a credit amount), new transactions which post to your purchase or special purchase segments are not added to the daily balances.
To calculate your total finance charge, multiply your average daily balance by the daily periodic rate and by the number of days in the billing period. Due to rounding on a daily basis, there may be a slight variance between this calculation and the amount of finance charge actually assessed.

3. **Determining Daily Periodic Rates.** Divide the corresponding Annual Percentage Rate by 365 and round up to the nearest 1/100,000th of 1%, not to exceed the maximum allowed by applicable law. If the daily periodic rates and corresponding Annual Percentage Rates increase, the Finance Charge will increase and your minimum payment may be greater. Refer to the IMPORTANT DISCLOSURES for daily periodic rates and Annual Percentage Rates.

**OTHER CHARGES:**
**Copying Charge:** $3.00 for a copy of a Periodic Statement and $2.00 for a copy of a transaction (fee imposed per copy).

**IMPORTANT INFORMATION ABOUT PROCEDURES FOR APPLYING FOR OR OPENING A NEW ACCOUNT.**
To help the government fight the funding of terrorism and money laundering activities, Federal law requires all financial institutions to obtain, verify and record information that identifies each person who opens an account. What this means for you: When you apply for or open an account, we will ask for your name, address, date of birth and other information that will allow us to identify you.

**Apply Now**

About Capital One | Investors | Press | Careers | Financial Education

Canada
UK

Capital One does not provide, endorse, nor guarantee and is not liable for third party products, services, educational tools, or other information available through this site. Read additional disclosures.

MEMBER FDIC  Equal Housing Lender 

Site Map | Privacy | Security | Terms and Conditions

This site provides information about and access to financial services offered by the Capital One family of companies, including Capital One Bank and Capital One, N.A., members FDIC.
©2007 Capital One Services, Inc.
Capital One is a federally registered service mark. All rights reserved.
Blank Check® is a registered trademark of Capital One Services, Inc.

Credit Cards | Auto Loans | Direct Banking | Home Loans | Healthcare Finance | Personal Loans | Small Business | Commercial



Capital One Home | ▼ Find Products | ▼ Access Your Account | ▼ Customer Service

**CapitalOne** what's in your wallet?®

| Credit Cards Home | Apply for a Mail Offer | Learn About Rewards | Browse Our Credit Cards | Saving Zone |

# Capital One® Classic Platinum

Overview | **Disclosures**

**Apply Now**

| | |
|---|---|
| **ANNUAL PERCENTAGE RATE** (APR) for purchases‡ | 0% (0.00000% daily periodic rate) through your 02/2008 billing period. After that, a variable rate, currently equal to **14.9%** (0.04082% daily periodic rate). |
| Other **APR**s | Special transfer APR: A variable rate, currently equal to 14.9% (0.04082% daily periodic rate). ▽<br>Balance transfer APR: Same as for purchases.<br>Cash advance APR: A variable rate, currently equal to 19.8% (0.05425% daily periodic rate).<br>Default APR: A variable rate, currently equal to 28.15% (0.07712% daily periodic rate). See explanation below. ‡ |
| Variable Rate Information | Your purchase APR may vary quarterly. The rate will be determined by adding 6.65% to the Prime rate. Your special transfer segment APR may vary quarterly. The rate will be determined by adding 6.65% to the Prime rate. Your cash APR may vary quarterly. The rate will be determined by adding 11.55% to the Prime rate.♦ Rates in effect 07/01/07. Your default APR may vary monthly. The rate will be determined by adding 19.9% to the Prime rate.♦ ♦ Rate in effect 09/01/07. |
| Grace period for repayment of the balance for purchases. | 25 days from the date of the periodic statement on new purchases (provided you have paid your previous balance in full by the due date). |
| Method of computing the balance for purchases. | Average daily balance (including new purchases). |
| Membership Fee | $19 annually. |
| Minimum finance charge | For each Billing Period that your Account is subject to a finance charge, a minimum total **FINANCE CHARGE** of $0.50 will be imposed. |
| Miscellaneous Fees | Cash advance fee: 3% of amount of the cash advance, but not less than $5.<br>Transfer fee: None.<br>Late payment fee: Your late payment fee will be based on the amount of your account balance at the time the fee is applied. Balance of $0 - $99.99 = $19 fee; balance of $100 - $999.99 = $29 fee; balances of $1,000 or more = $39 fee.<br>Over-the-credit-limit fee: Your over-the-credit-limit fee will be based on the amount of your credit limit at the time the fee is applied. Credit limit of $0 - $499.99 = $19 fee; credit limit of $500 - $999.99 = $29 fee; credit limits of $1,000 or more = $39 fee. |

Returned payment fee: $29.
Foreign transaction fee: None.

### Things You Should Know About This Card

▽ **What Will Be My APR If I Transfer A Balance?**
Any balances that you successfully transfer on or before March 1, 2008 will receive the Special Transfer APR disclosed above. All subsequent balances that you transfer will receive the Purchase APR disclosed above unless the transfer is made in connection with a Future Offer from us. Please remember that Future Offers, as discussed below, may include different terms.

‡ **Can You Increase My APRs?**
We will not increase your introductory APRs for any reason before the end of the introductory period. Your variable non-introductory APRs can go up or down each quarter as the Prime rate goes up or down. Your APRs can increase to the Default APR if your payment is received late (3 or more days after your payment due date) twice within any 12 billing periods. If we increase your APRs for late payments, we will return you to your prior APRs if you make at least the minimum payment on time for 12

consecutive billing periods. If we change your non-introductory APRs for reasons other than when the Prime changes or you paid late as disclosed above, we will notify you in writing of your options in advance, including the right to opt out.

### What About Any Other Terms Of My Account?

We may change any other terms of your account, other than APRs, at any time. If we change any of these terms, we will notify you in advance of your options in writing, including the right to opt out of certain changes.

### Do You Engage In Universal Default?

We do not engage in a practice known as "universal default." Universal default permits a credit card company to increase your APRs simply because you fail to make a payment on a loan with another lender or your credit history contains other negative information.

### How Do You Calculate My Variable Rate?

◆ We calculate your variable rate by adding a percentage to the Prime rate published in the "Money Rates" section of *The Wall Street Journal* on the 25th day of December, March, June and September. If the *Journal* is not published on that day, then see the immediately preceding edition. If Prime changes, your new rate will take effect on the first day of your January, April, July and October billing period.

◆◆ We calculate your variable rate by adding a percentage to the Prime rate published in the "Money Rates" section of *The Wall Street Journal* on the 25th day of each month. If the *Journal* is not published on that day, then see the immediately preceding edition. If Prime changes, your new rate will take effect on your next billing period..

### What About Future Offers?

At any time in the future, we may extend new offers in connection with this account, including opportunities to transfer additional balances. These new products and services may have different APRs, fees and other terms. We will provide any different terms when we make you the new offer, and you may accept or decline any such offer.

### ◊ How Do You Determine My Credit Line?

We determine your credit line based on your credit history and information you provide on your application. If your application is approved, you will receive a credit line between $300 and $3,000.

### How Do You Apply My Payment?

We will apply your payment to pay off lower-rate balances before paying off higher-rate balances.

### How Do You Calculate My Minimum Payment?

Your minimum payment will be the greater of 3% of your outstanding balance or $15. If your balance is less than $15, your minimum payment will equal your balance.

