1   JAMES F. McCABE (CA SBN 104686)
    JMcCabe@mofo.com
2   JAMES R. McGUIRE (CA SBN 189275)
    JMcGuire@mofo.com
3   MELISSA A. JONES (CA SBN 205576)
    MJones@mofo.com
4   MORRISON & FOERSTER LLP
    425 Market Street
5   San Francisco, California 94105-2482
    Telephone: 415-268-7000
6   Facsimile: 415-268-7522

7   Attorneys for Defendants
    CAPITAL ONE BANK and
8   CAPITAL ONE SERVICES, INC.

9

10                UNITED STATES DISTRICT COURT

11              NORTHERN DISTRICT OF CALIFORNIA

12                 SAN FRANCISCO DIVISION

13

| | |
|---|---|
| 14  DAVID J. LEE, an individual and on behalf of others similarly situated, | Case No. C07-4599 MHP |
| 15                     Plaintiff, | **CLASS ACTION** |
| 16          v. | **DEFENDANTS' REPLY BRIEF IN SUPPORT OF ITS MOTION TO DISMISS FOR LACK OF SUBJECT MATTER JURISDICTION OR, IN THE ALTERNATIVE, FOR JUDGMENT ON THE PLEADINGS** |
| 17 | |
| 18  CAPITAL ONE BANK and CAPITAL ONE SERVICES, INC., Virginia corporations, DOES 1 through 100, inclusive, | |
| 19 | |
| 20                     Defendants. | Date:      March 3, 2008 |
| 21 | Time:      2:00 p.m. |
| 22 | Place:     Courtroom 15 Hon. Marilyn Hall Patel |
| 23 | Complaint filed:  Sept. 5, 2007 |

24

25

26

27

28

1

**TABLE OF CONTENTS**

2
Page

3    TABLE OF AUTHORITIES................................................................................................ii

4    INTRODUCTION............................................................................................................1

5    ARGUMENT ..................................................................................................................2

6    I.      COLLATERAL ESTOPPEL BARS THE COMPLAINT. .............................................2

7    II.     PLAINTIFF HAS NOT ESTABLISHED ARTICLE III
             STANDING.............................................................................................................4

8
         A.      Plaintiff's Theory of "Injury" Fails As A Matter Of Law...................................4
9
         B.      Plaintiff Has Not Otherwise Demonstrated Injury In Fact. ...............................6
10
         C.      Plaintiff's Authority Is Inapposite. .......................................................................7
11
         D.      Plaintiff Cannot Create Standing Simply By Alleging
12               Violations Of The CLRA And UCL. ................................................................ 10

13   III.    PLAINTIFF HAS NOT STATED CLAIMS UNDER THE UCL. ............................... 11

14   IV.     THE CLRA DOES NOT APPLY TO PLAINTIFF'S CLAIMS. ................................ 12

15   V.      PLAINTIFF'S FRAUD AND DECEIT CLAIM DOES NOT
             MEET THE REQUIREMENTS OF RULE 9(B)........................................................ 14
16
     VI.     CAPITAL ONE SERVICES, INC. IS NOT A PROPER
17           DEFENDANT AND SHOULD BE DISMISSED. ....................................................... 15

18   VII.    PLAINTIFF HAS NO BASIS FOR DECLARATORY RELIEF. ............................... 15

19   CONCLUSION ............................................................................................................. 15

20

21

22

23

24

25

26

27

28

1

2

<u>**TABLE OF AUTHORITIES**</u>

3

**Page(s)**

4

**CASES**

5

*389 Orange St. Partners v. Arnold,*
  179 F.3d 656 (9th Cir. 1999) ................................................. 14

6

7

*Abelson v. Nat'l Fire Ins. Co.,*
  28 Cal. App. 4th 776 (1994) ................................................. 4

8

*Berry v. Am. Express Publ'g Co.,*
  54 Cal. Rptr. 3d 91 (Ct. App. 2007) ................................ 12, 13, 14

9

10

*Bowen v. First Family Fin. Servs., Inc.,*
  233 F.3d 1331 (11th Cir. 2000) ............................................. 7

11

12

*Buckeye Check Cashing, Inc. v. Cardegna,*
  546 U.S. 440 (2006) .................................................... 7, 9, 10

13

14

*Buckland v. Threshold Enters., Ltd.,*
  66 Cal. Rptr. 3d 543 (Ct. App. 2007) ..................................... 11

15

*Burdette v. Carrier Corp.,*
  158 Cal. App. 4th 1668 (2008) ............................................. 3

16

17

*Cal. Energy Res. Conservation & Dev. Comm'n v. Johnson,*
  807 F.2d 1456 (9th Cir. 1987) ............................................. 6

18

19

*Calhoun v. Franchise Tax Bd.,*
  20 Cal. 3d 881 (Cal. 1978) ................................................ 3

20

*Collins v. D.R. Horton, Inc.,*
  505 F.3d 874 (9th Cir. 2007) .............................................. 3

21

22

*Day v. AT&T Corp.,*
  74 Cal. Rptr. 2d 55 (Ct. App. 1998) ...................................... 11

23

24

*Del Campo v. Kennedy,*
  2008 U.S. App. LEXIS 2559 (9th Cir. Feb. 6, 2008) ........................ 13

25

*Doctor's Assocs., Inc. v. Casarotto,*
  517 U.S. 681 (1996) ....................................................... 6

26

27

*Dunn v. Noe,*
  No. C-07-3559 JCS, 2007 U.S. Dist. LEXIS 86521 (N.D. Cal. Nov. 7, 2007) ....... 4

28

*Ford Motor Credit Co. v. Milhollin*,
   444 U.S. 555 (1980) .................................................................................................... 5

*Franklin & Franklin v. 7-Eleven Owners for Fair Franchising*,
   85 Cal. App. 4th 1168 (2000) .................................................................................... 3

*Freeman v. Mattress Gallery*,
   Nos. E039614, E039615, 2007 WL 3300717 (Cal. Ct. App. 2007) ................................. 10, 14

*Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.*,
   528 U.S. 167 (2000) .................................................................................................... 4

*Giles v. GMAC*,
   494 F.3d 865 (9th Cir. 2007) ..................................................................................... 3