---

### Terms and Conditions

I am applying to Capital One Bank (Capital One®) for a credit card account. Everything that I have stated in this application is correct to the best of my knowledge. I understand that approval is based upon satisfying Capital One's credit standards and that I may be ineligible if I have responded to a previous offer for a credit card issued by Capital One within the last 45 days or if I have been approved for a previous Capital One offer. Capital One maintains the right not to open my account if: (a) the information provided on or with my application is incomplete, inaccurate or unverifiable, or I no longer meet Capital One's standards for creditworthiness; (b) my name and/or mailing address has been altered; (c) Capital One receives my application after it has expired. Capital One may contact me to obtain or confirm application information within 21 days of the receipt of my application. I understand that I must be at least 18 years of age and have a valid social security number, unless otherwise specified to qualify for this offer.  I understand that, unless the offer discloses a specific credit line, the exact amount of my credit line will be determined by Capital One after review of my application and other information. I understand that you will retain my application whether or not it is approved. You are authorized to answer questions about your credit experience with me. If I am applying for a Transfer Request, I authorize Capital One to bill my approved Capital One credit card account for the amount(s) listed for transfers. I understand that I am applying for a transfer amount up to the total amount listed on my Transfer Request. I understand Capital One will advise me if it is unable to process my payment request for any reason. In addition, Capital One will not be responsible for any charges billed to me by other creditors for the transfers and Capital One will process only those Transfer Requests that can be transferred under my assigned credit line. Arbitration:  I understand that the Customer Agreement contains an Arbitration Provision that may limit my legal rights, including my right to go to court, to have a jury trial, and to participate in class actions. I will receive the Capital One Customer Agreement and am bound by its terms and future revisions thereof. This offer is nontransferable and is void to residents of the dependent areas of the U.S. An applicant, if married, may apply for a separate account.  This is not a business account. © 2007 Capital One Services, Inc. Capital One is a federally registered service mark. All rights reserved. Capital One supports information privacy protection: see our website at www.capitalone.com.

## STATE SPECIFIC INFORMATION

### California Residents:

Applicants: 1) may, after credit approval, use the credit card account up to its credit limit; 2) may be liable for amounts extended under the plan to any joint applicant. As required by law, you are hereby notified that a negative credit report reflecting on your credit record may be submitted to a credit reporting agency if you fail to fulfill the terms of your credit obligations.

**Ohio Residents:**

Ohio anti-discrimination laws require creditors to make credit equally available to all creditworthy customers and that credit reporting agencies maintain separate credit histories on individuals upon request. The Ohio Civil Rights Commission administers these laws.

**New York and Vermont Residents:**

Capital One may obtain at any time your credit reports for any legitimate purpose associated with the account or the application or request for an account, including but not limited to reviewing, modifying, renewing and collecting on your account. On your request you will be informed if such a report was ordered. If so, you will be given the name and address of the consumer reporting agency furnishing the report. New York residents may contact the New York State Banking Department (1-800-518-8866) for a comparative list of credit card rates, fees, and grace periods.

**Married Wisconsin Applicants:**

No provision of any marital property agreement, unilateral statement, or court order applying to marital property will adversely affect a creditor's interests unless prior to the time credit is granted, the creditor is furnished with a copy of the agreement, statement or court order, or has actual knowledge of the provision.

**YOUR BILLING RIGHTS**
**KEEP THIS NOTICE FOR FUTURE USE.**
This notice contains important information about your rights and our responsibilities under the Fair Credit Billing Act.

**NOTIFY US IN CASE OF ERRORS OR QUESTIONS ABOUT YOUR BILL.** If you think your bill is wrong, or if you need more information about a transaction on your bill, write to us on a separate sheet as soon as possible at the address listed on your bill. We must hear from you no later than 60 days after we sent you the first bill on which the error or problem appeared. You can telephone us, but doing so will not preserve your rights. In your letter, please provide the following information:

1. Your name and account number.
2. The dollar amount of the suspected error.
3. Describe the error and explain, if you can, why you believe there is an error. If you need more information, describe the item you are not sure about.

If you have authorized us to pay your credit card bill automatically from your savings or checking account, you can stop the payment on any amount you think is wrong. To stop the payment, your letter must reach us three business days before the automatic payment is scheduled to occur.

**YOUR RIGHTS AND OUR RESPONSIBILITIES AFTER WE RECEIVE YOUR WRITTEN NOTICE.**
We must acknowledge your letter within 30 days, unless we have corrected the error by then. Within 90 days, we must either correct the error or explain why we believe the bill was correct.

After we receive your letter, we cannot try to collect any amount you question, or report you as delinquent. We can continue to bill you for the amount you question, including finance charges, and we can apply any unpaid amount against your credit limit. You do not have to pay any questioned amount while we are investigating, but you are still obligated to pay the parts of your bill that are not in question.

If we find that we made a mistake on your bill, you will not have to pay any finance charges related to any questioned amount. If we didn't make a mistake, you may have to pay finance charges, and you will have to make up any missed payments on the questioned amount. In either case, we will send you a statement of the amount you owe and the date that it is due. If you fail to pay the amount that we think you owe, we may report you as delinquent. However, if our explanation does not satisfy you and you write to us within ten days telling us that you still refuse to pay, we must tell anyone we report you to that you have a question about your bill. And, we must tell you the name of anyone we reported you to. We must tell anyone we report you to that the matter has been settled between us when it finally is. If we don't follow these rules, we can't collect the first $50 of the questioned amount, even if your bill was correct.

**SPECIAL RULE FOR CREDIT CARD PURCHASES.**
If you have a problem with the quality of property or services that you purchased with a credit card and you have tried in good faith to correct the problem with the merchant, you may have the right not to pay the remaining amount due on the property or services. There are two limitations on this right:

a. You must have made the purchase in your home state or, if not within your home state, within 100 miles of your current mailing address; and
b. The purchase price must have been more than $50.

These limitations do not apply if we own or operate the merchant, or if we mailed you the advertisement for the property or services.

**IMPORTANT INFORMATION ABOUT YOUR CREDIT CARD ACCOUNT**

**FINANCE CHARGE.**

1. Transactions which are not subject to a grace period are assessed finance charges 1) from the date of the transaction or 2) from the date the transaction is processed to your account or 3) from the first calendar day of the current billing period. Additionally, if you did not pay the "New Balance" from the previous billing period in full, finance charges continue to accrue to your unpaid balance until the unpaid balance is paid in full.

This means that you may still owe finance charges, even if you pay the entire New Balance indicated on the front of your statement by the payment due date, but did not do so for the previous month. Unpaid finance charges are added to the applicable segment of your account. Cash advances (the cash advance segment) and special transfers (if your account includes a special transfer segment) may not avoid finance charges.

2. **Cash Advance, Purchase/Balance Transfer/Other Charges and Special Transfer or Special Purchase Segments (If Your Account Includes a Special Transfer or Special Purchase Segment).**

Finance charge is calculated by multiplying the daily balance of each segment of your account (e.g., cash advance, purchase, special transfer, and special purchase) by the corresponding daily periodic rate(s) that has been previously disclosed to you. At the end of each day during the billing period, we apply the daily periodic rate for each segment of your account to the daily balance of each segment. Then at the end of the billing period, we add up the results of these daily calculations to arrive at your periodic finance charge for each segment. We add up the results from each segment to arrive at the total periodic finance charge for your account.

To get the daily balance for each segment of your account, we take the beginning balance for each segment and add any new transactions and any periodic finance charge calculated on the previous day's balance for that segment. We then subtract any payments or credits posted as of that day that are allocated to that segment. This gives us the separate daily balance for each segment of your account. However, if you paid the New Balance shown on your previous statement in full (or if your new balance was zero or a credit amount), new transactions which post to your purchase or special purchase segments are not added to the daily balances.

To calculate your total finance charge, multiply your average daily balance by the daily periodic rate and by the number of days in the billing period. Due to rounding on a daily basis, there may be a slight variance between this calculation and the amount of finance charge actually assessed.

3. **Determining Daily Periodic Rates.** Divide the corresponding Annual Percentage Rate by 365 and round up to the nearest 1/100,000[th] of 1%, not to exceed the maximum allowed by applicable law. If the daily periodic rates and corresponding Annual Percentage Rates increase, the Finance Charge will increase and your minimum payment may be greater. Refer to the IMPORTANT DISCLOSURES for daily periodic rates and Annual Percentage Rates.