*Hernandez v. Hilltop Financial Mortgage, Inc.*,
   No. C 06-7401 SI, 2007 WL 3101250 (N.D. Cal. Oct. 22, 2007) ............................... 13

*Hitz v. First Interstate Bank*,
   38 Cal. App. 4th 274 (1995) ..................................................................................... 13

*In re Late Fee & Over-Limit Fee Litigation*,
   No. C 07-0634 SBA, 2007 U.S. Dist. LEXIS 86408 (N.D. Cal. Nov. 16, 2007) ................. 12

*Jefferson v. Chase Home Fin. LLC*,
   No. C06-6510 TEH, 2007 WL 1302984 (N.D. Cal. May 3, 2007) ............................... 13

*Kagan v. Gibraltar Sav. & Loan Ass'n*,
   35 Cal. 3d 582 (Cal. 1984) .................................................................................. 10, 14

*Kay v. City of Rancho Palos Verdes*,
   504 F.3d 803 (9th Cir. 2007) ..................................................................................... 4

*Keenan v. D.H. Blair & Co.*,
   838 F. Supp. 82 (S.D.N.Y. 1993) ............................................................................. 14

*Lee v. Am. Express Travel Related Servs.*,
   No. C 07-04765 CRB, 2007 WL 4287557 (N.D. Cal. Dec. 6, 2007) ....................... 2, 6, 7

*Long Beach Unified Sch. Dist. v. California*,
   225 Cal. App. 3d 155 (1990) ..................................................................................... 4

*Lozano v. AT&T Wireless Services*,
   504 F.3d 718 (9th Cir. 2007) ................................................................................. 7, 8

*Lujan v. Defenders of Wildlife*,
   504 U.S. 555 (1992) .................................................................................................. 4, 6

*Lumpkin v. Jordan*,
   57 Cal. Rptr. 2d 303 (Ct. App. 1996) ....................................................................... 3

*Maynes v. Angeles Mesa Land Co.*,
   10 Cal. 2d 587 (Cal. 1938) ................................................................................................ 14

*Nagrampa v. MailCoups, Inc.*,
   469 F.3d 1257 (9th Cir. 2006) ..................................................................................... 7, 8, 9, 10

*Nat'l Fire Ins. Co v. Stites Prof'l Law Corp.*,
   235 Cal. App. 3d 1718 (1991) ............................................................................................. 4

*Posern v. Prudential Sec., Inc.*,
   No. C-03-0507 SC, 2004 WL 771399 (N.D. Cal. Feb. 18, 2004) ...................................... 7

*Ruckelshaus v. Monsanto Co.*,
   467 U.S. 986 (1984) ........................................................................................................... 7

*Schnall v. Marine Midland Bank*,
   225 F.3d 263 (2d Cir. 2000) ............................................................................................... 5

*Semtek Int'l Inc. v. Lockheed Martin Corp.*,
   531 U.S. 497 (2001) ........................................................................................................... 3

*Southland Corp. v. Keating*,
   465 U.S. 1 (1984) .............................................................................................................. 6

*Walker v. USAA Cas. Ins. Co.*,
   474 F. Supp. 2d 1168 (E.D. Cal. 2007) ............................................................................ 11

*Walton v. Mead*,
   No. C 03-4921 CRB, 2004 WL 2415037 (N.D. Cal. Oct. 28, 2004) ................................ 14

*Wilens v. TD Waterhouse Group, Inc.*,
   15 Cal. Rptr. 3d 271 (Ct. App. 2003) ............................................................................... 11

*Younger v. Jensen*,
   26 Cal. 3d 397 (Cal. 1980) ................................................................................................. 3

## STATUTES AND RULES

15 U.S.C.
   § 1601 *et seq.* ................................................................................................................... 4

12 C.F.R.
   Part 226 .............................................................................................................................. 4
   § 226.9(c)(1)-(2) ................................................................................................................ 5

Truth in Lending: Official Staff Commentary, 12 C.F.R. § 226.4, Supp. I, cmt. 4(c)(4),
   p. 386 (2007) ...................................................................................................................... 5

Truth in Lending: Official Staff Commentary, 12 C.F.R. § 226.9, Supp. I, cmt. 9(c),
    p. 423 (2007) ................................................................................................................ 5

Cal. Bus. & Prof. Code
    § 17204 ...................................................................................................................... 11

Cal. Civ. Code
    § 1770 ........................................................................................................................ 12
    § 1780 ....................................................................................................... 10, 11, 14

N.D. Cal. Civ. L.R.
    Rule 3-4(e) ................................................................................................................ 10

Cal. R. Ct,
    Rule 8.1115 ............................................................................................................... 10
    Rule 9(B) ............................................................................................................. 14, 15
    Rule 11 ........................................................................................................................ 1

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**INTRODUCTION**

At the December 10, 2007 case management conference, the Court expressed concern that the limited resources of the federal judiciary were being diverted from serious issues to this obviously contrived lawsuit.  Indeed, the Court explicitly warned plaintiff that it was "going to look at Rule 11 seriously," and advised him to "proceed at [his] own peril."  Rather than heeding the Court's warning, plaintiff offers arguments in response to defendants' motion that are as contrived as his pleading.

In response to the argument that he lacks standing, plaintiff offers the following theory of "injury":  He applied for and received a Capital One Bank credit card that required him to pay an annual fee of $39.  He believed the credit card agreement contained an enforceable arbitration provision, to which he unilaterally assigns a pecuniary value of some unknown fraction of his annual fee.  He thereafter "learned" that, in his lawyer's opinion, the arbitration provision is not enforceable and now claims that he has "'lost' some or all of the value/consideration paid by him for his vested contractual right to mandatory arbitration."  (Opp. at 2-3.)

Plaintiff's standing theory fails in virtually every respect.  "Annual" or "membership" fees are not paid to obtain a bundle of contractual rights to which some pro rata share of the fee is attributed.  To the contrary, and as a matter of federal law, such fees are paid for the right to participate in a credit plan.  Moreover, open-end credit plans, such as the one at issue here, are always subject to change as a matter of law and usually as a matter of contract.  This would not be possible if the payment of an annual or membership fee vested a credit-card holder with some type of "ownership" interest in the terms of the parties' contract.