**OTHER CHARGES:**

**Copying Charge:** $3.00 for a copy of a Periodic Statement and $2.00 for a copy of a transaction (fee imposed per copy).

**IMPORTANT INFORMATION ABOUT PROCEDURES FOR APPLYING FOR OR OPENING A NEW ACCOUNT.**

To help the government fight the funding of terrorism and money laundering activities, Federal law requires all financial institutions to obtain, verify and record information that identifies each person who opens an account. What this means for you: When you apply for or open an account, we will ask for your name, address, date of birth and other information that will allow us to identify you.

**Apply Now**

About Capital One | Investors | Press | Careers | Financial Education

Canada
UK

Capital One does not provide, endorse, nor guarantee and is not liable for third party products, services, educational tools, or other information available through this site. Read additional disclosures.

MEMBER FDIC    Equal Housing Lender    

Site Map | Privacy | Security | Terms and Conditions

This site provides information about and access to financial services offered by the Capital One family of companies, including Capital One Bank and Capital One, N.A., members FDIC.
©2007 Capital One Services, Inc.
Capital One is a federally registered service mark. All rights reserved.
Blank Check[®] is a registered trademark of Capital One Services, Inc.

Credit Cards | Auto Loans | Direct Banking | Home Loans | Healthcare Finance | Personal Loans | Small Business | Commercial

Capital One Home

▼ Find Products    ▼ Access Your Account    ▼ Customer Service

**Capital**One | small business℠

| Small Business Home | Business Credit Cards | Business Line of Credit | Business Loans | Business Resource Center |

# Visa® Business Platinum with Double No Hassle Miles℠

| Overview | FAQ | **Important Disclosures** | Compare Cards |

## Capital One® Visa Business Platinum Card with Double No Hassle Miles

**Apply Now** and get a response in as little as 60 seconds!

| | |
|---|---|
| Annual Fee | $0 for the first year, $39 after that |
| Credit Line | Your exact credit line (up to $20,000 and no less than $2,000) will be determined based on our review of your application and credit information. |
| Non-introductory APR (Annual Percentage Rate) for purchases and balance transfers | A variable rate currently equal to **18.24 %** (Prime plus 9.99%). Rates in effect as of 06/01/07. |
| Non-introductory APR for cash advances | A variable rate currently equal to 19.89% (Prime plus 11.64%). Rate in effect as of 06/01/07. |
| Grace period on new purchases | 25 days from the date of the periodic statement on new purchases (provided you have paid your previous balance in full by the due date). |
| Default APR | A variable rate of Prime plus 19.9%, currently equal to 28.15%. Rate in effect as of 06/01/07. |

- Returned payment fee: $29.

**How Your Actions Could Affect Your APRs:** If your account is 3 or more days past due twice within any 12 billing periods, we may increase your APRs immediately to the Default APR disclosed above. If we increase your APRs for this reason, we will return you to your prior APRs if you make at least the minimum payment on time for 12 consecutive billing periods. If you have an introductory APR that has expired, we will not return you to that APR. Unlike some other credit card companies, we will not increase your APRs because you exceed your credit limit.

**Other Reasons Your Terms Could Change:** Variable rates will go up or down when the index on which they are based (for example LIBOR or Prime) changes. We reserve the right to change the terms of your account, including APRs and fees, at any time for other reasons, including changes to competitive or general economic conditions. If we change your terms for reasons other than when the index changes or you paid late as disclosed above, we will notify you in writing of your options in advance, including your right to opt out of certain changes.

**How Your Credit History Could Affect Your APRs:** We do not engage in a practice known as "universal default." Universal default permits a credit card company to increase your APRs solely because you fail to make a payment on a loan with another lender or your credit history contains other negative information. If we increase your APRs for any of the reasons disclosed above, we may review your credit history to determine (a) that we should not increase your APR, or (b) the level of the increase, if any.

**How Your Variable Rate is Calculated:** The Prime rate used to determine your APR is the rate published in the "Money Rates" section of *The Wall Street Journal* on the 25th day of each month, or if not published on that date, then as published on the immediately preceding publication date and will take effect with your billing period ending the following month.

**Minimum Payment:** Your minimum payment will be the greater of 3% of your outstanding balance or $10. If your balance is less than $10, your minimum payment will equal your balance. Please remember that APR increases and fees, including late, overlimit

and returned payment fees, may increase your minimum payment.

**How We Apply Payments:** We will apply your payment to pay off lower rate balances before paying off higher rate balances.

[1] Cardholder will earn 2 miles per dollar on all purchases. Reward applies to total net purchases only (purchases minus credits and returns). It does not include cash advances, transferred balances, purchase checks, access checks, convenience checks or traveler's checks. Rewards do not accumulate for fees of any kind, such as finance charges, late payment fees, annual fees and related service charges, unauthorized charges, and ATM transactions. Rewards will be calculated as specified above and then rounded to the nearest whole increment. If a late fee is charged to the account, the cardholder will forfeit any earnings applied to the rewards balance during the billing cycle containing the fee. The account must be open and in good standing (not past due, overlimit, fraudulent, restricted, or part of a consumer credit counseling program or bankruptcy settlement) to redeem rewards. Capital One has the right to change or cancel this rewards program at any time.

The number of miles required by the Cardholder for travel redemption will depend on the cost of the itinerary chosen by the Cardholder at the time of redemption. The mileage requirement is as follows: 15,000 miles are required for tickets up to $150.00; 35,000 miles are required for tickets from $150.01 up to $350.00; 60,000 miles are required for tickets from $350.01 up to $600.00. For tickets over $600.00 in value, the required number of miles will be determined by multiplying the cost of the ticket by 100 (ex. $768 ticket requires 76,800 miles). The number of miles required to redeem for non-air travel redemptions will vary by rewards product and are subject to change at any time without notice. Once approved, the cardholder can visit www.capitalone.com/milesrewards to register the account and see a complete description of current redemption offers. Cardholder will have a maximum of 90 days from the date an airline reservation posts to their account to call the Rewards Redemption Center to be reimbursed for the cost using the appropriate number of miles, if available. Cardholder is responsible for all associated taxes, airport security charges, fuel surcharges and other usage fees required for travel. These charges will be included in the overall calculation to determine the appropriate number of miles required for redemption.

[2] Your Capital One Visa Business Card account must be open and in good standing (not overlimit or past due) and must have had at least one transaction in the last calendar year to receive a Year-End Summary.

## TERMS OF OFFER

The Authorizing Signatory and the Company, through the Authorizing Signatory, hereby:

1. apply to Capital One Bank (Capital One) and request that Capital One establish a Capital One Visa Business Card account and issue a credit card on the account to the Authorizing Signatory whose signature appears on this application and to all Authorized Users for whom additional cards are requested;
2. agree to be bound by the terms and conditions of the Customer Agreement and Addendum, and future revisions thereof that will be sent to them after the account is opened, including the provision therein that the Customer Agreement and the account will be governed by Virginia and federal law; Arbitration: I understand that the Customer Agreement contains an Arbitration Provision that may limit my legal rights, including my right to go to court, to have a jury trial, and to participate in class actions;
3. acknowledge and agree that all cards and convenience checks will be used solely for business or commercial purposes and not for personal, family or household purposes;
4. agree that the Company and the Authorizing Signatory will be liable for all transactions made with all cards and convenience checks on the account, and anyone issued a card on the account as an Authorized User will also be liable for all transactions made with their card;
5. acknowledge that each "Authorized User" is duly employed by the Company as of the date a card is requested for such Authorized User;
6. agree to be individually, jointly and severally liable for all charges to the card(s) issued to the above "Authorized Users";
7. authorize the receipt and exchange of credit information on both the Authorizing Signatory and the Company, including the exchange of information between the Issuer and its affiliates. Our agreement terms (for example, rates and fees) are subject to change. Everything that is stated in this application is true to the best of our knowledge. We understand that the Authorizing Signatory and each Authorized User must be 18 years or older and a U.S. citizen or permanent resident alien and that the Company must be a U.S. business to qualify for this offer. In addition, we understand that the Authorizing Signatory must hold a position, such as owner or president, having the authority to legally bind the Company. We understand that approval is based upon satisfying Capital One's credit standards. We may be ineligible if we have responded to a previous offer for a Small Business Credit Card issued by Capital One within the last 45 days or if we have been approved for a previous offer of a Small Business Card issued by Capital One. We understand that Capital One will retain our application whether or not it is approved. This offer is nontransferable and is void to residents of the dependent areas of the U.S.