That issue aside, the parties do not have any real or ripe substantive "dispute."  No one has attempted to invoke the arbitration clause, so there is no Article III basis for this Court to exercise jurisdiction to determine its enforceability.  Plaintiff's abstract belief that the clause is unconscionable is not sufficient to permit him to maintain this suit.  The supposed "sea change" in the law to which plaintiff adverts (Opp. at 7-8) does not impact this analysis and, in fact, confirms it.  In *every case* plaintiff cites there was a genuine dispute between the parties and an attempt to invoke arbitration.  In short, there is an established time and process—blessed by

DEFTS.' REPLY BRIEF RE: MOT. TO DISMISS OR, IN THE ALTERNATIVE, FOR JUDGMENT ON THE PLEADINGS
CASE NO. C07-4599 MHP
sf-2466233

1

1   Congress in the Federal Arbitration Act—for courts to assess arbitration clauses.  There is no

2   need, or legal basis, for courts to "step up" and identify "previously judicially unrecognized

3   injuries as sufficient to maintain a lawsuit in the federal courts."  (Opp. at 8.)

4       This is exactly what Judge Breyer concluded, correctly, defendants submit, in *American*

5   *Express*.  But even assuming that Judge Breyer's decision were "erroneous," "uninformed," and

6   "insupportable," plaintiff here is bound by it.  While plaintiff correctly notes that this Court must

7   afford Judge Breyer's decision the collateral estoppel effect a California court would, he

8   misapplies the rule—California courts afford finality to federal judgments even when they are on

9   appeal.

10      Further, plaintiff's claims also fail for other reasons.  Plaintiff has not stated a UCL claim

11  under California law because he did not allege "lost money or property."  His CLRA claims fails

12  because the CLRA does not apply to the extension of credit or the credit card agreements at issue

13  here.  And his fraud claim fails because it is not adequately pled.

14      Plaintiff cannot cure the substantial defects in his Complaint.  Defendants thus request that

15  the Court grant the motion to dismiss in its entirety, without leave to amend.

16                          **ARGUMENT**

17  **I.    COLLATERAL ESTOPPEL BARS THE COMPLAINT.**

18      In their opening brief, defendants argued that the doctrine of collateral estoppel bars

19  plaintiff's complaint.  Specifically, Judge Breyer determined that plaintiff lacked Article III

20  standing to mount these types of abstract challenges to arbitration clauses.  *See Lee v. Am.*

21  *Express Travel Related Servs.*, No. C 07-04765 CRB, 2007 WL 4287557, at *5 (N.D. Cal. Dec. 6,

22  2007).  Of the three elements of collateral estoppel, plaintiff does not contest that there is an

23  identity of issues and, on the plaintiff's side, parties.  Instead, his sole challenge to defendants'

24  argument is that *American Express* is not final because he has filed a notice of appeal.[1]

25

26  _____

27      [1]  The Notice of Appeal was filed on December 31, 2007, after defendants filed their
    opening brief in this case.

28

DEFTS.' REPLY BRIEF RE: MOT. TO DISMISS OR, IN THE ALTERNATIVE, FOR JUDGMENT ON THE PLEADINGS
CASE NO. C07-4599 MHP                                                                    2
sf-2466233

1    Plaintiff's analysis is flawed.  As plaintiff notes, a federal court sitting in diversity applies

2    the preclusion law that the forum state would apply.  *Semtek Int'l Inc. v. Lockheed Martin Corp*.,

3    531 U.S. 497, 508-09 (2001).  Thus, the question is what preclusive effect a California court

4    would grant to a federal district court judgment on which an appeal is pending.  *See Giles v.*

5    *GMAC*, 494 F.3d 865, 884 (9th Cir. 2007) (examining the preclusive effect given by Nevada

6    courts to federal district court decisions).

7    California courts hold that a "federal judgment has the same effect in the courts of this

8    state as it would have in federal court."  *Younger v. Jensen*, 26 Cal. 3d 397, 411 (Cal. 1980)

9    (citation omitted); *see also Burdette v. Carrier Corp*., 158 Cal. App. 4th 1668 (2008) (where a

10   federal district court sitting in diversity had entered judgment, California Court of Appeal looked

11   to federal law to determine whether the judgment was "final").  The federal rule is that "a pending

12   appeal does not affect a judgment's finality for preclusion purposes."  *Collins v. D.R. Horton,*

13   *Inc*., 505 F.3d 874, 882 (9th Cir. 2007) (citing *Tripati v. Henman*, 857 F.2d 1366, 1367 (9th Cir.

14   1988)).

15   Accordingly, California courts found that federal court judgments have preclusive effect

16   when appeals are pending as to those judgments.  *See Lumpkin v. Jordan*, 57 Cal. Rptr. 2d 303,

17   307 (Ct. App. 1996) ("[F]or collateral estoppel purposes, the federal court's ruling on the

18   summary judgment, even though appealed, must be considered final"); *Younger*, 26 Cal. 3d at

19   411 ("[T]he fact that the Attorney General has appealed from the ARCO judgment does not

20   prevent it from operating as a collateral estoppel"); *Calhoun v. Franchise Tax Bd.*, 20 Cal. 3d

21   881, 887 (Cal. 1978) ("We note that an appeal from the federal judgment is now pending in the

22   Ninth Circuit Court of Appeals. The federal rule is that 'a judgment or order, once rendered, is

23   final for purposes of res judicata until reversed on appeal or modified or set aside in the court of

24   rendition.'  A federal judgment is as final in California courts as it would be in federal

25   courts . . . ." (citations omitted)).