You may receive offers in the future that offer new account terms. If you accept one of these offers, you will be accepting all of the account terms of the new offer, including any fees such as transfer fees.

## IMPORTANT INFORMATION ABOUT PROCEDURES FOR APPLYING FOR OR OPENING A NEW ACCOUNT

To help the government fight the funding of terrorism and money laundering activities, Federal law requires all financial institutions to obtain, verify and record information that identifies each person who opens an account. What this means for you: When you apply for or open an account, we will ask for your name, address, date of birth and other information that will allow us to identify

you.

**MISCELLANEOUS FEES**

- Cash advance fee: 3% of amount of the cash advance, but not less than $5.
- Transferred balance fee: none.
- Late payment fee: Your late payment fee will be based on the amount of your account balance at the time the fee is applied. Balance of $0 - $99.99 = $19 fee; balance of $100 - $999.99 = $29 fee; balances of $1,000 or more = $39 fee.
- Over-the-credit-limit-fee: Your over-the-credit-limit fee will be based on the amount of your credit limit at the time the fee is applied. Credit limit of $0 - $499.99 = $19 fee; credit limit of $500 - $999.99 = $29 fee; credit limits of $1,000 or more = $39 fee.
- Copying fee: $3 for a copy of a Periodic Statement; $2 for a copy of a transaction.

**IMPORTANT STATE-SPECIFIC INFORMATION**

- **California Residents:** Applicants: 1) may, after credit approval, use the credit card account up to its credit limit; and 2) may be liable for amounts extended under the plan to any joint applicant. As required by law, you are hereby notified that a negative credit report reflecting on your credit record may be submitted to a credit reporting agency if you fail to fulfill the terms of your credit obligations.
- **Ohio Residents:** Ohio anti-discrimination laws require creditors to make credit equally available to all creditworthy customers and that credit reporting agencies maintain separate credit histories on individuals upon request. The Ohio Civil Rights Commission administers these laws.
- **Married Wisconsin Residents:** No provision of any marital property agreement, unilateral statement, or court order applying to marital property will adversely affect a creditor's interests unless prior to the time credit is granted, the creditor is furnished with a copy of the agreement, statement or court order, or has actual knowledge of the provision.
- **New York and Vermont Residents:** Capital One may obtain at any time your credit reports for any legitimate purpose associated with the account or the application or request for an account, including but not limited to reviewing, modifying, renewing and collecting on your account. On your request, you will be informed if such a report was ordered. If so, you will be given the name and address of the consumer reporting agency furnishing the report. New York residents may contact the New York State Banking Department (1-800-518-8866) for a comparative list of credit card rates, fees and grace periods.

 **Apply Now** and get a response in as little as 60 seconds!

About Capital One | Investors | Press | Careers | Financial Education                                    Canada
                                                                                                         UK

Capital One does not provide, endorse, nor guarantee and is not liable for third party products, services, educational tools, or other information available through this site. Read additional disclosures.

 MEMBER FDIC   Equal Housing Lender

Site Map | Privacy | Security | Terms and Conditions

This site provides information about and access to financial services offered by the Capital One family of companies, including Capital One Bank and Capital One, N.A., members FDIC.
©2007 Capital One Services, Inc.
Capital One is a federally registered service mark. All rights reserved.
Blank Check® is a registered trademark of Capital One Services, Inc.

Credit Cards | Auto Loans | Direct Banking | Home Loans | Healthcare Finance | Personal Loans | Small Business | Commercial

# CUSTOMER AGREEMENT

Welcome to Capital One® We are pleased to have your credit card account. This Customer Agreement contains information about your account. Please read it and keep it for your records. Your contract with us for the card and account ("the Agreement") consists of this Customer Agreement, together with any changes to this Customer Agreement that we make as provided below, the Security Account (if applicable), the Security Account Assignment Agreement (if applicable), Capital One Privacy Notice, any account disclosures provided and delivered to you prior to or at the time your account opened, including disclosures pursuant to requirements of Truth in Lending Act (hereinafter "TILA Account Disclosures"), as well as any subsequent notices of changes to these documents, and any and all documents that indicate your signature (including any electronic or digital signature) on any application, sales slip or other evidence of indebtedness on your account. In this Agreement the words "you," "your" and "yours" refer to each person who signed the application for the account (each, a "joint accountholder") and to anyone else who is authorized to use the account in any way (each, an "Authorized User"). Except as specifically stated herein, each of you is individually and jointly obligated under this Agreement. The words "we," "us" and "our" mean Capital One Bank and its successors, assigns, agents and/or authorized representatives. If the application for the account stated that the account will be a "Security Account," this means the funds you have pledged to us to secure your account. This Agreement and the Security Account Assignment Agreement (if applicable) do not apply to any other Capital One Bank account that you may have, either now or in the future, except as provided in the Arbitration Provision below. Unless you have entered into a Security Account Assignment Agreement with us, the account is unsecured. Except as provided in the Security Account Assignment Agreement (if applicable), the account is not secured by any other property, regardless of the terms of any other contract to which you and we are subject. We can delay enforcing any of our rights under this Agreement without losing them. The card is and remains our property, and you will surrender it to us at any time upon request.

**Assignment.** We may transfer your account, the Security Account (if applicable) the Security Account Assignment Agreement (if applicable) and/or our rights under this Agreement to an assignee. The assignee will take our place under this Agreement, the Security Account (if applicable), and the Security Account Assignment Agreement (if applicable) with respect to the agreements and interests transferred. The assignee may or may not be an affiliate of Capital One Bank. You must pay the assignee and otherwise perform all of your obligations under those agreements. You may not transfer your account or your rights under this Agreement, the Security Account (if applicable) or the Security Account Assignment Agreement (if applicable) to any person or entity without our express prior written consent. Subject to the preceding sentence, this Agreement will be binding and inure to the benefit of your and our respective successors, assigns and representatives.

**Using Your Account.** You can make purchases and obtain cash advances (if cash advances are an option for your account) by using your card, account number and any account access checks (including Purchase Checks, Convenience Checks, Special Transfer Checks and other similar checks) that we may send to you. Additionally, you may request a stop payment on account access checks, but we reserve the right to charge you a fee for such services. When we provide you with account access checks, we will tell you whether they will be treated as purchases, cash advances or special transfers. Unless we tell you otherwise, Convenience Checks will always be treated as cash advances. We may establish different segments for your account, such as a purchase segment, a cash advance segment and a special transfers segment. Each segment may be subject to terms and conditions that are different than those that are applicable to other segments.

Our liability, if any, for any wrongful dishonor of an account access check is limited to your actual damages and shall not include any consequential damages, and in no event will it exceed the amount of the check.

You agree not to use the card or account in connection with any Internet or illegal gambling transactions, but any Internet or illegal gambling transactions in which you engage with the card or account nevertheless will be subject to this Agreement and the Security Account Assignment Agreement (if applicable).

Your card and account may only be used for valid and lawful purposes. If you use, or authorize someone else to use, the card or account for any unlawful or impermissible purpose, you will be responsible for such use and may be required to reimburse us and MasterCard International Incorporated "MasterCard" or Visa USA, Inc. "Visa," as applicable, or their successors for all amounts or expenses that we or they pay as a result of such unlawful or impermissible use. In any event, any unlawful or impermissible transactions in which you engage with the card or account nevertheless will be subject to this Agreement and the Security Account Assignment Agreement (if applicable). You agree that we are not responsible if anyone refuses to honor your card or account.