26   Plaintiff's case law is not to the contrary.  Plaintiff cites California cases evaluating the

27   preclusive effect of state court rulings or state administrative decisions, not federal court

28   decisions.  *See Franklin & Franklin v. 7-Eleven Owners for Fair Franchising*, 85 Cal. App. 4th

1168 (2000) (evaluating preclusive effect of state court judgment); *Abelson v. Nat'l Fire Ins. Co.*,

28 Cal. App. 4th 776, 787 (1994) (same); *Long Beach Unified Sch. Dist. v. California*, 225 Cal.

App. 3d 155, 169 (1990) (evaluating preclusive effect of state administrative board decisions);

*Kay v. City of Rancho Palos Verdes*, 504 F.3d 803, 808 (9th Cir. 2007) (evaluating preclusive

effect of state court judgment); *Dunn v. Noe*, No. C-07-3559 JCS, 2007 U.S. Dist. LEXIS 86521,

at *21-22 (N.D. Cal. Nov. 7, 2007) (same); *Nat'l Fire Ins. Co v. Stites Prof'l Law Corp.*, 235 Cal.

App. 3d 1718, 1726 (1991) (preclusive effect of arbitration proceeding).

Plaintiff's lone challenge to the application of collateral estoppel is fatally flawed.  Judge

Breyer's decision in *American Express* collaterally estops him from re-litigating here the issue of

his Article III standing.

## II.   PLAINTIFF HAS NOT ESTABLISHED ARTICLE III STANDING.

Even if the Court considers the issue anew, plaintiff has not borne his burden of

establishing standing.  "[T]o satisfy Article III's standing requirements, a plaintiff must show

(1) it has suffered an 'injury in fact' that is (a) concrete and particularized and (b) actual or

imminent, not conjectural or hypothetical; (2) the injury is fairly traceable to the challenged

action of the defendant; and (3) it is likely, as opposed to merely speculative, that the injury will

be redressed by a favorable decision."  *Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC),

Inc.*, 528 U.S. 167, 180-81 (2000) (quoting *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61

(1992)).  Plaintiff does not, and cannot, meet Article III's standing requirements.

### A.   Plaintiff's Theory of "Injury" Fails As A Matter Of Law.

Plaintiff claims that he has suffered Article III injury because he got less than he paid for

with his $39 annual fee—he paid for an enforceable arbitration agreement, but allegedly got an

unenforceable one.  In plaintiff's own words, "his annual fee was paid, at least in part, as

monetary consideration for the contractual right to mandatory arbitration."

Plaintiff's theory that he paid for something that he did not get is simply wrong.  The

credit relationship at issue here is governed by the federal Truth-in-Lending Act ("TILA"),

15 U.S.C. § 1601 *et seq.* and Regulation Z, 12 C.F.R. Part 226.  Under Regulation Z, annual

membership or "participation" fees are charged as a condition for access to or participation in a

Defts.' Reply Brief Re: Mot. to Dismiss or, in the Alternative, for Judgment on the Pleadings
Case No. C07-4599 MHP
sf-2466233

4

1    particular type of credit plan.  As the Federal Reserve Board notes in its Official Staff

2    Commentary explaining the requirement that such fees be disclosed:

3    　　　　the provision [requiring disclosure, 12 C.F.R. §226.4(c)(4)] applies
     　　　　to any credit plan *in which payment of a fee is a condition of*
4    　　　　*access to the plan itself*, but it does not apply to fees imposed
     　　　　separately on individual closed-end transactions. The fee may be
5    　　　　charged on a monthly, annual, or other periodic basis; a one-time,
     　　　　non-recurring fee imposed at the time an account is opened is not a
6    　　　　fee that is charged on a periodic basis, and may not be treated as a
     　　　　participation fee.
7

8    Truth in Lending: Official Staff Commentary, 12 C.F.R. § 226.4, Supp. I, cmt. 4(c)(4), p. 386

9    (2007) (emphasis added).[2]  Membership fees are not paid to acquire a bundle of contractual rights

10   in a credit card agreement—e.g., "$1.50 for a choice-of-law clause, $2.75 for a provision

11   requiring an average daily balance finance charge calculation"—but instead as a condition of

12   participation.

13   　　　　Other provisions of federal law applicable to open-end credit plans confirm this.  Federal

14   law expressly authorizes creditors under open-end credit plans to change the terms of the plans.

15   Indeed, the proposition is so well established in federal law that the only question there is whether

16   a creditor does or does not need to give advance notice of the change.  *See* 12 C.F.R.

17   § 226.9(c)(1)-(2); *see also* Truth in Lending: Official Staff Commentary, 12 C.F.R. § 226.9,

18   Supp. I, cmt. 9(c), p. 423 (2007); *Schnall v. Marine Midland Bank*, 225 F.3d 263 (2d Cir. 2000).

19   Moreover, the customer agreement plaintiff attaches to his complaint specifically reserves to

20   Capital One Bank the right to change terms.  (Compl. Ex. 8.)  If plaintiff's theory were correct—

21   that membership fees were paid in exchange for specific immutable contractual rights—then

22   these provisions of federal law and the contractual term would be meaningless.

23

24

25

26   　　　　[2] The Federal Reserve Board's Regulations and Commentary, which are based on the
     assumption that a change in terms is permitted, have the force and effect of law, and must be
27   afforded deference unless "demonstrably irrational."  *Ford Motor Credit Co. v. Milhollin*,
     444 U.S. 555, 565-70 (1980).

28

1

**B.     Plaintiff Has Not Otherwise Demonstrated Injury In Fact.**

2      Plaintiff's entire complaint rests on the theory that the contract between him and Capital

3 One Bank contains an allegedly "unlawful" or "unconscionable" provision—a provision that his

4 Complaint concedes was disclosed when he applied for the card.  (Compl. ¶ 42.)  But it is well

5 established that a party to a contract cannot file a lawsuit simply because it believes that a

6 contract provision that has not even been exercised (and may not ever be exercised) is invalid.

7 *Cal. Energy Res. Conservation & Dev. Comm'n v. Johnson*, 807 F.2d 1456 (9th Cir. 1987) (the

8 provision at issue "has never been implemented…[r]ather, CEC challenges a contract provision,

9 entirely dormant to date, that seems to set limits within which rates will perhaps someday be

10 established…A decision at this juncture would resolve a dispute about hypothetical rates.  'Courts

11 have no business adjudicating the legality of non-events.'") (citing *Nat'l Wildlife Fed'n v.

12 Goldschmidt*, 677 F.2d 259, 263 (2d Cir. 1982)); *see also Lee v. Am. Express*, 2007 WL 4287557,

13 at *5 (noting that plaintiffs' only dispute is the existence of allegedly unconscionable terms in the

14 contract; the inclusion of those terms does not, standing alone, constitute an injury in fact).