If you had a prior credit card or other account with us, or such an account or balance of such an account was transferred to us or one of our affiliates, and you agreed to reinstate the balance of the prior account in the form of your new account, the new account will accrue finance charges from the date that the new account is opened.

Authorized users are not financially responsible for the account. An authorized user may use a credit card, can request certain account information and can request to be removed from the account. Subject to our discretion, an authorized user may not be able to initiate certain actions on the account. You agree to provide us with information identifying any persons you authorize to use your account, including their name, address, date of birth and other identifying information we may request.

**Exchange Rate.** If you make a transaction in currency other than U.S. dollars, VISA International or MasterCard International will convert the charge or credit into a U.S. dollar amount in accordance with their operating regulations or conversion procedures in effect at the time the transaction is processed. VISA International's regulations and procedures provide that effective April 2, 2005, the exchange rate between the transaction currency and the billing currency used for processing international transactions is either (1) a rate selected by VISA from the range of acceptable rates in wholesale currency markets for the applicable central processing date, which rate may vary from the rate VISA itself receives or (2) the government mandated rate in effect for the applicable central processing date. MasterCard International's regulations and procedures provide the currency conversion rate it uses is either (1) a wholesale market rate or (2) a government mandated rate in effect on the day of the central processing date.

**Cash Equivalent Transactions.** If cash advances are an option for your account, you can use your account to purchase certain items that we regard as "cash equivalent transactions." All cash equivalent transactions will be treated as cash advances and will be billed to the cash advance segment of your account. Cash equivalent transactions include, without limitation, the purchase of wire transfer money orders, bets, lottery tickets, casino gaming chips and other similar products or services. Nothing in this paragraph will be interpreted to validate any transaction that is unlawful or impermissible.

**No Preset Spending Limit.** Your account has no preset spending limit. We will review several factors when determining the amount of credit to extend at a given point in time. These factors include, but are not limited to, purchasing patterns, the outstanding balance, account history, credit record and payment resources. If after reviewing these factors it is determined that we are unable to grant more credit at a certain point in time, a transaction may be turned down at the point of sale, an account access check may not be honored, or a balance transfer request may not be fulfilled.

**Additional Benefits and Services.** From time to time, we may offer you benefits and services with your account. These benefits and services may be provided by us or third parties. Unless expressly made a part of this Agreement, and except as provided in the Arbitration Provision below, any such benefits and services are not a part of this Agreement, and are subject only to the terms and conditions outlined in the benefits or services brochure and other official documents provided to you with respect to the benefits and services. We may adjust, add, or delete benefits or services at any time in accordance with the brochures or documents you receive. In addition, any such benefits or services offered to you in the most current version of the "Guide to Benefits" shall replace and supersede the benefits and services that had been offered to you in all previous versions of the "Guide to Benefits," without further notice. Except as provided by applicable law, we are

not liable for benefits or services provided by third parties or for the actions or omissions of those third parties.

**Making Payments.** You promise to pay us and are liable for all amounts due resulting from the authorized use of your card or account, including any finance charges and other charges due under the terms of this Agreement. Payments must be made in U.S. dollars. Payments made by a check, money order or other negotiable instrument (an "item") must be in a form acceptable to us and be drawn on a U.S. financial institution. We may allocate payments and other credits and proceeds among the various segments of your account, and to charges and principal due within each segment, in any way we determine, including balances (including new transactions) with lower annual percentage rates (APRs) before balances with higher APRs.

Payments you mail to us at the address for payment stated on your periodic statement will be credited to your account as of the business day we receive it, provided (1) you send the remittance coupon portion of your periodic statement and your check in the remittance envelope provided and (2) your payment is received in our processing center by the time indicated on your periodic statement. Please allow at least five (5) business days for postal delivery. Payments received by us at any other location or in any other form may not be credited as of the day we receive them. Our business days are Monday - Saturday, excluding holidays. Credit availability may be delayed in our sole discretion to ensure payment in good funds. If we accept a payment at some other place, we may delay the crediting of the payment for up to five (5) days. This may cause you to incur late payment fees and additional finance charges, and may result in your account being declared to be in default.

Any minimum payment that is due will be stated in your periodic statement. You must pay at least the minimum payment due by the date stated in your periodic statement to avoid a late payment fee. However, you may pay more than the minimum payment or pay the balance in full. In any case, finance charges will continue to be assessed during billing periods that you carry a balance regardless of whether or not your statement shows a minimum payment due.

We can accept late payments or partial payments, or items marked "payment in full" or other similar language, or payments with a request to apply the payment in a particular manner, without losing any of our rights under this Agreement, including our right to receive payment in full. No payment shall operate as an accord and satisfaction without our prior written approval. All written communications concerning disputed amounts, including any check or other payment instrument that indicates that the payment constitutes "payment in full" of the amount owed or that is tendered with other conditions or limitations or as full satisfaction of a disputed amount must be mailed or delivered to Capital One, P.O. Box 85010, Richmond, VA 23285-5010. You will not make payments from funds obtained from the account or any other credit account with us. If your payment is made to any other address, we may accept the payment without losing any of your rights.

When you send us check(s) to make payment on your account, you authorize us to make a one-time electronic transfer from your bank account for the amount of the check as indicated by numerical digits. This authorization applies to all check(s) received by us during the billing period even if sent by someone else, who you agree is your agent and was provided with these disclosures in advance. This authorization is not restricted by the date on the check and includes resubmissions. We will not be bound by any restrictive legend or condition appearing on the face or reverse side of the check. If we cannot process the electronic transfer, you authorize us to make a charge against your bank account by processing the check, substitute check, draft or similar instrument.

We may adjust your account as appropriate to correct errors, returned items, rejected debits and similar matters.

We may, in our sole discretion, offer an expedited payment service. You are not required to use this service. When you authorize us to process a demand draft, electronic ACH debit or other expedited payment method for your account, we may charge you an expedited payment fee in an amount disclosed to you at the time of the service. We are not responsible for any dishonor of the payment by your depository institution and may retain the fee in the event of such dishonor.

If you give your account number or other account information to another person to make a payment for you or to act on your behalf, you agree that we may discuss your account with that person and process the payment as if it were made by you. You further agree that you will be responsible for all consequences of payment or non-payment by such party, including expedited payment, return payment and late payment fees. We reserve the right to refuse to accept payment on your behalf or to permit another person to act on your behalf.

**Periodic Statement.** Each month that you have a credit or debit balance of more than $1 in your account, we will send you a periodic statement as and when required by applicable law. The periodic statement will show all transactions billed to your account during the billing period. The billing period is the time from one statement closing date through and including the next statement closing date. The statement closing date determines the month of a specific billing period. For example, your January billing period is the billing period with the statement closing date in January.

**Finance Charge.** You will be assessed finance charges as previously disclosed to you as part of the TILA Account Disclosures, and we will disclose to you if required by applicable law.

**Temporary Reduction in Finance Charge.** We reserve the right to not assess any or all finance charges for any given billing period without waiving the right to assess such finance charges in a future billing period.

**Other Fees and Charges.** The following fees will be billed to the purchase segment of your account and will be treated as a purchase and reduce your available credit, unless otherwise specified, in every billing period in which they apply: (i) A late payment fee will be assessed if we do not receive your payment in time for it to be credited, as provided in this Agreement, by the date stated in your periodic statement; (ii) a returned check fee will be assessed if we do not honor any account access check for any reason; (iii) copying charges for duplicate copies of transaction documentation or periodic statements will be assessed on a per-page basis, unless required for billing dispute resolution; (iv) a returned payment fee will be assessed if, for any reason, (a) a check, draft or similar instrument is not honored or cannot be processed; or (b) an electronic debit is returned unpaid or cannot be processed. You authorize us to resubmit returned payments in our discretion. At our option, we may assess this fee each time your payment is not honored or paid, even if it is later honored or paid following resubmission. Any check, draft or similar instrument may be collected electronically if returned for insufficient or uncollected funds. We may change any of these fees or charges or add additional fees and charges, as provided below. We reserve the right to waive any of these fees without prior notification to you while maintaining our right to assess these fees going forward.