15      These decisions are consistent with the structure of the Federal Arbitration Act.  The FAA

16 contemplates that challenges to arbitration provisions will be resolved in proceedings to enforce

17 arbitration clauses:  The FAA, as the Supreme Court has repeatedly held, establishes a "broad

18 principle of enforceability" of arbitration agreements.  *Doctor's Assocs., Inc. v. Casarotto*,

19 517 U.S. 681, 684-85 (1996) (citation omitted).  The FAA allows that a party to an agreement to

20 arbitrate "may assert general contract *defenses* . . . *to avoid enforcement of an arbitration*

21 *agreement*."  *Southland Corp. v. Keating*, 465 U.S. 1, 16 (1984) (emphasis added).  Here,

22 plaintiff does not allege that Capital One Bank has sought to enforce its arbitration agreement

23 with him.  He seeks to affirmatively challenge the arbitration agreement on its face.

24      Thus, plaintiff's claim is plainly based on a hypothetical injury.  He is assuming that *if* he

25 attempted to arbitrate a dispute, the arbitrator would find that the arbitration provision is

26 unconscionable and plaintiff would ultimately be forced to litigate his case in a court, losing his

27 contractual right to arbitrate.  His purported injury is thus based on a series of assumptions and is

28 neither concrete nor imminent.  *Lujan*, 504 U.S. at 564 n.2.  ("Although 'imminence' is

1   concededly a somewhat elastic concept, it cannot be stretched beyond its purpose, which is to

2   ensure that the alleged injury is not too speculative for Article III purposes—that the injury is

3   '*certainly* impending.'") (emphasis in original).

4          As cited in defendants' opening brief, because defendants have made no attempt to invoke

5   the arbitration agreement with respect to plaintiff's claims, plaintiff's complaint fails. *Bowen v.*

6   *First Family Fin. Servs., Inc.*, 233 F.3d 1331, 1334 (11th Cir. 2000) ("[P]laintiffs lack

7   standing . . . because there has been no attempt to enforce the agreement against them, and they

8   have not established that there is a substantial likelihood that it will be enforced against them in

9   the future."); *see also Ruckelshaus v. Monsanto Co.*, 467 U.S. 986, 1019-20 (1984) (lack of

10  standing where plaintiff "did not allege or establish that it had been injured by actual arbitration

11  under the statute"); *Posern v. Prudential Sec., Inc.*, No. C-03-0507 SC, 2004 WL 771399, at *8

12  (N.D. Cal. Feb. 18, 2004) (motion to dismiss for lack of standing granted where there was no

13  pending arbitration proceeding and thus no "actual controversy").

14         Despite filing an oversized brief, plaintiff did not distinguish—or even reference—any of

15  this significant authority, which establishes that plaintiff's complaint fails as a matter of law for

16  lack of standing.  Instead, plaintiff cited several cases to support his assertion that the Court

17  identify "previously judicially unrecognized injuries as sufficient to maintain a lawsuit in the

18  federal courts."  (Opp. at 8.)  Plaintiff relies primarily on *Lozano v. AT&T Wireless Services*,

19  504 F.3d 718 (9th Cir. 2007), *Buckeye Check Cashing, Inc. v. Cardegna*, 546 U.S. 440 (2006),

20  and *Nagrampa v. MailCoups, Inc.*, 469 F.3d 1257 (9th Cir. 2006).  None of these cases supports

21  plaintiff's theory.

22              **C.     Plaintiff's Authority Is Inapposite.**

23         Plaintiff argues that *Lozano* stands for the proposition that "a person suffers an injury and

24  has standing when he loses 'money' or 'value' because he does 'not receive the full value of his

25  contract.'"  (Opp. at 13.)  As Judge Breyer ruled in his Order in the *American Express* case:

26  "*Lorenzo*, however, does not help plaintiffs and, indeed, demonstrates that plaintiffs lack

27  standing."  2007 WL 4287557, at *5.

28

DEFTS.' REPLY BRIEF RE: MOT. TO DISMISS OR, IN THE ALTERNATIVE, FOR JUDGMENT ON THE PLEADINGS
CASE NO. C07-4599 MHP
sf-2466233

7

1    The plaintiff in *Lozano* was a customer of AT&T who brought a class action in federal

2    court challenging AT&T's practice of billing its cell phone customers for calls during a billing

3    period other than the billing period in which the calls were made.  This practice is known as "out-

4    of-cycle" billing.  AT&T responded by moving to compel arbitration.  *Lozano* opposed the

5    motion, and the court refused to compel arbitration on the ground that the arbitration agreement

6    contained an unconscionable class action waiver.  504 F.3d at 723.

7    The issue of standing in *Lozano* only arose in connection with the UCL claim.  But as the

8    *Lozano* court stated: "The parties do not dispute that Lozano *suffered pecuniary loss* as a result of

9    his alleged unawareness of [AT&T's] out-of-cycle billing practices…*Lozano* received an invoice

10   stating he had been charged fees as a result of out-of-cycle minutes from his previous invoice."

11   *Id.* at 732 (emphasis added).  The court also found that Lozano had reserved, and lost, certain

12   "anytime minutes" during each billing period.  *Id.* at 733.  Accordingly, Lozano suffered an actual

13   injury from AT&T's out-of-cycle billing practice in the form of additional charges and being

14   unable to use all monthly minutes for which the plaintiff had contracted.  *Id.* at 731-34.  *Lozano*

15   thus does not provide any support for plaintiff's standing argument.  Nothing in that case suggests

16   that plaintiff here has alleged the requisite injury in fact to proceed with his litigation against

17   defendants.

18   In an attempt to show that his dispute is not hypothetical, plaintiff argues that *Buckeye* and

19   *Nagrampa* "conclusively" hold that plaintiff's "claims" are not arbitratable.  Plaintiff again

20   misses the point.