**Cash Advance Fee.** If cash advances are permitted for your account, a cash advance fee finance charge will be (i) assessed each time you obtain a cash advance or cash equivalent transaction, (ii) added to the cash advance segment of your account and (iii) reduce your available credit. The amount of the cash advance fee finance charge will be added to other finance charges shown on your periodic statement for the purpose of calculating the annual percentage rate for that billing period. This may cause the annual percentage rate disclosed for that billing period to be greater than the annual percentage rate disclosed to you.

**Membership Fee.** If applicable, a membership fee will be imposed in your first billing period, unless specifically stated otherwise. If the membership fee is assessed annually, it will be assessed in the billing period in which each anniversary of the opening of your account occurs. If the membership fee is assessed monthly, it will be assessed in each billing period. The fee will be billed to the purchase segment of your account, and will be treated as a purchase and reduce your available credit. The membership fee will not be refunded, in whole or in part, even if you or we cancel the account.

**Transfer Fee.** A fee will be assessed for each transfer of funds from your account to your Security Account that you request. The fee will be billed to the cash advance segment of



your account and will be treated as a cash advance and reduce your available credit limit.

**Foreign Transaction Charge.** For each transaction made in a country other than the U.S., or U.S. Territories, we will assess you a finance charge as previously disclosed to you as part of the TILA Account Disclosures or as we will disclose to you if required by applicable law. The fee will be based on the U.S. dollar amount of the transaction.

**Credit Bureau Information.** You agree that we may obtain information about you from credit reporting agencies or others at any time and use it for the purposes of monitoring your credit performance, managing your account and considering you for new offers and programs.

**Security Interest.** The terms and conditions contained within this paragraph apply only if the application for the account stated that the account will be a secured account. You provided us with certain funds, which have been deposited in the Security Account. To secure payment of the balance of the account and all other amounts owing under the terms of this Agreement and the Security Account Assignment Agreement, you have transferred, assigned, pledged and granted to us a security interest in these funds, all funds contained in the Security Account, all proceeds of the foregoing and all proceeds of proceeds. This security interest includes, without limitation, the initial funds that were placed into the Security Account, any additional funds added to the Security Account by any person and any interest earned to or accrued on the Security Account. The terms of the security interest are set forth in the Security Account Assignment Agreement you executed. If (i) you default or fail to abide by any of the terms of this Agreement or the Security Account Assignment Agreement, (ii) you close your account or (iii) we cancel your account for any reason, we may then or thereafter, and without prior notice to you, exercise our security interest by deducting from your Security Account the balance due on your account and all other amounts owing under the terms of this Agreement and the Security Account Assignment Agreement. We may exercise this right to make such deductions from your Security Account periodically as we determine to be appropriate. Within sixty days after the date your account is closed, we will send all remaining funds in the Security Account to the person legally entitled to receive them.

**Future Offers.** The terms of any future offer relating to the account will be disclosed to you at the time the offer is made. If you accept an offer, the terms will become effective immediately unless otherwise specified in the offer.

**Default.** We may, in our sole discretion, declare a default under this Agreement if: (a) we do not receive the full amount of any minimum payment on or before the date it is due or (b) an item used to make payment on your account is not honored or cannot be processed, or an electronic debit to make payment on your account is returned unpaid or cannot be processed. To the extent permitted by applicable law, we may also, in our sole discretion, declare a default under this Agreement if: (1) you violate any of the other terms of this Agreement or Security Account Assignment Agreement (if applicable), (2) we have declared you to be in default under the terms of any other agreement with us or any of our affiliates, or (3) we determine that you made any false or misleading statements on your application for, or regarding the use of, the account, or otherwise attempted to defraud us, (4) bankruptcy or other insolvency proceedings are instituted by you or against you (5) you die or are declared legally incompetent or incapacitated. At any time following any default under this Agreement (or after we give you any notice or right to cure the default, if required by applicable law), you will be subject to paying interest, finance charges and other fees pursuant to the terms of this Agreement, including any applicable default rate, even after any judgment is obtained. Additionally, we may, at our sole option, (x) limit or not allow you to make any new purchases or cash transactions on your account(s), (y) increase your minimum payment with such notice as may be required by applicable law or (z) subject to the limitations of applicable law, close your account(s) and demand immediate payment of the entire outstanding balance plus all other amounts owing under the terms of this Agreement and the Security Account Assignment Agreement.
To the extent permitted by applicable law, you agree to pay us all of our actual court costs, collection expenses and attorney's fees (whether paid to an attorney who is one of our employees or an attorney who is not one of our employees) incurred by us in the collection of any amount you owe us under this Agreement. You also agree to pay us all of our actual costs that we incur in retrieving your cards, including any costs we may incur by having your account placed on a restricted list. Nothing in this paragraph shall be construed to waive or impede our right to require arbitration in accordance with the Arbitration Provision below.

**Account Closure and Suspension of Credit Privileges.** (1) We may, at any time, with or without cause, with or without advance notice, and regardless of the existence or non-existence of a default under this Agreement, cancel the account and/or temporarily or permanently suspend your credit privileges under this Agreement. If we cancel the account, you agree to immediately destroy all cards and unused account access checks. (2) Your obligation to make payments and your other obligations under this Agreement will continue in full force and effect after the account is cancelled or your credit privileges are temporarily or permanently suspended. Cancellation of the account and/or temporary or permanent suspension of your credit privileges will not affect our security interest in your Security Account (if applicable) or our rights under the Security Account Assignment Agreement (if applicable). You can close your account by calling our Customer Relations department with the number found on the back of your credit card or, if different, the number stated in your periodic statement and requesting an account closure. You agree to destroy all cards and unused account access checks, cancel all preauthorized billing arrangements and cease using your card and account. If you do not cancel all preauthorized billing arrangements, you and we will consider our receipt of a preauthorized debit to your account to constitute your authorization to reopen the account on the terms set forth in this Agreement and the Security Account Assignment Agreement (if applicable). Your account will not be closed until you pay all amounts you owe us under this Agreement and the Security Account Assignment Agreement (if applicable) including, without limitation, any purchase and cash advance transactions you have authorized, finance charges, late payment fees, returned check fees, returned payment fees, membership fees, cash advance fees, transfer fees, copying charges and any other fees charged to your account. You are responsible for these amounts whether they have been incurred at the time you request a closure of the account or they are incurred subsequent to your request to close the account. This may result in charges appearing on your account after you have requested the account to be closed and, if the account has already been closed, the account will be reopened on the terms set forth in this Agreement and the Security Account Assignment Agreement (if applicable). For example, if you authorize a purchase from a merchant and we receive the charge from the merchant after your account has been closed, your account will be reopened, the amount of the charge will be added to your account and you will be responsible for payment under the terms of this Agreement and the Security Account Assignment Agreement (if applicable). The membership fee for your account will continue to be charged, to the extent permitted by applicable law, until the entire account balance has been paid in full, as described above. If the account is reopened, a new membership fee will be charged to the account as stated above.

If you, acting as the primary cardholder, want to terminate a joint accountholder's or an authorized user's access to the account, you must call our Customer Relations department and request that termination. Immediately thereafter, you agree to destroy that person's card(s) and destroy any unused account access checks in that person's possession. There may be a delay in the effective date of the termination of that person's access to the account. The account will be charged, and you and any joint accountholders will be responsible, for any charges through the use of the card or the account by the joint accountholder or authorized user that occur prior to the effective date of the termination even if the charges do not appear on the account until a later time. If you are unable to destroy the joint accountholder's or authorized user's card(s) or to destroy the unused account access checks in that person's possession, and you call our Customer Relations department to close your account, your account will be closed in accordance with the preceding paragraph. Either you and/or the joint cardholder, if any, may apply for a new account.