21   In *Nagrampa*, the plaintiff entered into an agreement with MailCoups to operate a direct

22   mail coupon advertising franchise.  469 F.3d at 1265.  After two years of unprofitable operation

23   of her franchise, Nagrampa unilaterally terminated the franchise agreement.  MailCoups initiated

24   arbitration proceedings by filing a Demand for Arbitration claiming that Nagrampa owed $80,000

25   in fees.  Nagrampa, in turn, asserted that rather than making a 41% profit per year, she incurred

26   $180,000 in personal debt and had to pay over $400,000 in fees to MailCoups.  *Id.*  Nagrampa

27   objected to arbitrability at the outset of the dispute.  The Ninth Circuit acknowledged that

28   unconscionability is a "contract defense" which may render an arbitration provision

DEFTS.' REPLY BRIEF RE: MOT. TO DISMISS OR, IN THE ALTERNATIVE, FOR JUDGMENT ON THE PLEADINGS
CASE NO. C07-4599 MHP
sf-2466233

8

1    unenforceable.  *Id.* at 1280.  The court held that the arbitrability of the dispute was a threshold

2    issue for the courts; that because the plaintiff challenged only the validity of the arbitration

3    provision, a court (not arbitrator) must decide whether the provision is invalid and unenforceable

4    under the Federal Arbitration Act.  *Id.* at 1264.

5         *Buckeye* is also irrelevant.  In that case, the Court merely reaffirmed the general rule that

6    when a complaint challenges the validity of an agreement containing an arbitration provision, the

7    question whether the agreement, as a whole, is unconscionable must be referred to the arbitrator.

8    *Buckeye*, 546 U.S. 440.  The plaintiffs in that case entered into various deferred-payment

9    transactions with Buckeye Check Cashing ("Buckeye"), in which they received cash in exchange

10   for a personal check in the amount of the cash plus a finance charge.  For each separate

11   transaction they signed a "Deferred Deposit and Disclosure Agreement" (Agreement), which

12   included arbitration provisions.  *Id.* at 442.  Plaintiffs brought a class action in Florida state court,

13   alleging that Buckeye charged usurious interest rates and that the Agreement violated various

14   Florida lending and consumer-protection laws, rendering it criminal on its face.  *Id.* at 443.

15   Buckeye moved to compel arbitration.  The trial court denied the motion, holding that a court

16   rather than an arbitrator should resolve a claim that a contract is illegal and void *ab initio*.  *Id.*

17   The matter ultimately got to the Florida Supreme Court, which agreed with the trial court.  *Id.*

18   Upon review, the U.S. Supreme Court reversed, holding that because the plaintiffs challenge[d]

19   the Agreement, but not specifically its arbitration provisions, …[t]he challenge should therefore

20   be considered by an arbitrator, not a court."  *Id.* at 446.

21        The present case is entirely distinguishable from *Nagrampa* and *Buckeye*.  In fact,

22   standing was not at issue in either of those cases; those cases involved actual disputes between the

23   parties where the plaintiffs had alleged concrete, particularized injuries.  The only issue before the

24   courts in *Nagrampa* and *Buckeye* was whether a court or arbitrator would adjudicate the

25   unconscionability contract defense asserted by the plaintiffs.  The cases do not, as plaintiff argues,

26   recognize "causes of action identical to the ones brought by [p]laintiff here."  (Opp. at 18.)

27

28

1  Further, in contrast to the present case, the disputes in *Nagrampa* and *Buckeye* were ripe for

2  judicial review.[3]

3

4  ### D.     Plaintiff Cannot Create Standing Simply By Alleging Violations Of The CLRA And UCL.

5          Plaintiff's circular argument, that he has standing to proceed despite suffering no injury

6  simply because he has *alleged* that defendants violated the CLRA and UCL, fails.  (Opp. at 21-

7  22.)  Plaintiff's authority is lacking.[4]  *Kagan v. Gibraltar Sav. & Loan Ass'n*, 35 Cal. 3d 582 (Cal.

8  1984) does not stand for the proposition that a plaintiff can sue under the CLRA without suffering

9  any actual damages.  There, the plaintiff brought an action against a bank individually and as a

10  representative of a class, alleging the bank violated the CLRA by falsely representing that

11  customers would not be charged management fees in connection with individual retirement

12  accounts.  The plaintiff notified the bank that its alleged violations affected individuals other than

13  herself and she intended to file suit if it did not rectify its violations.  Shortly before the plaintiff

14  filed the action, the bank notified the plaintiff it had not deducted the $15 management fee from

15  her account and refunded the fee it had charged her husband.  Subsequently, the bank asserted

16  that the action lacked merit because the plaintiff had not suffered any damage as required by Civil

17  Code section 1780.  Noting that a prospective defendant should not be able to avert a class action

18  by "picking off" prospective plaintiffs one-by-one, the Supreme Court held the "exemption of the

19  plaintiff from the imposition of the trustee fee does not render her unfit per se to represent the

20  class."  *Id.* at 595.  Further, reading *Kagan* to permit a party to sue under the CLRA by simply

21  alleging a violation of that act would eviscerate the statutory language requiring that the plaintiff

22          [3]  Plaintiff's additional charge that he could not invoke the arbitration provision here
   without waiving all challenges to the provision is nonsensical and inconsistent with the law,

23  which plaintiff cited in note 24 of his Opposition brief.  (Opp. at 20 n.24 (citing *George Day
   Constr. Co. v. United Bhd. of Carpenters & Joiners, Local 354*, 722 F.2d 1471, 1475 (9th Cir.

24  1984)).)

25          [4]  Plaintiff cites to *Freeman v. Mattress Gallery*, Nos. E039614, E039615, 2007 WL
   3300717 (Cal. Ct. App. 2007) for the proposition that the mere allegation of a violation of the

26  CLRA confers standing.  *Freeman*, however, is unpublished and noncitable under California law,
   *see* Cal. Rules of Court, Rule 8.1115, and therefore is not citable under the rules of this Court, *see*

27  N.D. Cal. Civ. L.R. 3-4(e).

28

DEFTS.' REPLY BRIEF RE: MOT. TO DISMISS OR, IN THE ALTERNATIVE, FOR JUDGMENT ON THE PLEADINGS
CASE NO. C07-4599 MHP
sf-2466233

10

1    suffer "damage as a result" of a CLRA violation.  Cal. Civ. Code § 1780; *see also Wilens v. TD*

2    *Waterhouse Group, Inc.*, 15 Cal. Rptr. 3d 271, 276 (Ct. App. 2003).