**Changes in Terms.** We may add to, remove, amend or change any part or provision of

this Agreement, including the annual percentage rate(s) and any charges, (including adding new provisions of the same or a different nature as the existing provisions in this Agreement) at any time. If we do so, we will give you notice of such amendment or change if required by Federal law or Virginia law (to the extent not preempted by Federal law) unless we had previously notified the customer that the account would be subject to such amendment or change without notice. Notice will be mailed to the last billing address indicated in our records for the account. However, no notice will be mailed if we previously had notified you that your account would be subject to such amendment or change without notice. Changes to the annual percentage rate(s) will apply to your existing account balance from the effective date of the change, whether or not the account balance includes transactions billed to the account before the change date and whether or not you continue to use the account. Changes to fees and other charges will apply to your account from the effective date of the change.

**Governing Law. WE MAKE THE DECISION TO GRANT CREDIT, OPEN AN ACCOUNT AND ISSUE YOU A CREDIT CARD FROM OUR OFFICES IN VIRGINIA. This Agreement is to be construed in accordance with and governed by the laws of the United States of America and by the internal laws of the Commonwealth of Virginia without giving effect to any choice of law rule that would cause the application of the laws of any jurisdiction other than the laws of the United States of America or the internal laws of the Commonwealth of Virginia to the rights and duties of the parties. This Agreement is made in Virginia. It will be governed only by Federal law and Virginia law (to the extent not preempted by Federal law). If a court decides not to enforce a part of this Agreement, this Agreement will then read as if the unenforceable or invalid part were not there, but the remaining parts will remain in effect.**

**Waivers.** You waive the right to receive notice of any waiver or delay or presentment, demand, protest or dishonor and any right you may have to require us to proceed against another party before proceeding against you. You also waive, to the extent permitted by applicable law, any statute of limitations defense for an additional period of time equal to the applicable limitations period.

**Lost or Stolen Account Access Checks.** If your card(s) or account access checks are lost or stolen or if someone else may be using them without your permission, notify us at once by calling the telephone number on the back of your credit card or, if different, the telephone number shown on the front of your periodic statements, or by writing us at Capital One, P.O. Box 85015, Richmond, VA 23285-5015. You will not be liable for any amount for unauthorized use of your cards or account access checks.
You agree to tell us at once if you change your name, address, telephone number or employment. You agree to give us written notice of any change in your billing address at least 10 days before the change. Changes may be written in the space provided on the remittance coupon portion of your periodic statement or may be sent to the following address: Capital One, P.O. Box 85015, Richmond, VA 23285-5015. If your account is a joint account or if more than one person is permitted to use it, you agree that all notices regarding the account may be sent solely to the address shown on our billing records.

**Communications.** We may release information to others regarding the status or history of your account as set forth in the Capital One Privacy Notice, a copy of which has been provided to you. We may make inquiries of third parties in connection with maintaining and collecting your account, and you authorize such third parties to release information about you to us. We or our representatives may contact you from time to time regarding the account, or to ask for additional information about you or your experience with Capital One. You agree that such contacts are not unsolicited, are not limited except as expressly required by applicable law and may result from contact information you have provided or that is obtained from other sources. For example, we may contact you at your home or place of employment, during weekends or holidays, on your mobile telephone, voicemail or answering machine, and by email, fax, recorded message, text message or personal visit. Except as restricted by applicable law, we may monitor or record any calls we make or receive, suppress caller identification services and use an automated dialing and announcing device.

**ARBITRATION. PLEASE SEE ENCLOSED "ARBITRATION PROVISION." PLEASE NOTE THAT THE TERMS INCLUDED IN THE ARBITRATION PROVISION ARE PART OF YOUR CUSTOMER AGREEMENT.**

© 2006 Capital One Services, Inc. Capital One is a federally registered service mark. All rights reserved.

# ARBITRATION AGREEMENT
## IMPORTANT: THIS ARBITRATION PROVISION IS A PART OF YOUR CUSTOMER AGREEMENT

You and we agree that either you or we may, at either party's sole election, require that any Claim (as defined below) be resolved by binding arbitration.

**IF YOU OR WE ELECT ARBITRATION OF A CLAIM, NEITHER YOU NOR WE WILL HAVE THE RIGHT TO PURSUE THAT CLAIM IN COURT OR BEFORE A JUDGE OR JURY OR TO PARTICIPATE IN A CLASS ACTION OR ANY OTHER COLLECTIVE OR REPRESENTATIVE PROCEEDING. EXCEPT AS SET FORTH BELOW, THE ARBITRATOR'S DECISION WILL BE FINAL AND BINDING. OTHER RIGHTS THAT YOU WOULD HAVE IF YOU WENT TO COURT, INCLUDING THE RIGHT TO CONDUCT DISCOVERY OR TO APPEAL, MAY BE LIMITED OR UNAVAILABLE IN ARBITRATION. THE FEES ASSOCIATED WITH ARBITRATION MAY BE HIGHER THAN THE FEES ASSOCIATED WITH COURT PROCEEDINGS.**

**Special Definitions for this Arbitration Provision.** For the purposes of this arbitration provision ("**Arbitration Provision**"), the following definition shall apply in addition to the definitions set forth in your Customer Agreement ("**Agreement**"):

"**Claim**" means any claim, controversy or dispute of any kind or nature between you and us.
A. *This definition includes, without limitation, any Claim that in any way arises from or relates to:*
- the Agreement and any of its terms (including any prior agreements between you and us or between you and any other entity from which we acquired your account)
- this Arbitration Provision (including whether any Claim is subject to arbitration)
- the establishment, operation or termination of your account
- any disclosures, advertisements, promotions or other communications relating to your account, whether they occurred before or after your account was opened
- any transactions or attempted transactions involving your account
- any billing or collections matters relating to your account
- any posting of transactions (including payments or credits) to your account
- any goods or services charged to your account
- any fees, interest or other charges assessed to your account, or their calculation
- any products, services or benefits programs related to or offered in connection with your account (including any insurance, debt cancellation or extended service contracts and any programs, rebates, rewards, sweepstakes, memberships, discounts or coupons) whether or not we offered, introduced, sold or provided them
- our receipt, use or disclosure of any information about you or your account
- any other matters relating to your account or your relationship with us.

B. *This definition also includes, without limitation, any Claim:*
- regardless of how or when it is brought (for example, as an initial claim, counterclaim, cross-claim, interpleading or third-party claim)
- based on any theory of relief or damages (including money damages and any form of specific performance or injunctive, declaratory or other equitable relief)
- based on any theory of law or equity (including contract, tort, fraud, constitution, statute, regulation, ordinance or wrongful acts or omissions of any type, whether negligent, reckless or intentional)
- made by you or by anyone connected with you or claiming through or for you (including a co-applicant or authorized user of your account, your agent, your representative, your heirs or a trustee in bankruptcy)
- for which we may be directly or indirectly liable under any theory, including respondeat superior or agency (even if we are not properly named at the time the Claim is made)
- now in existence or that may arise in the future, regardless of when the facts and circumstances that give rise to the Claim occurred or when the Claim accrued
- made as part of a class action, private attorney general action, or other representative or collective action which Claim shall proceed on an individual basis as set forth more fully in this Arbitration Provision.

**Arbitration Administrators.** One of the following arbitration administrators ("Administrator" or, collectively, "Administrators") will administer the arbitration:

**JAMS**
1920 Main St., Ste. 300
Irvine, CA 92614
www.jamsadr.com

**American Arbitration Ass'n**
335 Madison Ave., Floor 10
New York, NY 10017-4605
www.adr.org

**National Arbitration Forum**
P.O. Box 50191
Minneapolis, MN 55405
www.arbitration-forum.com

You may contact any of the Administrators to obtain information about arbitration, arbitration rules and procedures, fee schedules and claim forms.