3         Plaintiff cites no case holding that a party has standing merely by asserting a violation of

4    the UCL.  Such a proposition would be wholly inconsistent with the recent amendment to the

5    UCL, which requires a plaintiff to have "lost money or property" as a result of defendants'

6    alleged unfair competition to state a claim.  Cal. Bus. & Prof. Code § 17204.

7                                                 * * *

8         This case involves nothing more than a hypothetical injury tied to plaintiff's right to

9    arbitrate a dispute, if and when one should arise.  Unlike the parties in the cases that he cites,

10   plaintiff has lost nothing.  He received exactly what he was promised; indeed, as the complaint

11   acknowledges, the terms and conditions of the account were plainly disclosed to plaintiff in

12   advance of his application.  Plaintiff's abstract challenge to the mere presence of an uninvoked

13   term that he purports to find objectionable under California law fails for lack of standing.

14        **III.    PLAINTIFF HAS NOT STATED CLAIMS UNDER THE UCL.**

15        Plaintiff's opposition does not counter the points made in defendants' motion regarding

16   plaintiff's invalid UCL claims.  As explained in defendants' opening brief, plaintiff has standing

17   to assert his UCL claims only if can establish that he suffered "injury in fact" and "lost money or

18   property" as a result of defendants' alleged unfair competition.  Cal. Bus. & Prof. Code § 17204.

19   The term has been interpreted to mean that the "offending party must have obtained something to

20   which it was not entitled and the victim must have given up something which he or she was

21   entitled to keep."  *Day v. AT&T Corp*., 74 Cal. Rptr. 2d 55, 64 (Ct. App. 1998); *see also*

22   *Walker v. USAA Cas. Ins. Co*., 474 F. Supp. 2d 1168, 1172 (E.D. Cal. 2007).  None of the

23   allegations in plaintiff's complaint meet this standard.

24        Plaintiff has not alleged and cannot allege that he has "lost money or property."  His claim

25   that he "lost" money as a result of the alleged unconscionability of the arbitration provision is

26   nothing more than conjecture.[5]  *Buckland v. Threshold Enters., Ltd*., 66 Cal. Rptr. 3d 543, 554-55

27   ───────────────
          [5]  Plaintiff contends that the Court cannot grant defendants' motion to dismiss because
     there is no "evidence" presented on the lack of damages suffered by plaintiff.  But the Court need

28                                                      (Footnote continues on next page.)

1   (Ct. App. 2007) (plaintiffs asserting UCL claim must show a "distinct and palpable injury" that is

2   concrete and is not "conjectural" or "hypothetical").  His alleged "loss" and "injury" is purely

3   hypothetical and abstract because the arbitration provision has never been invoked.  Because

4   plaintiff has not alleged any actual pecuniary damages, he lacks standing to assert claims under

5   the UCL.

6           **IV.    THE CLRA DOES NOT APPLY TO PLAINTIFF'S CLAIMS.**

7         The CLRA applies only to the sale of "goods or services" to California "consumers."  Cal.

8   Civ. Code § 1770.  Plaintiff attempts to re-litigate *Berry v. American Express Publishing Co.*, 54

9   Cal. Rptr. 3d 91 (Ct. App. 2007) by arguing that defendants' extension of credit to plaintiff is a

10   "contract" for "goods or services" subject to the CLRA.  (Opp. at 24.)

11         The same arguments put forth in plaintiff's opposition were made by the plaintiff in *Berry*.

12   In *Berry*, the plaintiff brought an action for violation of the CLRA based on the theory that the

13   agreement contained an "unconscionable" arbitration agreement.  The plaintiff in that case argued

14   that his credit card agreement was subject to the CLRA because a credit card is a "good" or

15   "service."  The court completely rejected this argument and held that under the language of the

16   statute and the legislative history, the extension of credit is not covered by the CLRA.  54 Cal.

17   Rptr. 3d at 94.  *Berry* has been followed by numerous other courts as demonstrated in defendants'

18   opening brief.  And as stated by this court in *In re Late Fee & Over-Limit Fee Litigation*, No. C

19   07-0634 SBA, 2007 U.S. Dist. LEXIS 86408 (N.D. Cal. Nov. 16, 2007), "[e]very federal court

20   addressing the issue has followed [*Berry*.]"  *Id.*, at *35.

21         Plaintiff tries to avoid the clear holding of *Berry* and its progeny by asserting that

22   defendants provide a "convenience service" and thus, the CLRA applies.  Other than using the

23   term "convenience service," plaintiff does not explain how such a "service" constitutes anything

24   more than the extension of credit.  And plaintiff does not cite any authority (there is none) to

25

26   (Footnote continued from previous page.)

27   only consider plaintiff's insufficient allegations to conclude that he has not "lost money or
property" as that term has been interpreted under the UCL.

28

1    support his claim that a "convenience service" constitutes a "service" under the CLRA.

2    Plaintiff's attempt to rely on *Hitz v. First Interstate Bank*, 38 Cal. App. 4th 274, 286-87 (1995) is

3    a non-starter. *Hitz* is not a CLRA case and is irrelevant to this litigation. *Hitz* predates Berry by

4    more than 10 years and one cannot accept plaintiff's suggestion that a quote in *Hitz* (credit card

5    agreements "encompass[] convenience services in addition to the extension of credit") in any way

6    negates the clear holding in *Berry*. Further, nothing in any subsequent decision or CLRA case

7    suggests that the use of the term "convenience service" in the extension of credit is somehow

8    governed by the CLRA.

9        Plaintiff's other authority is also readily distinguishable. For instance, the court in

10   *Jefferson v. Chase Home Finance LLC*, No. C06-6510 TEH, 2007 WL 1302984 (N.D. Cal.

11   May 3, 2007) did not hold that the CLRA applies to the extension of credit. The court in that case

12   simply held that the CLRA applied to services obtained in connection with mortgages, in

13   particular, a program that allowed debtors to repay their debt without penalty. The court

14   concluded that given these specific programs, the transactions between the parties involved more

15   than the mere provision of a loan. *Id.*, at *3.