**Election and Initiation of Arbitration.** You or we may elect arbitration under this Arbitration Provision with respect to any Claim, even if the Claim is part of a lawsuit brought in court. You or we may make a motion or request in court to compel arbitration of any Claim brought as part of any lawsuit. We will not elect or initiate arbitration of any Claim brought in a small claims court (or the equivalent), so long as the Claim remains in that court, is made solely on behalf of an individual or joint account holder and is not made as part of a class action, private attorney general action or other representative or collective action.
You and we must follow the rules of the Administrators to initiate arbitration. If you initiate arbitration, you may choose one of the Administrators, and you must mail us any notice required by the Administrator to P.O. Box 85550, Richmond, VA 23285-5550. If we initiate arbitration, we will choose one of the Administrators, and we will mail you any notice required by the Administrator to your last-known billing address. If we have initiated arbitration, we will change the Administrator at your request if you notify us in writing at the above address within fifteen days of the date of any notice we send you of our initiation of arbitration.

**Procedures and Law Applicable in Arbitration.** This Arbitration Provision is made pursuant to a transaction involving interstate commerce and shall be governed by and enforceable under the Federal Arbitration Act (the "FAA"). Questions about whether any Claim is subject to arbitration shall be resolved by interpreting this Arbitration Provision in the broadest way it may be enforced, consistent with the FAA and the terms of this Arbitration Provision. The arbitrator will apply substantive law consistent with the FAA and applicable statutes of limitations, but the validity and enforcement of any class action waiver is a question for a court of competent jurisdiction, not an arbitrator, to decide. The arbitrator may award any damages or other relief permitted by applicable substantive law (but will not have power to review the enforceability or severability of the paragraph "No Consolidation or Joinder of Parties," below), but the award shall determine the rights and obligations of only the named parties and only with respect to the Claims in arbitration. The rules and procedures of the Administrator, shall govern the arbitration unless they conflict with this Arbitration Provision, in which case this Arbitration Provision will apply. The arbitrator will not be bound by, and this Arbitration Provision shall not be subject to, the federal, state or local rules of procedure and evidence that would apply in any court, or to state or local laws that relate to arbitration proceedings. You or we may have a hearing in arbitration. Any arbitration hearing that you attend in person will take place at a location in the federal judicial district that includes your last-known billing address or at some other place upon which you and we agree. You or we may be represented by counsel. If you or we request, the arbitrator will honor claims of privilege recognized under applicable law and will use best efforts to protect confidential information (including through the use of protective orders). The arbitrator will make any award in writing and, at the timely request of either party, will provide a written statement of reasons for the award.

**Costs.** The party initiating arbitration will pay the initial filing fee. You may seek a waiver of the initial filing fee or any of the Administrator's other fees (collectively, "Administrator's Fees") under any applicable rules of the Administrator. If you seek, but do not qualify for, a waiver, we will consider any written request by you for us to pay or reimburse your for all or part of the Administrator's Fees. We also will pay or reimburse you for all or part of the Administrator's Fees if the arbitrator determines there is good reason for us to do so. We will pay any fees and costs we are required to pay by law. Otherwise, and except as provided in this Agreement, you and we will bear all of our respective fees and costs (including the Administrator's Fees and the fees and costs relating to attorneys, experts and witnesses), regardless of who prevails. Allocation of fees and costs relating to appeals in arbitration will be handled in the same manner.

**No Consolidation or Joinder of Parties.** The arbitration of any Claim must proceed on an individual basis, even if the Claim has been asserted in a court as a class action, private attorney general action or other representative or collective action. Unless all parties consent, neither you nor we may join, consolidate or otherwise bring Claims related to two or more accounts, individuals or accountholders in the same arbitration. Also, unless all parties consent, neither you nor we may pursue a class action, private attorney general action or other representative or collective action in arbitration, nor may you or we pursue such actions in Court if any party has elected arbitration. You will not have the right to act as a class representative or participate as a member of a class of claimants with respect to any Claim as to which arbitration has been elected.

**Judgment, Enforcement, Finality and Appeal.** The arbitrator's decision will be final and binding after fifteen days unless you or we seek an appeal of the award by making a written request to the Administrator. The appeal panel, which will consist of three arbitrators, will consider all factual and legal issues anew, will conduct the appeal in the same manner as the initial arbitration and will make decisions based on the vote of the majority. The panel's decision will be final and binding. Any final decision of the arbitrator or of the appeal panel is subject to judicial review only as set forth under the FAA. An award in arbitration will be enforceable under the FAA by any court having jurisdiction.

**Miscellaneous, Waiver, Severability, Survival.** If you or we do not elect arbitration or otherwise enforce this Arbitration Provision in connection with any particular Claim, you or we will not waive any rights to require arbitration in connection with that or any other Claim. This Arbitration Provision will survive: (i) suspension, termination, revocation, closure or changes of this Agreement, your account and your relationship with us; (ii) the bankruptcy or insolvency of any party; and (iii) any transfer of your account, or any amounts owed on your account, to any other person or entity. If any portion of this Arbitration Provision is deemed invalid or unenforceable, the remaining portions of this Arbitration Provision shall nevertheless remain valid and in force. In the event of a conflict or inconsistency between this Arbitration Provision and the other provisions of this Agreement or any prior agreement, this Arbitration Provision shall govern. A photocopy or other image of this Agreement and related documents may be used in place of the originals for all purposes including litigation.

© 2005 Capital One Services, Inc. Capital One is a federally registered services mark. All rights reserved.

# Mr. David Lee
# 65 Lancaster Ave
# Kentfield, CA 94904-1604

March 23, 2007

**Certified Mail, Return Receipt Requested**
**Article Number 7006-0100-0004-6952-7034**

Mr. Richard D. Fairbank
Chairman & C.E.O.
Capital One Bank
4581 Cox Road
Glen Allen, VA 23060

Dear Mr.Fairbank:

It has recently come to my attention that the law in California has been changing when it comes to charge cards and, among other things, the arbitration provisions contained in them. As a holder, in good standing, of Capital One Bank "No Hassle Miles Visa Signature" card issued by your bank, which I use (and to your company's great financial benefit), I find this to be unacceptable. Thus, this letter is a demand, made under California Civil Code Section 1782, that Capital One Bank (including any and all of its affiliates and subsidiaries) "correct, repair, replace, or otherwise rectify the goods or services" which I believe violate California Civil Code Section 1770(a)(19) which makes it illegal to "insert[] an unconscionable provision in the contract." That provision was obviously designed to deprive me of my access to legal remedies, such as injunctive relief and class actions. Please remove it from the Cardmember agreement.

This demand is made on behalf of me personally, and on behalf of a class of others similarly situated.

I look forward to hearing from you in writing, concerning this letter.

Very truly yours,

David Lee





Capital One Services, Inc.
Attn: Corporate Office
P.O. Box 85870
Richmond, VA 23285-5870

June 13, 2007

David J. Lee
65 Lancaster Avenue
Kentfield, CA 94904

Re: Account ending in 3660
CID: 10000101879896

Dear Mr. Lee,

Your letter to Richard D. Fairbank has been forwarded to my attention for response. You explain that you wish for us to correct, repair, replace, or otherwise rectify the goods or services which you belive to be in violate of California Civil Code Section 1770(a)(19). Please allow me to address your concerns.

Please know that we respectfully disagree with your position that Capital One has engaged in any illegal activity, and we are sorry if you feel that we acted in an improper manner. Your Customer Agreement contains a valid arbitration provision to which you agreed when you applied for the account. If you are not satisfied with the terms of your Customer Agreement and/or account, please contact our Customer Service Department at the number below and request that your account be coded to close.

We appreciate you bringing your concerns to our attention. If you have additional questions, please feel free to contact our Customer Relations Department at 1-800-707-0489.

Sincerely,

*Stephanie Jones*

Stephanie Jones
Corporate Office
Capital One Services, Inc.

cc: Richard D. Fairbank