16       Likewise, *Hernandez v. Hilltop Financial Mortgage, Inc*., No. C 06-7401 SI, 2007 WL

17   3101250 (N.D. Cal. Oct. 22, 2007) is inapposite. In that case the plaintiffs sought more than the

18   extension of credit or a loan, "they sought defendants' services in developing an acceptable

19   refinancing plan by which they could remain in possession of their home. Thus, unlike in *Berry*,

20   the situation in the present case involves more than the mere extension of a credit line." *Id.*, at *6.

21       Finally, plaintiff is wrong that the use of the term "convenience service" on a website

22   renders the CLRA applicable here.[6] The extension of credit via a credit card is always issued for

23   the convenience of a consumer. But the mere extension of credit does not involve the "sale or

---

24   [6] The Court should deny plaintiff's request for judicial notice of two screenshots that he claims to
     have taken from Capital One websites (Exs. D and E to Plaintiff's Request for Judicial Notice).
25   Plaintiff argues that the Court must take judicial notice of these documents because they are
     related to his "convenience service" argument. But these documents do nothing to advance his
26   invalid argument that the use of the term "convenience service" renders the CLRA applicable to
     the extension of credit, and the Court need not consider these irrelevant materials. *Del Campo v.
27   Kennedy*, 2008 U.S. App. LEXIS 2559 at *10 n.7 (9th Cir. Feb. 6, 2008) (denying request for
     judicial notice of irrelevant materials).

28

1   lease of any specific goods or services." *Id*. "[C]redit cards are not included within the plain

2   language of CLRA." *Berry*, 54 Cal. Rptr. 3d at 97. Semantics cannot save plaintiff's deficient

3   CLRA claims.

4       Plaintiff restates his argument concerning the *Kagan* and *Freeman* case to support his

5   assertion that "'damage' sufficient to create his CLRA standing is the alleged violation of his

6   statutory right to not have unconscionable terms inserted in his card agreement." (Opp. at 27.)

7   As discussed above, neither of these cases is relevant here.

8       Moreover, the plain language of the statute requires that a plaintiff suffer "damage as a

9   result" of a CLRA violation. Cal. Civ. Code § 1780. Plaintiff contends that this is different from

10   "damage" and includes any "loss or injury to person or property." (Opp. at 28.) But even

11   accepting plaintiff's interpretation (which is not supported by any relevant case law), plaintiff has

12   *not* suffered "any damage."

13

14       **V.**    **PLAINTIFF'S FRAUD AND DECEIT CLAIM DOES NOT MEET THE REQUIREMENTS OF RULE 9(B)**

15       Plaintiff's complaint only contains generalized assertions about purported

16   misrepresentations made by defendants. It does not, as required by Rule 9(b), state "with

17   particularity" the alleged fraud. Indeed, plaintiff does not state the "time, place, and specific

18   content of the false representations as well as the identities of the parties to the

19   misrepresentation." *Walton v. Mead*, No. C 03-4921 CRB, 2004 WL 2415037, at *7 (N.D. Cal.

20   Oct. 28, 2004) (citation and internal quotation marks omitted).

21       Nor do his claims plead the elements of fraud with particularity, including the elements of

22   reliance and damages. *See, e.g., 389 Orange St. Partners v. Arnold*, 179 F.3d 656, 663 & n.2

23   (9th Cir. 1999) (requiring plaintiff to plead each element of fraudulent concealment with

24   particularity); *Keenan v. D.H. Blair & Co.*, 838 F. Supp. 82, 87 (S.D.N.Y. 1993) (pleading

25   reliance with particularity "assures that there is a causal link between the misrepresentation or

26   omission and the plaintiff's injury"); *Maynes v. Angeles Mesa Land Co.*, 10 Cal. 2d 587, 589-90

27   (Cal. 1938) (dismissing fraud claim where "damage[s] resulting from" fraud not properly

28   pleaded).

DEFTS.' REPLY BRIEF RE: MOT. TO DISMISS OR, IN THE ALTERNATIVE, FOR JUDGMENT ON THE PLEADINGS
CASE NO. C07-4599 MHP
sf-2466233

14

1    The complaint fails to allege fraud and deceit with the required specificity to meet the

2    requirements of Rule 9(b) and thus, the Court should dismiss plaintiff's Fraud and Deceit claim.

3

4    **VI.    CAPITAL ONE SERVICES, INC., IS NOT A PROPER DEFENDANT AND SHOULD BE DISMISSED.**

5    Plaintiff improperly named Capital One Services, Inc., as a defendant in this action.  As

6    his opposition reveals, his only basis for asserting claims against Capital One Services, Inc., is its

7    alleged reference in the credit card agreement and arbitration provision.  He does not allege that

8    Capital One Services, Inc., is a party to the credit card agreement.  The Court should dismiss

9    Capital One Services, Inc., from the complaint.  If plaintiff obtains any evidence to support his

10   mistaken belief that Capital One Services, Inc., should be sued herein in connection with his

11   grievance concerning the arbitration provision, he can amend the complaint at a later date.

12   **VII.    PLAINTIFF HAS NO BASIS FOR DECLARATORY RELIEF.**

13   As shown in defendants' opening brief, because plaintiff's CLRA, UCL and fraud claims

14   fail as a matter of law, his declaratory relief claim must be dismissed as well.  Indeed, plaintiff

15   does not have any "actual controversy" with defendants sufficient to state a claim for declaratory

16   relief.  Plaintiff did not respond to this argument in his oversized opposition brief.  Plaintiff has

17   no basis for seeking declaratory relief and the claim fails as a matter of law.

18   **CONCLUSION**

19   For all of the reasons stated herein and in defendants' opening brief, defendants

20   respectfully request that this Court dismiss plaintiff's complaint in its entirety, without leave to

21   amend.

22   Dated:   February 15, 2008                         MORRISON & FOERSTER LLP

23

24                                                      By:        /s/ James R. McGuire
                                                                   James R. McGuire

25                                                      Attorneys for Defendants CAPITAL ONE
                                                        BANK AND CAPITAL ONE SERVICES,
26                                                      INC.

27

28